# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAP AMERICA, INC., | |
| *Plaintiff*, | Civil Action No. 24-cv-756-GBW |
| v. | **JURY TRIAL DEMANDED** |
| VALTRUS INNOVATIONS LIMITED, KEY PATENT INNOVATIONS LIMITED, and PATENT PLATFORM SERVICES, LLC, | ████████████ |
| *Defendants*. | **PUBLIC VERSION FILED: October 2, 2024** |

## PLAINTIFF SAP AMERICA, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION, UNDER THE FIRST-TO-FILE RULE, FOR LACK OF PERSONAL JURISDICTION, AND FOR FAILURE TO STATE A CLAIM

Dated:  September 25, 2024

Public Version Dated:
October 2, 2024

Monté T. Squire (No. 4764)
**DUANE MORRIS LLP**
1201 N. Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
mtsquire@duanemorris.com

Aleksander J. Goranin (*pro hac vice* pending)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
agoranin@duanemorris.com

Thomas M. Melsheimer (*pro hac vice* pending)
Michael A. Bittner (*pro hac vice* pending)
M. Brett Johnson (*pro hac vice* pending)
**WINSTON & STRAWN, LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
mbittner@winston.com
mbjohnson@winston.com
*Counsel for SAP America, Inc.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1

II. PROCEDURAL HISTORY .......................................................................................2

III. BACKGROUND ........................................................................................................2

    A. Delaware Is the Epicenter of Defendants' Corporate Structure............................2
    B. Valtrus and KPI Are Alter Egos ...........................................................................3
    C. KPI and Valtrus's Corporate Relationship with PPS............................................5
    D. The Patents-in-Suit Were Acquired from Delaware Entities with
        Delaware Entities .................................................................................................6
    E. Valtrus and KPI's Licensing Efforts and Litigation Against
        Delaware Entities .................................................................................................8

IV. ARGUMENT ..............................................................................................................9

    A. The Court Has Subject Matter Jurisdiction Over Counts IV–V
        and VII–IX .........................................................................................................9
    B. The Court Should Retain Jurisdiction of This Case Over Counts
        IV–XV ..............................................................................................................10
    C. The Court Should Decline to Apply the First-to-File Rule.................................11
    D. Delaware Has Personal Jurisdiction Over Valtrus and KPI
        Under Rule 4(k)(2)...........................................................................................12
    E. Delaware Has General Jurisdiction Over Defendants ........................................16
    F. Delaware Has Specific Jurisdiction Over Defendants ........................................17

        1. KPI and Valtrus satisfy the Delaware Long-Arm Statute
            and the Due Process Clause via their agency relationship
            with PPS and Valinvest.............................................................................19
        2. KPI and Valtrus satisfy the Delaware long-arm statute
            and Due Process Clause via their alter ego, PPS ....................................22

    G. The DCFA Portion of the Complaint Does Not Fail Under Rule
        12(b)(6) ...........................................................................................................23
    H. The DCFA Portion of the Complaint Does Not Fail Under Rule
        12(b)(6) ...........................................................................................................25

V. CONCLUSION .........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACCO Brands USA LLC v. Performance Designed Prods. LLC*,
    2024 WL 181545 (D. Del. Jan. 17, 2024).......................................................................14, 22

*Akro Corp. v. Luker*,
    45 F.3d 1351 (Fed. Cir. 1995)........................................................................................15, 22

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*,
    2005 WL 578972 (Del. Ch. Mar. 3, 2005).............................................................................25

*Anschutz Corp. v. Brown Robin Cap., LLC*,
    2020 WL 3096744 (Del. Ch. June 11, 2020)........................................................................25

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008)......................................................................14, 15, 18, 22

*Bagic v. Univ. of Pittsburgh*,
    773 F. App'x 84 (3d Cir. 2019) ............................................................................................23

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    629 F. Supp. 2d 338 (D. Del. 2009).......................................................................................19

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*,
    693 F. Supp. 2d 409 (D. Del. 2010).......................................................................................18

*Daimler AG v. Bauman*,
    571 U.S. 137 (2014)......................................................................................................13, 16

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998).............................................................................................18

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
    335 F. Supp. 3d 657 (D. Del. 2018).......................................................................................18

*Eames v. Nationwide Mut. Ins. Co.*,
    2008 WL 4455743 (D. Del. Sept. 30, 2008)..........................................................................24

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
    737 F.3d 704 (Fed. Cir. 2013)...............................................................................................11

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
    933 F.3d 1302 (Fed. Cir. 2019).............................................................................................12

*Hill v. Frito-Lay, Inc.*,
2023 WL 2759764 (E.D. Tex. Apr. 3, 2023) .................................................................11

*Intell. Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ....................................................................................11

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*,
910 F.3d 1199 (Fed. Cir. 2018)....................................................................................15

*JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*,
960 F. Supp. 2d 383 (E.D.N.Y. 2013) ..........................................................................16

*Johnson v. Ace Cash Express Inc.*
2015 WL 4397482 (D. Del. 2015) .................................................................................25

*Kabbaj v. Simpson*,
547 F. App'x 84 (3d Cir. 2013) ....................................................................................18

*L.T. Assocs., Ltd. Liab. Co. v. Sussex Cnty. Council*,
2013 WL 3998462 (D. Del. Aug. 5, 2013) ....................................................................23

*Largo Legacy Grp., LLC v. Charles*,
2021 WL 2692426 (Del. Ch. June 30, 2021) .................................................................25

*Liqui-Box Corp. v. Scholle Corp.*,
2013 WL 3070872 (D. Del. June 17, 2013) ...................................................................18

*Ltd. v. Fibre Corp.*,
229 F.3d 254 (3d Cir. 2000) .........................................................................................18

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
890 F.3d 995 (Fed. Cir. 2018) ..........................................................................12, 14, 15

*Marshall v. Priceline.com Inc.*,
2006 WL 3175318 (Del. Super. Ct. 2006) ....................................................................24

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ....................................................................................13

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) .......................................................................................12

*Nexon Am. Inc. v. Uniloc 2017 LLC*,
2020 WL 3035647 (D. Del. June 5, 2020) (Connolly, J.).............................................12

*Prasco, LLC v. Medicis Pharm. Corp.*
537 F.3d 1329 (Fed. Cir. 2008) ...............................................................................9, 10

*Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*
    590 F. Supp. 2d 662, 663 (D. Del. 2008)< ...............................................................10

*Registered Agents, Ltd v. Registered Agent, Inc.*,
    880 F. Supp. 2d 541 (D. Del. 2012)...........................................................................17

*Robert Bosch LLC v. Alberee Prods., Inc.*,
    70 F. Supp. 3d 665 (D. Del. 2014)............................................................................13

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.*,
    311 F.3d 198 (3d Cir. 2002).......................................................................................25

*Rockwell Automation, Inc. v. Eu Automation, Inc.*,
    2022 WL 1978726 (D. Del. June 7, 2022)................................................................19

*Roe v. Wyndham Worldwide, Inc.*,
    2023 WL 5348862 (D. Del. Aug. 21, 2023) .......................................................19, 20

*SAP Am., Inc. v. Valtrus Innovations Ltd.*,
    No. 1:24-cv-000054-GBW, D.I. 1, D.I. 7 (D. Del. Jan. 15, 2024) .............2, 5, 9, 10

*In re Stingray IP Sols. LLC*,
    56 F.4th 1379 (Fed. Cir. 2023) ...........................................................................13, 14

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009)................................................................................14

*Trachtenberg v. Marriott Int'l, Inc.*,
    2021 WL 5299823 (D. Del. Nov. 15, 2021) .......................................................19, 22

*Valtrus Innovations Ltd. v. SAP Am., Inc.*,
    No. 2:24-cv-533, D.I. 1 (E.D. Tex. July 12, 2024) ......................................... *passim*

*Valtrus Innovations Ltd. v. CyrusOne, LLC*,
    No. 2:24-cv-00259 (E.D. Tex. Apr. 17, 2024).........................................................10

*Valtrus Innovations Ltd. v. CyrusOne, LLC*,
    No. 2:24-cv-00534 (E.D. Tex. July 12, 2024) .........................................................10

*Valtrus Innovations Ltd. v. Digital Realty Tr., Inc.*,
    No. 2:24-cv-00139 (E.D. Tex. Feb. 27, 2024)..........................................................10

*Valtrus Innovations Ltd. v. Digital Realty Tr., Inc.*,
    No. 2:24-cv-00535 (E.D. Tex. July 12, 2024) .........................................................10

*Valtrus Innovations Ltd. v. Google LLC*,
    No. 3:22-cv-00066 (N.D. Tex. Jan. 10, 2022) .........................................................11

*Valtrus Innovations Ltd. v. Google LLC,*
    No. 3:24-cv-01795 (N.D. Tex. July 12, 2024) .......................................................................10

*Valtrus Innovations Ltd. v. SAP Am., Inc.,*
    No. 2:24-cv-00021-JRG, D.I. 1 (E.D. Tex. Jan. 15, 2024) .................................................2, 11

*World Tanker Carriers Corp. v. M/V Ya Mawlaya,*
    99 F.3d 717 (5th Cir. 1996) .....................................................................................................14

**Statutes**

10 Del. C. § 3104(c) ................................................................................................16, 17, 19

28 U.S.C. § 1338(a) ............................................................................................................12

28 U.S.C. § 1400(b) ............................................................................................................12

35 U.S.C. § 271(a) ..............................................................................................................12

35 U.S.C. § 286 ...................................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ................................................................................................ *passim*

Fed. R. Civ. P. 9 ........................................................................................................23, 24, 25

Fed. R. Civ. P. 12(b)(6) ...................................................................................................23, 25

Fed. R. Civ. P. 41 ...............................................................................................................10

Fed. R. Civ. P. 56 ...............................................................................................................23

16 Moore's Federal Practice - Civil § 108.123 [c] ...........................................................12

# I. INTRODUCTION

Valtrus Innovations Ltd. ("Valtrus") and Key Patent Innovations Ltd. ("KPI") formed Valinvest, LLC ("Valinvest")—an entity that exists only in Delaware and nowhere else ███████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Ms. Angela Quinlan, a shared director and signatory to transactions across Defendants' entities, acknowledged that Valinvest's only office is the Delaware office of its registered agent. Since December 31, 2021, ██████ █████████████████████████████████████████████████████████████ With respect to Valinvest, no other state can say any such beneficial ownership interest resides in its borders. That fact is unique to Delaware. Further, Patent Platform Services, LLC ("PPS"), KPI and Valtrus's Delaware alter ego and agent, has engaged in all facets of Defendants' patent monetization scheme, including patent portfolio acquisition, pre-suit negotiation, licensing, and litigation. If any state has personal jurisdiction resulting from Defendants' corporate activities and the resulting ownership of the HPE Patent Portfolio, it is Delaware—and Delaware alone.

Defendants' meritless motion to dismiss primarily relies on a misunderstanding of Rule 4(k)(2) (focusing on specific rather than general jurisdiction) and a flawed assertion that Defendants lack personal jurisdiction in Delaware. Further, each basis in Defendants' shotgun approach to dismiss this case fails because (1) Defendants' conduct demonstrates that they intend to assert the five non-overlapping patents; (2) exercising declaratory judgment jurisdiction over this case is the only recourse to resolve this dispute as *Valtrus I* (lacking Article III standing) and *Valtrus II* (improperly duplicative of *Valtrus I*) are likely to be dismissed; (3) application of the first-to-file rule is unwarranted because *Valtrus I* lacks standing; and (4) SAP America sufficiently states claims against Defendants for violating the Delaware Consumer Fraud Act ("DCFA"). The Court should reject Defendants' Motion and maintain jurisdiction over this action.

## II.    PROCEDURAL HISTORY

Valtrus initially filed suit against SAP SE and SAP America, Inc. (collectively, "SAP") in the Eastern District of Texas ("EDTX"), asserting infringement of U.S. Patent Nos. 6,823,409; 6,889,244; 7,152,182; 7,313,575; 6,691,139; 7,936,738; and 6,871,264.  *Valtrus Innovations Ltd. v. SAP Am., Inc.*, No. 2:24-cv-00021-JRG, D.I. 1 (E.D. Tex. Jan. 15, 2024) ("*Valtrus I*").  SAP contemporaneously filed a declaratory judgment action against Valtrus for non-infringement of U.S. Patent Nos. 8,166,173; 7,672,929; 6,889,244; 7,251,588; 6,850,866; and 9,229,984 and against Valtrus and PPS for violating the DCFA in the District of Delaware.  *SAP Am., Inc. v. Valtrus Innovations Ltd.*, No. 1:24-cv-000054-GBW, D.I. 1, D.I. 7 (D. Del. Jan. 15, 2024) ("*SAP I*").  Soon thereafter, jurisdictional discovery revealed that Valtrus ceded all exclusionary and substantial rights to KPI via their Declaration of Trust ("Declaration"), which exposed incurable standing defects in *Valtrus I* and *SAP I*.  Ex. W.  SAP filed a motion to dismiss for lack of standing in *Valtrus I* ("Standing Motion") (Ex. AK), and voluntarily dismissed *SAP I* (*SAP I*, D.I. 36).  SAP then filed this declaratory judgment action, which seeks non-infringement relief as to all patents raised by Valtrus and KPI against SAP and further seeks relief from Defendants violating the DCFA ("*SAP II*").  Weeks later, Valtrus and KPI filed a second, duplicative lawsuit against SAP in Texas, asserting the same patents as in *Valtrus I*.  *Valtrus Innovations Ltd. v. SAP Am., Inc.*, No. 2:24-cv-533, D.I. 1 at 1 (E.D. Tex. July 12, 2024) ("*Valtrus II*").  SAP prepared a timeline, summarizing the litigation to-date and the Patents-in-Suit across each case.  Ex. AU at Fig. 1, Table 1.

## III.    BACKGROUND

### A.    Delaware Is the Epicenter of Defendants' Corporate Structure

New PP Holdings LLC ("PP Holdings"), a Delaware organization, sits atop Valtrus's corporate structure and is the sole parent company to New PP Licensing LLC ("PP Licensing"),

another Delaware organization.  Exs. A; B; C at 1.  PP Licensing's registered Delaware office is located in Wilmington, Delaware.  Ex. C at 1.  On the next rung below, PP Licensing is the sole parent company and shareholder of KPI.  Exs. D at 29; E at 5; F at 1; G at 1.  PP Licensing is also the sole parent company of PPS, which is KPI's U.S. licensing agent for the HPE Patent Portfolio, including the Patents-in-Suit.  Exs. H at 1; I at 1–3.  Like PP Licensing, PPS's registered Delaware office is located in Wilmington, Delaware.  Ex. H at 1.  One rung down sits KPI, formerly known as Dolya Holdco 4 Limited, and on the final rung is Valtrus, formerly known as Dolya Holdco 9 Limited.  Exs. J–O; P at 2, 16; Q at 1.  KPI is Valtrus's sole parent and is also the sole member of Valinvest, LLC ("Valinvest"), which provides funding for licensing and litigation expenses for the HPE Patent Portfolio.  Exs. R; S at 1–8; T at 95:3–97:12.  As its sole member, KPI formed Valinvest in Delaware, and Valinvest's only office is that of its registered agent, located in Wilmington, Delaware.  Exs. R at 1; T at 89:10–17.  SAP created a diagram, depicting the relationship between the multiple corporate entities.  Ex. AU at Fig. 2.

Outside the direct corporate structure of Defendants, 

### B.    Valtrus and KPI Are Alter Egos

Despite Defendants' complex corporate network, the facts reveal that the numerous shell entities can properly be analyzed and treated as a single entity.  KPI and Valtrus are Irish companies with the same closet-sized, shared-office style "principal place of business" in Dublin, Ireland.

---

[1] During her deposition, Ms. Kalpana Kumar was repeatedly asked about the ownership relationship ▮▮▮▮▮▮▮▮▮▮, but she was unable to provide any clarity on the subject. Ex. AD at 36:21–38:25.

D.I. 16 ¶¶ 3–4; Ex. T at 20:14 –16, 22:15–23.[2]  In addition to sharing that "office," KPI and Valtrus share the same five directors: Angela Quinlan, Glen Gibbons, Máiréad Lyons, Paul Riley, and Paul Seaman.  Exs. T at 16:16–17:16, 20:5–16, 22:6–24:10; U at 1–3; V at 1–3.  Ms. Quinlan is the Managing Director for both KPI and Valtrus.  D.I. 16 ¶ 2.  Valtrus is virtually indistinguishable from KPI as Valtrus uses the same address, the same office, the same Microsoft SharePoint to save documents, the same phone number, and the same laptop to conduct business.  Ex. T at 10:23–11:25, 20:14–16, 26:9–12, 36:14–37:16.  Ms. Quinlan also signs most, if not all, documents on behalf of both KPI and Valtrus.  *See, e.g.*, Ex. W at 6–7.

In addition to sharing its directors and business infrastructure, KPI financially supports Valtrus.  ███████████████████████████████████████████████████████████ ████████████████████████████████████████████  Valtrus's public financial statements reveal a meager ***$1 of total assets*** on its balance sheet.  Ex. P at 10.  ████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Valtrus and KPI entered into the Declaration on January 15, 2021, which was signed by Ms. Quinlan on behalf of both companies.  Exs. W at 6–7; Q. ████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

---

[2] KPI and Valtrus's shared office space serves merely as a superficial business façade.  It is only two by three meters (or approximately 6.5 feet by 10 feet) and contains nothing more than a single desk, a single chair, and some shelving space. Ex. T at 23:19–21.  The purported office lacks other essential equipment including a server, phone, or basic computer hardware.  *Id.* at 25:12–18, 33:13–19.  Only one out of 10 KPI employees ██████████████ visits the office up to once per week, and Ms. Quinlan only visits up to once every two weeks.  *Id.* at 35:14–21, 35:22–36:11.



### C. KPI and Valtrus's Corporate Relationship with PPS

PPS, a Delaware entity, was created for the sole purpose of providing various patent services for KPI and its subsidiaries, including, for example, portfolio management and maintenance, portfolio monetization, portfolio acquisition, advisor engagement, and litigation management. Exs. I at 2–3; AD at 50:6–8 (

). As Valtrus previously conceded in its prior Motion to Dismiss in *SAP I*, PPS functions as both Valtrus/KPI's agent and alter ego. *See SAP I*, D.I. 15 at 22 ("In addition, a principal (Valtrus) cannot conspire with its agent (PPS)[.]"); *see also SAP II*, D.I. 16 ¶ 6 ("[Kalpana Kumar] had primary responsibility for handling, in conjunction with PPS's Valtrus team, all aspects of Valtrus's licensing discussions with SAP."). This is unsurprising given that KPI has controlled and continues to control all facets of PPS.[3] Here, KPI and PPS are virtually indistinguishable. Mr. Paul Riley, who is a Director for KPI and Valtrus as well as Founder, General Counsel, and Executive Vice President for PPS,

Exs. U at 2; V at 2; AD at 21:19–22:1, 48:17–19; I at 3. Ms. Kumar testified

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

> **D.** **The Patents-in-Suit Were Acquired from Delaware Entities with Delaware Entities**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ On January 15, 2021, Valtrus entered into the Patent Purchase Agreement with Hewlett Packard Enterprise Development, LP a Texas limited partnership with its headquarters in Houston, Texas, and Hewlett Packard Enterprise Company ("HPEC"), a Delaware corporation with its headquarters in San Jose, California (collectively, "HPE"), to acquire HPE's Patent Portfolio, including the Patents-in-Suit.  Ex. AC.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

Although the Valtrus-KPI Declaration specifies that funds would be transferred to Valtrus to acquire the Patents-in-Suit, it was KPI that transferred those funds to HPE.  And before KPI transferred any funds to HPE, KPI received those funds ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ ▋ ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ SAP created a diagram, illustrating the various

transactions and exchanges of funds between entities: Ex. AU at Fig. 3. ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.*

On December 31, 2021, KPI formed Valinvest in Delaware ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

_____

[4] PP Licensing owns the only shares issued by KPI.  PP Licensing acquired its first share of KPI on October 28, 2020, for $11.5 million.  Ex. E at 3, 5.  PP Licensing acquired a second share on January 15, 2021, for $20 million and a third share on June 17, 2021, for $19.5 million from KPI.  Exs. F at 1; G at 1.  KPI provided a loan to PP Licensing on April 5, 2022, for $11.5 million, which was discharged on December 1, 2022.  Exs. D at 29; E at 5.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████     ████████████████████

████████████████████████

**E.** **Valtrus and KPI's Licensing Efforts and Litigation Against Delaware Entities**

As previously noted, PPS, via Ms. Kumar and Mr. Seaman, was responsible for directly

negotiating licenses with several Delaware entities on behalf of Valtrus and KPI, including ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  Ms. Kumar, assisted by

Messrs. Jin-Meng Ho and Anthony Grillo, led licensing negotiations with SAP America, a

Delaware entity.  D.I. 17 ¶ 6.████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  Valtrus

---

█████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

and KPI also initiated several patent-infringement suits against various Delaware entities: SAP America, T-Mobile, Verizon, AT&T, Dawn Acquisitions LLC, Digital Realty Trust, Inc., Cyrus One, LLC, and NTT Data Services, LLC.  *SAP I*, D.I. ¶ 3; *SAP II*, D.I. 16 ¶ 7; Ex. AO.

## IV.     ARGUMENT

### A.     The Court Has Subject Matter Jurisdiction Over Counts IV–V and VII–IX

Defendants claim that SAP faces no real injury or threat from KPI and Valtrus asserting the five non-overlapping patents (Counts IV–V and VII–IX) as KPI and Valtrus have not threatened to assert them since January 15, 2024**.**  D.I. 14 at 9.  Defendants' arguments are belied by their conduct and prior litigation.[6]  It is undisputed that Valtrus and KPI threatened to assert these patents at least as early as January 15, 2024.  *Id.*  Valtrus and KPI rely on the passage of time to allay fears that there is no pending threat, but when SAP reached out to Valtrus and KPI for a covenant not to sue to confirm that Valtrus and KPI intend not to actually assert these patents, they refused.  Ex. AW at 1.  To extinguish the threat of litigation, Valtrus and KPI could have agreed to a covenant not to sue.  Valtrus and KPI refused.  And so now SAP is left with pursuing a ruling from this Court that it does not infringe as a matter of law.

Defendants' reliance on, *Prasco, LLC v. Medicis Pharm. Corp.*, is inapt because the declaratory judgment defendants there did not threaten an infringement action, whereas Valtrus and KPI concede they have done so here.  537 F.3d 1329, 1340 (Fed. Cir. 2008); D.I. 14 ¶ 9.  Nevertheless, even Defendants' own authority recognizes that their refusal to agree to a covenant

---

[6] During pre-suit correspondence, Defendants primarily relied on the non-overlapping patents (the '984, '866, '588, '929, and '173 Patents) to demand that SAP take a license or face litigation (and as pleaded, those allegations must be accepted as true, at this stage).  D.I. 2 ¶¶ 22–29; Exs. AY; AZ.  Notably, Valtrus does not move to dismiss the '244 Patent (the only overlapping patent between *Valtrus I* and *SAP I*, and reasserted in *Valtrus II*), further demonstrating the ongoing threat of litigation on the non-overlapping patents from Defendants.

not to sue is an important consideration in this analysis. *Id.* at 1341 (observing that "a defendant's failure to sign a covenant not to sue is one circumstance to consider").

Valtrus and KPI cite no authority establishing a time bar on patents that were previously threatened. SAP is mindful, however, that Valtrus and KPI's procrastination and decision to wait until ***after*** expiration to assert multiple patents imposes its own time bar under the Patent Act. 35 U.S.C. § 286 (barring patentee from recovering damages from acts of infringement more than six years before filing suit). Valtrus and KPI also rely on *Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, which is irrelevant because SAP has not failed to comply with an agreed-upon binding alternate dispute resolution. 590 F. Supp. 2d 662, 663 (D. Del. 2008). This action is SAP's remaining option to extinguish the looming threat of patent litigation as to the five non-overlapping patents. Thus, the Court should maintain jurisdiction over Counts IV–V and VII–IX.

## B. The Court Should Retain Jurisdiction of This Case Over Counts IV–XV

Defendants argue that SAP does not actually face legal risk from Valtrus "because of an unresolved legal dispute." D.I. 14 at 10–11. Defendants disregard why *SAP II* was filed in the first place. SAP filed its Standing Motion in *Valtrus I* after jurisdictional discovery revealed that Valtrus lacked standing. SAP dismissed *SAP I* via a Rule 41 notice of dismissal and filed this case (*SAP II*), which is the first-filed case that perfected standing by including KPI. Defendants allege that the outcome of SAP's Standing Motion is speculative, but their actions prove the opposite. ***All*** of Valtrus's pending cases suffer from that standing infirmity, which has led to Valtrus filing identical, co-pending lawsuits with KPI, tacitly conceding Valtrus alone lacks Article III standing.[7]

---

[7] Valtrus and KPI filed duplicative suits for three other cases, while maintaining the originally filed cases (Ex. AQ, *compare Valtrus Innovations Ltd. v. CyrusOne, LLC*, No. 2:24-cv-00534 (E.D. Tex. July 12, 2024), *with Valtrus Innovations Ltd. v. CyrusOne, LLC*, No. 2:24-cv-00259 (E.D. Tex. Apr. 17, 2024)); (Ex. AR, *compare Valtrus Innovations Ltd. v. Digital Realty Tr., Inc.*, No. 2:24-cv-00535 (E.D. Tex. July 12, 2024), *with Valtrus Innovations Ltd. v. Digital Realty Tr., Inc.*, No. 2:24-cv-00139 (E.D. Tex. Feb. 27, 2024)); (Ex. AS, *compare Valtrus Innovations Ltd. v.*

Here, SAP filed *SAP II* and dismissed *SAP I*, so that the parties can promptly litigate their disputes uninterrupted by the procedural morass created by Valtrus and KPI, as *Valtrus I* and *Valtrus II* face a strong likelihood of dismissal. Without support, Defendants cite "typical considerations" that "counsel in favor of EDTX," but none weigh in favor because (1) several EDTX suits face dismissal; (2) as explained, Delaware is the center of this dispute; (3) if *Valtrus I* and *Valtrus II* are dismissed, no witnesses will need to travel to Texas; and (4) Defendants fail to explain how the location of counsel is relevant to this dispute.

### C. The Court Should Decline to Apply the First-to-File Rule

Defendants insist that the Court should apply the first-to-file rule based on *Valtrus I*. But *Valtrus I* is likely to cease existing because Valtrus alone lacks Article III standing. It can only cure that defect by the dismissal of *Valtrus I*. Not only is it legally improper, but it is also illogical to transfer under the first-to-file rule when there is likely no jurisdiction in the target action. Valtrus cannot point to a single exclusionary right that it maintains because Valtrus ceded all rights in and to the Patents-in-Suit to KPI. Ex. AK-3 at 8–9. As a result, *Valtrus I* must be dismissed because Article III standing "is incurable if absent at the initiation of the suit." *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024).

Although it is true that the first-to-file rule generally applies, "it is also true that the presence of other unique and compelling circumstances may still be for the second-filed court to decide." *Hill v. Frito-Lay, Inc.*, 2023 WL 2759764, at *5 n.2 (E.D. Tex. Apr. 3, 2023). Here, there is a jurisdictional defect, which is exactly what the Federal Circuit has identified as a proper circumstance to deny transfer under first-to-file. *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) ("Justification for an exception may be found in . . . [the] absence

---

*Google LLC*, No. 3:24-cv-01795 (N.D. Tex. July 12, 2024), *with Valtrus Innovations Ltd. v. Google LLC*, No. 3:22-cv-00066 (N.D. Tex. Jan. 10, 2022)).

of jurisdiction over all necessary or desirable parties."). This Court has followed that same logic. *Nexon Am. Inc. v. Uniloc 2017 LLC*, 2020 WL 3035647, at *4 (D. Del. June 5, 2020) (Connolly, J.) (declining to apply the first-to-file rule because although the patentee's infringement case was first-filed in EDTX, the court concluded that EDTX did not have venue over the accused infringers under 28 U.S.C. § 1400(b)). The Court should decline to apply the first-to-file rule.

### D. Delaware Has Personal Jurisdiction Over Valtrus and KPI Under Rule 4(k)(2)

Rule 4(k)(2) requires that: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018). "The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* Therefore, to satisfy the third requirement, courts apply "a three-part test considering whether (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* at 1000.

The first requirement of Rule 4(k)(2) is incontestably met as SAP's claims of non-infringement arise under federal patent law. 35 U.S.C. § 271(a); 28 U.S.C § 1338(a).

Defendants argue that Rule 4(k)(2) fails under the second requirement, but their argument improperly relies on specific jurisdiction in Texas and not general jurisdiction there. FED. R. CIV. P. 4(k)(2)(A) ("For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of *general* jurisdiction[.]"); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018); 16 Moore's Federal Practice - Civil § 108.123 [c]; *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1310 (Fed. Cir. 2019).

Valtrus and KPI are neither headquartered nor incorporated in the United States, failing to satisfy the paradigmatic forms of general jurisdiction. D.I. 16 ¶¶ 3–4. Under the correct inquiry, Valtrus and KPI have failed to demonstrate that their contacts are "so substantial and of such a nature as to render the[m] at home" in Texas. *Daimler AG v. Bauman*, 571 U.S. 137, 139 n.19 (2014).

Defendants argue that "[c]ourts in Texas have jurisdiction over Valtrus and KPI because both have engaged in 'enforcement activities' in that state and consented to jurisdiction there." D.I. 14 at 18. But their self-serving, ex-post consent to jurisdiction in Texas is the type of conduct the Federal Circuit has held does not foreclose the application of Rule 4(k)(2). *In re Stingray IP Sols. LLC*, 56 F.4th 1379, 1385 (Fed. Cir. 2023) ("A defendant . . . cannot simply use a 'unilateral statement of consent' to preclude application of Rule 4(k)(2)."); *see also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294–95 (Fed. Cir. 2012) (same). Even Defendants' own cited authority recognizes the distinction that "the defendant's burden . . . entails identifying a forum . . . where jurisdiction would have been proper at the time of filing, ***regardless of consent***." *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 680–81 (D. Del. 2014). *Robert Bosch* is also inapt as the court found that Rule 4(k)(2)(A) was satisfied, not because the defendant consented to jurisdiction in Maryland, but because one defendant (API) supplied millions of components to its co-defendants (Alberee) within Maryland for several years and thus established a record of continuous contacts with Maryland. *Id.* Defendants have not demonstrated any applicable level of contacts with Texas, let alone the continuous contacts contemplated in *Robert Bosch*.

Defendants' reliance on *Avocent* and *ACCO Brands* is misplaced because those cases contradict their contention that Rule 4(k)(2) does not apply because of Defendants' "'enforcement activities' in [Texas]." See D.I. 14 at 18. Neither authority addresses the application of Rule 4(k)(2) or supports the notion that filing lawsuits in Texas establishes that Defendants are "subject to the jurisdiction in [Texas]'s courts of general jurisdiction" pursuant to Rule 4(k)(2)(A). FED. R.

13

CIV. P. 4(k)(2)(A); *see also Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (discussing generally relevant inquiries for personal jurisdiction in a declaratory judgment action outside the context of Rule 4(k)(2) and general jurisdiction, and observing that a defendant patentee's enforcement activities may suffice to support ***specific*** jurisdiction); *ACCO Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545, at *6–7 (D. Del. Jan. 17, 2024) (recognizing that the relevant inquiry in determining ***specific*** personal jurisdiction in a declaratory judgment action is whether "the defendant patentee purposefully directed such enforcement activities at residents of the forum" and holding that the sale of the declaratory-judgment defendant's products in Delaware insufficient to confer general jurisdiction).[8]

The final requirement of Rule 4(k)(2) and the three-prong test of *M-I Drilling* is also satisfied here. The parties do not contest the first prong of *M-I Drilling*. Valtrus and KPI entered into the Patent Purchase Agreement with HPE, which resulted in Valtrus and KPI obtaining the HPE Patent Portfolio. This alone is sufficient to satisfy the first prong. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) (holding that an entity that "sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States"); *see also* D.I. 2 ¶ 43 (summarizing Valtrus's patent litigation in the United States). The second prong of the *M-I Drilling* three-part test is also met. Specific personal jurisdiction in a

---

[8] Defendants' view of Rule 4(k)(2) (such that its enforcement activities would render them subject to suit in their preferred forum—i.e., Texas) is contrary to the original intent of Rule 4(k)(2) and Federal Circuit precedent. First, prior to the passage of Rule 4(k)(2), "there was a gap in the courts' jurisdiction: while a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns, if she had insufficient contacts with any single state, she would not be amenable to service by a federal court sitting in that state," and Rule 4(k)(2) remedied that problem. *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721 (5th Cir. 1996). Further, mere enforcement activities of its patents, disguised as general jurisdiction, is nothing more than consent to preferred jurisdiction, contrary to Federal Circuit precedent. *In re Stingray*, 56 F.4th at 1385 ("A defendant . . . cannot simply use a 'unilateral statement of consent' to preclude application of Rule 4(k)(2).").

declaratory judgment case focuses on the extent to which a defendant patentee "purposefully directed [such enforcement activities] at residents of the forum," and the extent to which the declaratory judgment action "arises out of or relates to those activities." *Avocent*, 552 F.3d at 1332. Here, Defendants sent several demand letters to various U.S. entities. Ex. AS. Valtrus and KPI have filed three virtually identical patent infringement complaints in EDTX, asserting seven overlapping patents against SAP SE and SAP America, as well as at least nine other separate lawsuits. Exs. AH–AJ; D.I. 2 ¶ 43. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████ Exs. AC at 18–19; AA at 6; AB at 8; AL § 1.2; *see also Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1205 (Fed. Cir. 2018) (holding patentee's licensing program and threats of litigation are "enforcement activities"). Finally, the third prong is also met, which is directed to fairness to litigate in the United States ***as a whole***. *M-I Drilling*, 890 F.3d at 999 ("The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits."). Defendants do not analyze the fairness factors as to the United States as a whole, nor could they as they have already availed themselves of several U.S. venues.[9] *See* D.I. 2 ¶ 43

---

[9] Regardless, Defendants initially contend that litigation would be burdensome when Valtrus and KPI are already litigating in EDTX, but this fails to account for the fact that (1) *Valtrus I* likely lacks constitutional standing and should be dismissed, and (2) KPI and Valtrus improperly filed a second, duplicative case against SAP (*Valtrus II*), burdening SAP with several lawsuits. Exs. AH, AJ. Second, Delaware has an interest in resolving this lawsuit as Delaware is the center of the acquisition, monetization, licensing, and enforcement of the Patents-in-Suit. *Akro Corp. v. Luker*, 45 F.3d 1351, (Fed. Cir. 1995). Third, SAP will not be able to obtain the same relief elsewhere as both *Valtrus I* and *Valtrus II* will likely be dismissed, and this is the first-filed suit that perfected standing and is not simultaneously pending with an identical action. Fourth, if EDTX dismisses both lawsuits, there will no longer be parallel, related suits; only this case will proceed. Fifth, both venues are equally interested in proceeding with the just and efficient resolution of pending disputes, and *SAP II* is the only suit that properly aligns because it perfected standing. Sixth, the parties have already stipulated that discovery applies to both venues, so litigation can proceed uninterrupted in Delaware.

### E. Delaware Has General Jurisdiction Over Defendants

"General jurisdiction can be established for all causes of action based on a corporation's place of incorporation, principal place of business, or the exception case where the corporation's contacts are so substantial and of such a nature as to render the corporation at home in that state." *Daimler*, 571 U.S. at 139 n.19 (citation omitted). A defendant or its agent is essentially at home when either, "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenues from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(4).

Because PPS is incorporated in Delaware, the Court has general personal jurisdiction over it. Also, this Court has general jurisdiction over both KPI and Valtrus as they have availed themselves of Delaware having received substantial revenue from services offered to residents of Delaware. Non-practicing patent licensing companies have been found subject to general jurisdiction because the "product" they sell in the forum is their patent licenses and freedom from infringement suits. *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 394 (E.D.N.Y. 2013) (finding general jurisdiction over declaratory judgment defendant that "systematically and continuously avails itself of the laws of New York by contacting New York companies; and entering into licensing agreements with, and deriving substantial revenue benefit from, them."). Here, PPS's and Valinvest's presence can be imputed to KPI and Valtrus based on their involvement in licensing and enforcement activities of the HPE Patent Portfolio. KPI formed Valinvest, an entity that exists only in Delaware and nowhere else, ████████████████████ ████████████████████████████████████████████████ Even Ms. Quinlan acknowledges that Valinvest's only office is located in Delaware. Ex. T at 89:10–17. No other state can say that any such beneficial ownership interest resides in its borders. That fact is

unique to Delaware.  PPS, which was exclusively created for KPI, ███████████



████ Valtrus recently settled active litigation with three Delaware entities (AT&T, Verizon, and

T-Mobile) and presumably entered licensing agreements to at least those asserted patents.  Ex.

AX.  These contacts are sufficient to render Valtrus and KPI essentially at home in Delaware.

### F.    Delaware Has Specific Jurisdiction Over Defendants

To establish specific jurisdiction in Delaware, it must be shown that (1) "there is a statutory

basis for jurisdiction under the forum state's long-arm statute" and (2) "the exercise of jurisdiction

comports with the defendant's right to due process."  *Registered Agents, Ltd v. Registered Agent,*

*Inc.*, 880 F. Supp. 2d 541, 545 (D. Del. 2012).  Under Delaware's long-arm statute, a court may

exercise personal jurisdiction over a defendant or its agent when either: "(1) [t]ransacts any

business or performs any character of work or service in the State; (2) [c]ontracts to supply services

or things in this State; or (3) [c]auses tortious injury in the State."  10 Del. C. § 3104(c)(1)–(3).  If

the defendant falls within Delaware's long-arm statute, the court must determine whether the

defendant is subject to personal jurisdiction under the Due Process Clause.  *Id.*  Delaware law is

unclear whether the long-arm statute is co-extensive with the Due Process Clause, *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 665–66 (D. Del. 2018); however, the long-arm statute must be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.6 (3d Cir. 2013).

"Specific personal jurisdiction exists when the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." *BP Chems. Ltd. v. Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (citation omitted). In the declaratory judgment context, "specific personal jurisdiction determinations are tied to the underlying enforcement activities" that prompt the filing of the suit. *Liqui-Box Corp. v. Scholle Corp.*, 2013 WL 3070872, at *4 (D. Del. June 17, 2013). The relevant inquiry is "to what extent . . . the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Avocent*, 552 F.3d at 1332 (citation omitted). And district courts have been reversed for dismissing declaratory judgment actions in similar situations to here. *See, e.g.*, *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (reversing dismissal for lack of personal jurisdiction of plaintiff's declaratory-judgment complaint because patent-holding company, which was a wholly owned subsidiary of exclusive licensee, threatened enforcement in forum by representatives of the patent-holding company and engaged in negotiations to sublicense patent in forum, and because parent corporation's licensing and revenue derived from forum were properly attributed to the patent holding company).

Personal jurisdiction in Delaware may be satisfied by "agency theory." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 693 F. Supp. 2d 409, 420 (D. Del. 2010). Under an agency theory, actions of a subsidiary are properly attributable to its parent. *Id.* Factors considered in determining whether there is an agency relationship are "(1) the

extent of overlap of officers and directors, (2) methods of financing, (3) the division of responsibility for day-to-day management, and (4) the process by which each corporation obtains its business." *Rockwell Automation, Inc. v. Eu Automation, Inc.*, 2022 WL 1978726, at *10 (D. Del. June 7, 2022). Personal jurisdiction may also be satisfied under an "alter ego theory," where a subsidiary's actions are attributed to the parent and ignore corporate boundaries. *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 347–48 (D. Del. 2009). The plaintiff must show "some fraud, injustice, or inequity in the use of the corporate form," including a showing that the two corporations did not observe corporate formalities. *Id.* at 348.

      1.    <u>KPI and Valtrus satisfy the Delaware Long-Arm Statute and the Due Process Clause via their agency relationship with PPS and Valinvest</u>.

KPI and Valtrus fall within the ambit of the Delaware long-arm statute via their contacts with PPS and Valinvest because they both (1) transact business or perform any character of work or service in Delaware and (2) contract to supply services or things in Delaware. 10 Del. C § 3104(c)(1)–(2). PPS is KPI and Valtrus's agent such that the Court has personal jurisdiction over KPI and Valtrus. As previously held in this District, jurisdiction exists "over foreign parents when they closely control Delaware subsidiaries. That makes sense. If the parent directs its Delaware subsidiary, it must have contact with Delaware. The parent's upstream actions elsewhere would flow downstream to Delaware. So the parent cannot be surprised if it is forced to litigate here." *Trachtenberg v. Marriott Int'l, Inc.*, 2021 WL 5299823, at *1 (D. Del. Nov. 15, 2021); *see also Roe v. Wyndham Worldwide, Inc.*, 2023 WL 5348862, at *5 (D. Del. Aug. 21, 2023).

Here, PPS operates exclusively as KPI's agent for the benefit of Valtrus as the relationship among PPS, KPI, and Valtrus satisfies each agency factor, sufficient to confer an agency relationship. Indeed, PPS was formed in Delaware for the sole purpose of benefiting KPI and Valtrus. Ex. AD at 50:6–8. Under the first factor—the extent of overlap of officers and directors—

there is overlap among PPS, KPI, and Valtrus, because Messrs. Seaman (Founder and CEO of PPS) and Riley (Founder, General Counsel, and Executive Vice President of PPS) are both directors of KPI and Valtrus. *Id.* at 48:17–19; Exs. U; V. Under the second factor— methods of financing— Defendants utilize the same financing methods from Delaware sources to support this litigation,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

Under the third factor—the division of responsibility for day-to-day management—KPI enlists and directs PPS through all aspects of the HPE Patent Portfolio, including, for example, portfolio management and maintenance, portfolio monetization, portfolio acquisition, advisor engagement, and litigation management. Ex. I at 2–3. More specifically, KPI has controlled and continues to control all facets of PPS, such as seeking out patent portfolios for acquisition, including the HPE Patent Portfolio (Ex. AD at 57:19–58:8, 59:13–20); assessing patent portfolios for acquisition (*id.* at 57:2–9, 64:8); negotiating the acquisition and agreement of the HPE Patent Portfolio with HPE (*id.* at 65:3–14, 67:5–23); issuing demand letters and engaging in pre-suit licensing negotiations with various entities, including the preparation of infringement positions (*id.* 22:17–19, D.I. 17 ¶¶ 6–7); litigation strategy, including the preparation of infringement positions, selecting specific patents from the HPE Patent Portfolio to assert in active litigation, and particular entities to sue for patent infringement (Ex. AD at 70:9–72:4, 77:11–78:1); and active litigation throughout the entire duration of this case, (*id.* at 85:20–88:20). ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

62:5–11.  He and other KPI directors, approved the general terms of the agreement in their capacities for KPI.  *See, e.g.*, Ex. T at 103:20–23.  As it pertains to the active litigation of this case, Mr. Riley for PPS, is responsible for administering litigation services for KPI.  Exs. U at 2; V at 2; AD at 21:19–22:1, 48:17–19; I at 3.  Indeed, Mr. Riley ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████Ex. AD at 78:20–23, 87:17–88:20.

Under the fourth factor—the process by which each corporation obtains its business—PPS's only form of business is via KPI as it was created only for KPI.  █████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██ Indeed, PPS, via Ms. Kumar, "had primary responsibility for handling . . . all aspects of Valtrus's licensing discussion with SAP."  D.I. 17 ¶ 6.

Thus, PPS acting on behalf of KPI and Valtrus, has assisted in negotiating and executing several licensing agreements with various Delaware entities ██████████████████.  Exs. AL–AN.  Further, KPI and Valtrus, with the direct involvement of Mr. Riley for PPS, have engaged with counsel in filing various patent infringement suits against various Delaware entities.  D.I. 2 ¶ 43.  Because of these licensing agreements and litigation between Delaware entities, KPI and Valtrus have earned a substantial portion of their revenue from their monetization efforts of the HPE Patent Portfolio via PPS, which is sufficient to satisfy Delaware's long-arm statute.

These contacts comport with due process as (1) Defendants directed their activities at residents of the forum; (2) they arise out of or relate to Defendants' activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair. Defendants directed their enforcement activities at residents of Delaware, which arise out of and relate to their activities with Delaware, as they have asserted the HPE Patent Portfolio acquired from Delaware entities, with Delaware entities, using funds from Delaware entities, against Delaware entities, including SAP America. D.I. 2 ¶ 43. Defendants have also licensed the HPE Patent Portfolio ███████████████ ███████████████████████████ which is sufficient to satisfy specific personal jurisdiction. *Avocent*, 552 F.3d at 1334 (collecting cases where enforcement activities sufficient to satisfy specific jurisdiction include, for example, "entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing ore regularly doing business in the forum"); *ACCO Brands*, 2024 WL 181545, at *3 (same); *Akro*, 45 F.3d at 1547 ("[T]he plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed."). Personal jurisdiction in Delaware is reasonable and fair because this is the only non-duplicative lawsuit free from standing deficiencies. Defendants "cannot be surprised if [they are] forced to litigate here" given their ongoing enforcement activities directed at Delaware residents. *Trachtenberg*, 2021 WL 5299823, at *1.

2.   <u>KPI and Valtrus satisfy the Delaware long-arm statute and Due Process Clause via their alter ego, PPS.</u>

Based on the foregoing, PPS is also the alter ego of KPI and Valtrus and is virtually indistinguishable. As previously established under the agency relationship, PPS, KPI, and Valtrus's conduct are one in the same because PPS was exclusively created for KPI. PPS is also engaged in all facets of business, including the acquisition, licensing, and litigation of the Patents-in-Suit. Defendants contend that SAP America has not alleged fraud, which ignores three counts

of SAP America's Complaint under the DCFA. *Compare* D.I. 14 at 17, *with* D.I. 2 at 15–18.

### G. The DCFA Portion of the Complaint Does Not Fail Under Rule 12(b)(6)

Defendants' Motion to Dismiss Counts I-III pursuant to 12(b)(6) should be denied. SAP's Complaint is sufficiently pled and all well pleaded allegations, when taken as true and viewed in the light most favorable to SAP, allow the Court to draw the reasonable inference that Defendants are liable under the DCFA. When considering dismissal under 12(b)(6), the court "must accept as true all plausible facts alleged in [the plaintiff's] complaint and draw all reasonable inferences in [the plaintiff's] favor[,] constru[ing] the complaint in the light most favorable to [the plaintiff]." *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019). A district court cannot weigh evidence or the credibility of the parties on a question of disputed material fact. *Id.* "When 'matters outside the pleadings are relied upon in a Rule 12(b)(6) motion, a district court must either deny the motion or convert it to a Rule 56 motion for summary judgment.'" *L.T. Assocs., Ltd. Liab. Co. v. Sussex Cnty. Council*, 2013 WL 3998462, at *3 (D. Del. Aug. 5, 2013) (citation omitted).

First, accepting SAP's well-pleaded facts as true, SAP alleges a plausible claim under the DFCA—even under the heightened Rule 9 standard. The Complaint identifies multiple communications between Defendants and SAP in the 2022 timeframe in which Defendants wanted to discuss "licensing terms." D.I. 2 ¶ 51. The Complaint alleges that Defendants did not discuss good-faith licensing terms with SAP, nor did any terms attempt to reflect the value of the patents, present any recognized form of valuation, or tie terms they presented to SAP to any benchmark licenses. *Id.* ¶ 52. The Complaint also avers that Defendants did not present SAP with all material facts, including access to agreements between Valtrus and HPE, other benchmark licenses, or the true ownership of the Patents-in-Suit, including that Valtrus only held the Patents-in-Suit under a bare trust for the exclusive benefit of KPI. *Id.* With respect to the true ownership of the patents, SAP has demonstrated that Valtrus actually lacked any exclusionary rights, which demonstrates

that the allegations are ***actually true***.  Regardless, at this stage, the Court **must** accept the allegations as true, and the allegations are sufficient to plead a claim under the DFCA.

Even if the Court considers Defendants' evidence and decides this issue on the merits (which it should not), Defendants' merits arguments fail to show the allegations are insufficient. Defendants' assertion that the "DCFA claims fail" rely on a false premise there is an "absence of any connection to Delaware" within the pleadings.  D.I. 14 at 26.  A cursory reading of the Complaint demonstrates the opposite is true.  *See* D.I. 2 ¶¶ 39, 44, 49–53.  Defendants' Motion tries to heighten the pleading standard to require all activity occur within Delaware, whereas Defendants' own citations demonstrate activity implicating Delaware is sufficient.  D.I. 14 at 27– 28.  Defendants' reliance on *Priceline* is misguided because the Complaint alleges specific facts as to Defendants' ongoing activities in Delaware.  *Marshall v. Priceline.com Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. 2006).  Accordingly, Defendants' request to dismiss the DCFA claims due to an "absence of any connection to Delaware" should be denied.  Defendants' flawed argument for dismissal of the DCFA claims also underlies their argument for dismissing Counts II and III.  D.I. 14 at 31 ("Thus, if the court dismisses the DCFA claim, the conspiracy and aiding/abetting claims should be dismissed too.").  By extension, if the motion is denied as to Count I, Defendants' arguments assuming the absence of tortious conduct should also be denied.

Second, Defendants' request for dismissal pursuant to Rule 9(b) should also be denied. Defendants' disagreement with the factual allegations and legally insufficient standing assertions do not change that "defendants [are] on notice of the precise misconduct with which they are charged."  *See Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008).  Defendants' own argument concedes that necessary information is squarely within Defendants' control and not accessible to SAP.  *See* D.I. 14 at 29–30 ("SAP knew it wasn't being provided these documents.").  Further, Defendants identify the specific arguments within the

Complaint that satisfy the notice requirement even pursuant to Rule 9(b). *Id.* Despite Defendants' insistence on ignoring what facially appears in the Complaint, SAP has provided "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'— that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). Defendants' reliance on *Johnson v. Ace Cash Express Inc.*, is misplaced because SAP does not allege that the terms of a contract were overly complex, but rather, specifically alleges the obscurement of business relationships and the property ownership of the patents at issue. 2015 WL 4397482, at *3 (D. Del. 2015).

### H. The DCFA Portion of the Complaint Does Not Fail Under Rule 12(b)(6)

Absent Defendants' assertion regarding "underlying tortious conduct" discussed above, Defendants argue that Counts II and III should be dismissed because "an agent cannot conspire with nor aid and abet its principal." D.I. 14 at 31. Defendants' own authority recognizes there is no brightline rule and that exceptions to this broad principle exist. *See Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *18 (Del. Ch. June 30, 2021). Consistent with SAP's allegations, the agency relationship between Defendants is not the norm upon which an insulation of liability, let alone dismissal of claims, should apply. Further, Defendants' remaining citations are inapplicable. *See Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020) ("Whether a corporation can conspire with its subsidiaries, affiliates or agents is an area of law that, 'both inside and outside of Delaware, is more characterized by confusion than clarity.'"); *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005) (finding employees within a business entity cannot be one of the two required entities for conspiracy, as those employees are the company).

## V. CONCLUSION

Based on the foregoing, the Court should deny Defendants' Motion.

Dated: September 25, 2024

Public Version Dated:
October 2, 2024

Respectfully submitted,

By: */s/ Monté T. Squire*

Monté T. Squire (No. 4764)
**DUANE MORRIS LLP**
1201 N. Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
mtsquire@duanemorris.com

Aleksander J. Goranin (*pro hac vice* pending)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
agoranin@duanemorris.com

Thomas M. Melsheimer (*pro hac vice* pending)
Michael A. Bittner (*pro hac vice* pending)
M. Brett Johnson (*pro hac vice* pending)
**WINSTON & STRAWN, LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
mbittner@winston.com
mbjohnson@winston.com

*Counsel for SAP America, Inc.*