# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **VALTRUS INNOVATIONS LTD.,** | Civil Action No. 2:24-cv-21 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| | **[FILED UNDER SEAL]** |
| **SAP AMERICA, INC. AND SAP SE,** | |
| Defendants. | |

**DEFENDANTS SAP AMERICA, INC. AND SAP SE'S MOTION TO DISMISS FOR
LACK OF STANDING PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)**

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418

<h1 style="text-align:center;"><u>TABLE OF CONTENTS</u></h1>

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
|  | A. Valtrus's Corporate Structure | 2 |
|  | B. Key Patent Innovations Props Up Valtrus | 2 |
|  | C. Valtrus and KPI Enter Into the Declaration of Trust | 3 |
|  | D. KPI Acquires the Asserted Patents for Valtrus | 6 |
| III. | PROCEDURAL HISTORY | 7 |
| IV. | LEGAL STANDARD | 8 |
|  | A. Valtrus Must Prove That It Had Constitutional Standing When It Filed the Complaint | 8 |
|  | B. Valtrus Must Prove It Had Statutory Standing | 9 |
| V. | ARGUMENT | 10 |
|  | A. Valtrus Did Not Have Constitutional Standing to Sue When It Filed This Action | 10 |
|  | B. Valtrus Did Not Have Statutory Standing When It Filed This Action | 16 |
| VI. | CONCLUSION | 18 |

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 2 of 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
   626 F.3d 1213 (Fed. Cir. 2010)..................................................................15, 17

*Booth v. United States*,
   990 F.2d 617 (Fed. Cir. 1993)...........................................................................9

*Diggs v. Dep't Hous. & Urb. Dev.*,
   670 F.3d 1353 (Fed. Cir. 2011)..........................................................................9

*FDA v. All. for Hippocratic Med.*,
   602 U.S. __, 2024 WL 2964140 (2024).............................................................15

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
   93 F.3d 774 (Fed. Cir. 1996)............................................................................15

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001)........................................................................16

*Intell. Tech LLC v. Zebra Techs. Corp.*,
   101 F.4th 807 (Fed. Cir. 2024) ....................................................................9, 13

*Intell. Tech LLC v. Zebra Techs. Corp.*,
   No. 6:19-CV-00628-ADA, 2022 WL 3088572 (W.D. Tex. Aug. 3, 2022)..............11, 13, 15

*Keene Corp. v. United States*,
   508 U.S. 200 (1993).........................................................................................10

*Lans v. Digit. Equip. Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001)...........................................................................9

*Legacy Cmty. Health Servs., Inc. v. Smith*,
   881 F.3d 358 (5th Cir. 2018) ..............................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).........................................................................................10

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019)........................................................10, 11, 15, 16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................................10

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 3 of 25

*Mobile Equity Corp. v. Walmart Inc.*,
    No. 2:21-cv-00126-JRG-RSP, 2022 WL 4112237 (E.D. Tex. 2022) .....................................10

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) ....................................................................................................14

*Oaxaca v. Roscoe*,
    641 F.2d 386 (5th Cir. 1981) ..........................................................................................................9

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995) .......................................................................................................8

*Paradise Creations, Inc. v. UV Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) ............................................................................................10, 15

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ..........................................................................................................9

*Propat Int'l Corp. v. Rpost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007) ........................................................................................15, 16, 17

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) ....................................................................................10, 11, 15

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ....................................................................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................................................................8

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) .......................................................................................................................8

*Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*,
    19 F.4th 1315 (Fed. Cir. 2021) .....................................................................................................8

*Valtrus Innovations Ltd. v. SAP Am., Inc.*,
    No. 2:24-cv-00021-JRG (E.D. Tex. Jan. 15, 2024) .................................................................4, 7

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) .......................................................................................................................8

*WiAV Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ...............................................................................................8, 11

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) ..........................................................................................................9

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 4 of 25

**Statutes**

35 U.S.C. § 100(d) .................................................................................................15

35 U.S.C. § 281 ..................................................................................1, 10, 15, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ...................................................................1, 8, 11, 18

Fed. R. Civ. P. 12(b)(6) ...................................................................1, 9, 10, 18

U.S. Constitution Article III........................................................................ *passim*

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 5 of 25

## I.      INTRODUCTION

Defendants SAP America, Inc. ("SAP America") and SAP SE (together with SAP America, "SAP") move to dismiss Plaintiff Valtrus Innovations Limited's ("Valtrus") Complaint because (1) under Rule 12(b)(1), Valtrus does not have any exclusionary rights in the Asserted Patents and (2) under Rule 12(b)(6), Valtrus is not the patentee and does not hold substantial rights in the Asserted Patents. Accordingly, this case must be dismissed because Valtrus has neither constitutional standing under Article III of the U.S. Constitution nor statutory standing under 35 U.S.C. § 281.

Throughout this suit, Valtrus has maintained that it is the rightful owner of the seven asserted patents. But Valtrus surrendered any and all exclusionary and substantial rights when it executed the Declaration of Trust ("Declaration") and placed the Asserted Patents in trust for the exclusive benefit of its sole parent company, Key Patent Innovations Limited ("KPI"). Ex. A. The plain, unambiguous language of that Declaration vests KPI with all exclusionary and economic rights to the Asserted Patents. *Id.* Valtrus possesses no rights associated with ownership, as it cannot assign, transfer, license, or enforce the Asserted Patents without KPI's consent. *Id.* at ii, iii. Further, the Asserted Patents do not form any part of Valtrus's estate, meaning they are shielded in the event Valtrus declares bankruptcy. *Id.* at 4. In contrast, KPI's exclusive control over the patents is not limited by Valtrus's consent, and KPI can assign, transfer, license, or enforce the Asserted Patents as it sees fit. *Id.* at ii. In other words, KPI's rights to the Asserted Patents are "unfettered." *Id.*

Any claim that Valtrus is the owner or patentee of the Asserted Patents is a thinly veiled attempt to shield both companies from judgment or the orders of any court. Valtrus is nothing more than an uncapitalized shell who holds the Asserted Patents in name only on behalf of KPI

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 6 of 25

(on whose direction it must act) and, therefore, lacks constitutional or statutory standing to bring this suit.

## II.     FACTUAL BACKGROUND

### A.     Valtrus's Corporate Structure

New PP Holdings LLC ("PP Holdings") sits atop Valtrus's corporate structure and is the sole parent company to New PP Licensing LLC ("PP Licensing"). Ex. D at 1. On the next rung below, PP Licensing is the sole parent company and shareholder of KPI.[1] Exs. K at 29; L at 5; M at 1; N at 1. PP Licensing is also the sole parent company to Patent Platform Services, LLC ("PPS"), which is KPI's U.S. licensing agent for the HPE Patent Portfolio, including the Asserted Patents. Exs. Y; Z. On the final rung of the corporate latter, KPI, formerly known as Dolya Holdco 4 Limited, is Valtrus's, formerly known as Dolya Holdco 9 Limited, sole parent company. Exs. E– J; O at 2, 16; AA at 1. KPI is also the sole member of Valinvest, LLC ("Valinvest"), which provides funding for licensing and litigation expenses for the HPE Patent Portfolio. Exs. AB; V at 1–8; P at 95:3–97:12.

### B.     Key Patent Innovations Props Up Valtrus

KPI and Valtrus are Irish companies with both of their principal places of business at the Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin, Ireland A96 VR66. (ECF 41-3 ¶¶ 3–4); Exs. Q at 1; R at 1. In addition to sharing an office, KPI and Valtrus share the same five directors: Angela Quinlan, Glen Gibbons, Máiréad Lyons, Paul Riley, and Paul Seaman. Exs. P at 16:16–17:16, 20:5–16, 22:6–24:10; Q at 1–3; R at 1–3. And Angela Quinlan is the Managing

---

[1] PP Licensing owns the only shares issued by KPI. PP Licensing acquired its first share of KPI on October 28, 2020, for $11.5 million. Ex. L at 3, 5. PP Licensing acquired a second share on January 15, 2021, for $20 million and a third share on June 17, 2021, for $19.5 million from KPI. Exs. M at 1; N at 1. KPI provided a loan to PP Licensing on April 5, 2022, for $11.5 million, which was discharged on December 1, 2022. Exs. L at 5; K at 32.

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 7 of 25

Director for both KPI and Valtrus. (ECF 41-3 ¶ 2). Valtrus is virtually indistinguishable from KPI as Valtrus uses the same address, the same office, the same Microsoft SharePoint to save documents, the same phone number, and the same laptop to conduct business. Ex. P at 10:23–11:25, 20:14–16, 26:9–12, 36:14–37:16. Angela Quinlan also signs most, if not all, documents on behalf of both KPI and Valtrus. *See* Ex. A at 6–7.

In addition to sharing its directors and business infrastructure, KPI financially supports Valtrus. ███████████████████████████████████████████████████████

███████████████████████████████████████. Ex. P at 29:25–30:8. But Valtrus's public financial statements reveal a strikingly lower amount reported on its balance sheet—merely *$1 of total assets*. Ex. O at 10. Whenever Valtrus has an operating expense, KPI directly pays the bill. Ex. P at 30:12–31:9, 97:7–12. Anytime Valtrus received any payments for licensing patents, it transferred 100 percent of those payments directly to KPI. Ex. A at 3. Since December 31, 2021,

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████[2] Exs. U at 1; V at 1; W at 2.

### C.    Valtrus and KPI Enter Into the Declaration of Trust

Before acquiring the Asserted Patents, Valtrus and KPI entered into the Declaration on January 15, 2021, which was signed by Angela Quinlan on behalf of both companies. Exs. A at 6–7; AA. The sole purpose of the Declaration is for Valtrus, the Trustee, to hold the

---

[2] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. AB at 3.

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 8 of 25

Asserted Patents in trust for KPI, the Beneficiary. Exs. A at 2; AA. In other words, Valtrus holds

the Asserted Patents in name only as the Asserted Patents were acquired with funds from KPI, and

the Declaration provides KPI with ████████████████████████████████████████████

████████████████████████████████. *See generally* Exs. A at 2; AA. Notably, Valtrus

requires prior authorization from KPI to take any action relating to the Asserted Patents. Ex. A at 2.

Although Recital (B) of the Declaration labels Valtrus as "Owner" of the Asserted Patents,

subsection 2.1(c) grants KPI ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

4

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 10 of 25



Indeed, as detailed above, Valtrus requires KPI's consent to take any action with the Asserted Patents. KPI, on the contrary, does not require consent from Valtrus to transfer, license, or enforce the Asserted Patents, as no obligations are imposed on KPI by the Declaration. Valtrus is truly an "owner" in name only as all rights of ownership are vested in and controlled by KPI.

### D. KPI Acquires the Asserted Patents for Valtrus

On January 15, 2021, Valtrus entered into the Patent Purchase Agreement with Hewlett Packard Enterprise Development, LP, a Texas limited partnership with its principal place of business at 11445 Compaq Drive West, Houston, Texas 77070-1443, and Hewlett Packard Enterprise Company, a Delaware corporation with its principal place of business at 6280 America Center Drive, San Jose, California 95002 (collectively, "HPE") to acquire HPE's Patent Portfolio. Ex. S. The Portfolio includes U.S. Patent Nos. 6,823,409; 6,889,244 (the "'244 Patent"); 7,152,182; 7,313,575; 6,691,139; 7,936,738; and 6,871,264 (collectively, "the Asserted Patents"). Ex. T; (ECF 1). While the Patent Purchase Agreement purports to give Valtrus all right, title, and interest in and to the Asserted Patents, Valtrus entered into the Declaration on the same date as the

---

[3] ████████████████████████████████████████████████████

Exs. V at 1; W at 3.

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 11 of 25

Purchase Agreement and ceded all of its rights to KPI, as detailed above. Exs. S at 4; A at 4–5, 8–10.

While the Declaration presumes that funds would be transferred to Valtrus to acquire the Asserted Patents, KPI controlled the transfer of those funds to HPE. And before KPI directed the transfer of any funds to HPE, KPI received those funds ████████████████████████████

Exs. P at 43:11–14; AA; AC at 2–3; AD at 2. ██████████████████████████████

███████████████████████████████ Exs. P at 55:25–57:13; AA; AC at 2–3; AD at 2. ███

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Exs. P at 58:19–59:23, 58:19–24; AC at 2. ██████████████████████████. Exs. P at 60:13–24; AC at 2. ██████████████████████████████████████████

██ Ex. P at 60:25–62:10. ████████████████████████████████████

████████████████████████████ *Id.* at 63:7–64:17. ████████████████

████████████████████████████████████████████████████████████

█████████████████████. *Id.*

## III.    PROCEDURAL HISTORY

Three years after signing the Declaration, on January 15, 2024, Valtrus filed suit against SAP, asserting infringement of the Asserted Patents in this Court. *Valtrus Innovations Ltd. v. SAP Am., Inc.*, No. 2:24-cv-00021-JRG, ECF No. 1 ¶ 5 (E.D. Tex. Jan. 15, 2024). That same day and almost simultaneously, SAP America filed its Complaint (and later its First Amended Complaint), which (1) requests declaratory judgment that SAP does not infringe the '244 Patent or U.S. Patent Nos. 8,166,173; 7,672,929; 7,251,588; 6,850,866; and 9,229,984, and (2) alleges that Valtrus and its licensing agent, PPS, have violated the Delaware Consumer Fraud Act (along with related

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 12 of 25

conspiracy and aiding-and-abetting claims). *SAP Am., Inc. v. Valtrus Innovations Ltd.*, No. 1:24-cv-00054-GBW, ECF No. 1 ¶ 1, ECF No. 7 ¶ 1 (D. Del. Jan. 15, 2024); Exs. A ¶ 1; R ¶ 1.

## IV.    LEGAL STANDARD

### A.    Valtrus Must Prove That It Had Constitutional Standing When It Filed the Complaint

Federal Rule of Civil Procedure 12(b)(1) requires the Court to dismiss a case for lack of subject matter jurisdiction. "The burden of demonstrating standing falls to [Plaintiff], as '[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.'" *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990)).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017). To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Regional circuit law governs standards for the "dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021). Here, Federal Circuit law governs an entity's constitutional standing in a patent-infringement action. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010). "[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation." *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir.

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 13 of 25

2018) (quotation marks omitted). A defect in subject matter jurisdiction may be raised at any time, and none of waiver, estoppel, or the parties' consent may overcome it. *See Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993); *see also Diggs v. Dep't Hous. & Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011).

A motion to dismiss for lack of subject matter jurisdiction can take the form of a facial attack on the complaint or a factual attack on the subject matter of the Court. "A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which jurisdiction depends[,] and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). A defendant makes a "factual attack" upon the court's subject matter jurisdiction by submitting affidavits, testimony, or other evidentiary materials. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In opposition, the plaintiff cannot merely rest on its pleadings—it must instead "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to those allegations. *See Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). If the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect is incurable if absent at the initiation of the suit. *See Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 817 (Fed. Cir. 2024) ("*Intell. Tech II*").

### B.   Valtrus Must Prove It Had Statutory Standing

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a case for failure to state a claim upon which relief can be granted. The Federal Circuit has applied statutory standing to dismiss infringement claims asserted by plaintiffs who did not own sufficient rights in their asserted patent. *Lans v. Digit. Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001). To determine

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 14 of 25

standing, the court must find that the plaintiff qualifies as a "patentee" under 35 U.S.C. § 281. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019). Section 281 provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281.

Unlike constitutional standing, statutory standing is not jurisdictional. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). The proper vehicle with which to bring a statutory standing claim is therefore under Rule 12(b)(6). *Lone Star*, 925 F.3d at 1235. Statutory standing may only be cured by adding a plaintiff with proper standing. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 n.4 (Fed. Cir. 2005). Under the Federal Rules, a 12(b)(6) motion can be brought at any point up to and at trial; therefore, a challenge to a party's ability to bring suit under § 281 can be raised during the pretrial process and even at trial. *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4112237, at *2 (E.D. Tex. 2022).

## V.    ARGUMENT

### A.    Valtrus Did Not Have Constitutional Standing to Sue When It Filed This Action

Standing is a constitutional requirement pursuant to Article III and is a threshold jurisdictional issue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A court may exercise subject matter jurisdiction only if a plaintiff has standing on the date that it files suit. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (There is a "longstanding principle that the 'jurisdiction of the Court depends upon the state of things at the time of the action brought.'" (citation omitted)). "The plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" to assert standing. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309–10 (Fed. Cir. 2003). "If the original plaintiff lacked Article III initial standing, the suit

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 15 of 25

must be dismissed, and the jurisdictional defect cannot be cured" after the inception of the lawsuit. *Schreiber*, 402 F.3d at 1203.

The Complaint alleges that "Valtrus is the assignee of and owns all right and title to" the Asserted Patents. (ECF ¶ 5). But Valtrus neither owned the Asserted Patents nor had the constitutional right to sue when it filed this case. Indeed, Valtrus does not own the patents to this day. Although Plaintiff purports to be the owner of the Asserted Patents in its Complaint, the Declaration to which it is bound makes clear that it holds the Asserted Patents in name only, as it lacks any rights associated with true ownership. Therefore, Valtrus did not have constitutional standing to assert claims of patent infringement against SAP when it filed its Complaint. Accordingly, this Motion presents a factual challenge to subject matter jurisdiction under Rule 12(b)(1).

The "touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary interest in patent that, if violated by another, would cause the party holding exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1267 (Fed. Cir. 2010). Exclusionary rights "involve the ability to exclude others from practicing an invention or to forgive activities that would normally be prohibited under the patent statutes." *Lone Star*, 925 F.3d at 1235. As evidenced by the Declaration, Valtrus lacks both abilities.

Although Valtrus claims to "hold all rights and title" to the Asserted Patents, the "terms and conditions" to which it is bound in the Declaration effectively strip Valtrus of all rights associated with ownership. *See Intell. Tech LLC v. Zebra Techs. Corp.*, No. 6:19-CV-00628-ADA, 2022 WL 3088572, at *2 (W.D. Tex. Aug. 3, 2022) ("*Intell. Tech I*") (emphasizing that "holding title to a patent is not the same as holding exclusionary rights to a patent"). Simply referring to oneself as an owner does not establish rights of ownership. *Lone Star*, 925 F.3d at 1234 ("[C]onstitutional

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 16 of 25

standing . . . does not depend on labels.") Rather, the terms of the Declaration make clear that all exclusionary rights are actually held by KPI, the parent company that manages every facet of Valtrus's business. Valtrus can act in relation to the Asserted Patents only ███████████████ ████████████████████████████████████████████████████████████████████ ██████████ Ex. A at 4. Indeed, Valtrus acts at the exclusive direction of KPI because Valtrus must provide the services pursuant to the Declaration exclusively to KPI and is explicitly prohibited from ████████████████████████████████████████████████████████ ██████████████████████. *Id.* at ii.

████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████

A bare trust, as created by the Declaration and Letter of Appointment, reinforces Valtrus's inability to control transfer of the Asserted Patents. Exs. A at 4 ("It is acknowledged that the Trust shall be a bare trust and deemed not to constitute or create security of any kind."); AA at 1 ("[KPI]

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 17 of 25

hereby request[s] [Valtrus] to act as trustee of a bare trust (the 'Trust') under which [KPI] will be the sole beneficiary.").  Irish law provides that, Valtrus, as a bare trustee, has no interest in the Asserted Patents and is no more than a "passive recipient[] of the [Asserted Patents] without any management responsibilities."[4]  Ex. AF at 9.  Unlike a special trust, which imbues trustees with "an active role in administering the affairs of the trust," Valtrus has no such duties, and its only purpose is to hold the Asserted Patents in name only until KPI directs Valtrus to transfer them to KPI.  *Id.*; Ex. A at 4 ███████████████████████████████

████████████████████████████████████████).  In addition to receiving ████████████

███████ to the Asserted Patents, it is KPI, and not Valtrus, that owns the Asserted Patents. Valtrus merely holds them and must ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

---

[4] U.K. law similarly distinguishes the authority of bare and special trustees. "[A] bare trustee holds property in trust for a single beneficiary absolutely and indefeasibly, and is a mere ***passive repository*** for the beneficial owner, ***having no duties other than a duty to transfer the property to the beneficial owner or as he directs***." Ex. AE at 1 (emphasis added). But special trustees retain active duties such as "executing the trusts of a will or settlement, with administrative (and perhaps also dispositive) powers accompanying his active duties." *Id.*



. *Id.* In this way, Valtrus cannot exclude a third party from using the Asserted Patents if the third party receives its license from KPI. *See Intell. Tech I*, 2022 WL 3088572, at *3.[5] By that same token,

*Id.* at i (emphasis added).

Finally, the structure created in the Declaration makes Valtrus effectively judgment proof from any court.

." *Id.* at 4. The seriousness of this issue is compounded by the fact that Valtrus is severely undercapitalized and publicly reported that it possesses $1 of total assets. Ex. O at 10. This means that if the Court requires Valtrus to pay court costs, attorneys fees, or the like that exceed merely $1, Valtrus would be unable to do so, and the Court would have no alternative remedy to require Valtrus to fulfill its obligations. The Court could

---

[5] On appeal, this case was reversed on the basis that the exclusionary rights depended on a default option in the contract and thus were not "presently divested" but only divested upon a triggering future event. *See Intell. Tech II*, 101 F.4th at 817. The Declaration here is significantly broader and without any such limitations as KPI has always retained exclusionary rights; Valtrus has never retained exclusionary rights as it assigned them to KPI before acquiring the Asserted Patents (*compare* Ex. A at 3–4, *with* Ex. S at 11–12); and Valtrus has not retained a single exclusionary right (*see* Section II.C).

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 19 of 25

not even place a lien or force a sale of the Asserted Patents to pay any court-ordered monetary fees or awards as Valtrus cannot transfer the Asserted Patents or take any action that would place a lien or other encumbrance on the Asserted Patents without KPI's consent.[6] Ex. A at ii. Valtrus is, in effect, nothing more than an uncapitalized shell company created to shield its parent company and actual owner of the Asserted Patents, KPI, from judgment.

"A patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). The Declaration cedes all of these rights to KPI, effectively stripping Valtrus of any legal rights to the Asserted Patents. Without legal rights to enforce, exclude, or transfer the Asserted Patents, Valtrus lacks any and all exclusionary rights. And without an exclusionary right, Valtrus can suffer no injury for patent infringement and, therefore, cannot meet the threshold required for constitutional standing.[7] This case must be dismissed because Valtrus did not have constitutional standing when it was filed. *Schreiber Foods*, 402 F.3d at 1203 ("[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured" after the inception of the lawsuit.); *Paradise Creations, Inc.*

---

[6] Valtrus could not even discharge any court costs in bankruptcy, as the Declaration ███████████████████████████████ Ex. A at 4.

[7] "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *FDA v. All. for Hippocratic Med.*, 602 U.S. __, 2024 WL 2964140, at *5 (2024). The requirement of constitutional standing is meant to filter out baseless claims from those in which an actual injury has occurred, thereby protecting the finite and invaluable resources of the justice system. This safeguard protects society from the burdens of needless litigation and untrustworthy plaintiffs. Valtrus's claims run contrary to these values, as Valtrus suffers no injury in any alleged infringement of the Asserted Patents, needlessly squandering judicial resources in a patent suit with no standing.

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 20 of 25

*v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996).

### B.      Valtrus Did Not Have Statutory Standing When It Filed This Action

Statutory standing is governed by Title 35, which allows a "patentee" to bring a civil action for patent infringement. 35 U.S.C. § 281. "Patentee" is defined by 35 U.S.C. § 100(d) and includes the original patentee and the "successor in title." 35 U.S.C. § 100(d). Even if the patentee does not transfer formal legal title, the patentee may affect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee. *See Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("[I]f the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281.").

A party can only bring suit in its own name if it possesses "all substantial rights" in the patents. *See Lone Star*, 925 F.3d at 1235; *Intell. Tech I*, 2022 WL 3088572, at *2. The determination of whether a party possesses substantial rights looks to the "totality" and "substance" of an agreement rather than to "formalities or magic words." *Lone Star*, 925 F.3d at 1229; *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by the parties do not control."). A party possesses all "substantial rights" where it has the ability to enforce and alienate the patents. *Lone Star*, 925 F.3d at 1231. Valtrus has neither, as it transferred all substantial rights to KPI in the Declaration, making KPI the actual owner. Ex. A at ii ████████████████████████████████████████████ ████████ (emphasis added); *id.* ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████ (emphasis added); Ex. V at 1 Assignment Agreement ("[KPI] is the sole beneficial ***owner*** of [the Asserted Patents] . . . acquired by Valtrus.") (emphasis added).

Valtrus does not have autonomy or discretion to enforce the Asserted Patents. Ex. A at iii

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ Because Valtrus

must ███████████████████████████████████, Valtrus's right to bring suit is merely

illusory. *Lone Star*, 925 F.3d at 1231 ("[A] transferee that receives all substantial patent rights from

a transferor would *never* need consent from the transferor to file suit."); *Propat*, 473 F.3d at 1191

("Authentix's right to veto licensing and litigation decisions also constitutes a significant

restriction on Propat's interest in the patent."); *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal.,*

*Inc.*, 248 F.3d 1333, 1338 (Fed. Cir. 2001) (holding that the requirement of the licensor to consent

to the licensee's actions meant that the licensee lacked all substantial rights). As an illusory right

to enforce a patent cannot be considered "substantial," Valtrus cannot prove "substantial rights"

on these grounds.

Likewise, as a bare trustee under Irish law, ███████████████████████████

████████████████ Exs. A at ii; AF at 9 ("[A] bare trustee has no interest in the assets of the

trust . . . and that such a trustee either never had active duties to perform or had ceased to be subject

to such duties."); *see Lone Star*, 925 F.3d at 1231 (finding a restriction on alienation requiring

consent of another party to transfer fundamentally inconsistent with possession of all substantial

rights). ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ Ex. A

at 5, ii; *Propat*, 473 F.3d at 1191 ("Propat's obligation to notify Authentix as to the selection of all

targets for licensing or suit and to obtain Authentix's consent to all [litigation and licensing]

decisions indicates that Authentix retains substantial ongoing control of the sort typically

17

associated with the retention of an ownership interest in the patent."). ██████████████

███████████████████████████████████████████████████. Ex. A at

ii. While Valtrus claims that it "holds" the Asserted Patents, "holding" the Asserted Patents is

literally all that it can do with them—they are, for all intents and purposes, completely untouchable

by Valtrus. In contrast, ███████████████████████████████████████████████

████████████████████████████.

Further, the full economic interests and monetization rights also belong to KPI, not Valtrus,

further illustrating that Valtrus lacks substantial rights. *Id.* at ii; *Propat*, 473 F.3d at 1191 ("[T]he

fact that [a party] retains a substantial share of the proceeds [of commercial exploitation of the

patent] is consistent with [the party] retaining ownership rights in the patent."). In other words,

any profit made in licensing the Asserted Patents solely benefits KPI.

The substantial rights an entity possesses is what defines "patentee" for purposes of

statutory standing. *See A123 Sys.*, 626 F.3d at 1218. Based on the totality and substance of the

Declaration, it is clear that KPI, and not Valtrus, is the effective patentee and owner. When the

exercise of a "right" requires the consent of a third party, the right is illusory. Here, illusory rights

are all that Valtrus can actually claim. In other words, because Valtrus made its ability to sell,

assign, transfer, license, and enforce the Asserted Patents ████████████████████████

████████████, it transferred all substantial rights to KPI and relinquished its position as

"patentee" under 35 U.S.C. § 281. Therefore, it lacks statutory standing to bring suit against SAP.

## VI.    CONCLUSION

Based on the foregoing, SAP respectfully requests that the Court grant its Motion and

dismiss this case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure

to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 23 of 25

Dated:   June 27, 2024                     Respectfully submitted,

                              By:   */s/ Thomas M. Melsheimer*
                                    _____
                                    Thomas M. Melsheimer
                                    State Bar No. 13922550
                                    tmelsheimer@winston.com
                                    M. Brett Johnson
                                    State Bar No. 00790975
                                    mbjohnson@winston.com
                                    Michael A. Bittner
                                    State Bar No. 24064905
                                    mbittner@winston.com
                                    Patrick Clark
                                    State Bar No. 24115706
                                    pclark@winston.com
                                    **WINSTON & STRAWN LLP**
                                    2121 N. Pearl St., 9th Floor
                                    Dallas, TX 75201
                                    Telephone: (214) 453-6500

                                    **ATTORNEYS FOR
                                    SAP AMERICA, INC. and SAP SE**

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 24 of 25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served by email on all counsel of record on June 27, 2024.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer

## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order, as this filing contains confidential information. (ECF 35).

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer

SAP - Exhibit 1010
SAP v. Valtrus et al. - IPR2025-00418
Page 25 of 25