# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VALTRUS INNOVATIONS LTD., <br><br> *Plaintiff*, <br> v. <br> SAP AMERICA, INC. and SAP SE, <br><br> *Defendants*. | § § § § § § § § § CIVIL ACTION NO. 2:24-CV-00021-JRG <br><br> **FILED UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Defendants SAP America, Inc. and SAP SE's (collectively, "SAP" or "Defendants") Motion to Dismiss for Lack of Standing Pursuant to Rule 12(b)(1) and Rule 12(b)(6) (the "MTD," Dkt. No. 51), and (2) Plaintiff Valtrus Innovation Ltd.'s ("Valtrus" and with SAP, the "Parties") Opposed Motion for Leave to Amend Complaint to Join an Additional Party Under Rule 20 (the "Motion for Leave," Dkt. No. 56).

Having considered the MTD, the Court finds that it should be **GRANTED-IN-PART and DENIED-IN-PART**. Having considered the Motion for Leave, the Court finds that it should be **GRANTED**.

I.  INTRODUCTION

On January 15, 2024, Valtrus filed its Complaint for Patent Infringement and Jury Demand ("Complaint"). (Dkt. No. 1.) In the Complaint, Valtrus accused SAP of infringing U.S. Patent Nos. 6,823,409; 6,889,244; 7,152,182; 7,313,575; 6,691,139; 7,936,738; and 6,871,264 (collectively, "the Asserted Patents"). (*Id.* ¶¶ 5, 30–75.) Valtrus alleges that it "is the assignee of and owns all right and title to" the Asserted Patents. (*Id.* ¶ 5; *see also id.* ¶¶ 8, 10, 12, 14, 16, 18, 20.)

A.  Acquisition of the Asserted Patents and Key Patent Innovations Limited

On January 15, 2021, Valtrus entered into a Patent Purchase Agreement with Hewlett Packard Enterprise Development, LP and Hewlett Packard Enterprise Company (collectively,

"HPE") to acquire HPE's Patent Portfolio, which includes the Asserted Patents. (Dkt. Nos. 51-20, 51-21.) The Patent Purchase Agreement gave Valtrus all right, title, and interest in and to the Asserted Patents. (Dkt. No. 51-20 at 4.)

However, on the same day that Valtrus executed the Patent Purchase Agreement, it also executed a Declaration of Trust ("Declaration") with Key Patent Innovations Limited ("KPI" or "Key Patent"). (Dkt. No. 51-2.)[1] According to the Declaration, Valtrus would hold certain Intellectual Property, including the Asserted Patents, in trust for the benefit of KPI. (*Id.*) While Valtrus holds the Asserted Patents, the Declaration provides KPI with substantial authority over the alienation, enforcement, and monetization of the Asserted Patents. (*Id.*) For example, the Declaration provides the following:



---

[1] The Declaration refers to Valtrus as "Trustee" and KPI as "Beneficiary." (Dkt. No. 51-2 at 2.)

2



The Declaration was signed by Ms. Angela Quinlan on behalf of both Valtrus and KPI. (*Id.* at 6–7.) Ms. Quinlan, as KPI's Managing Director, "authorized Valtrus's lawsuit against SAP in this action before Valtrus filed it on January 15, 2024." (Dkt. No. 55-1 ¶ 5.)

B.  *Valtrus II*

While the Parties briefed their positions on SAP's MTD, Valtrus filed a second complaint against SAP in this Court. *Valtrus Innovations Ltd. v. SAP America, Inc.*, No. 2:24-cv-00533-JRG, Dkt. No. 1 (E.D. Tex. July 12, 2024) ("*Valtrus II*"). In *Valtrus II*, Valtrus accuses SAP of infringing the same Asserted Patents at issue in the above-captioned case. *Id.* ¶¶ 6, 31–76. Valtrus also named

3

KPI as a co-plaintiff. *Id.* at 1 ("Because SAP has moved to dismiss the SAP I Action for lack of constitutional and statutory standing (Dkt. 51), however, out of an abundance of caution and to preserve all of Plaintiffs' rights, Plaintiffs are filing this lawsuit adding KPI as an additional party."). Valtrus characterizes the *Valtrus II* complaint as "protective." (Dkt. No. 71 at 3.)

## II. LEGAL STANDARD

### A. Constitutional Standing

To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Regional circuit law governs standards for the "dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021). Here, Federal Circuit law governs an entity's constitutional standing in a patent-infringement action. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010). A defect in subject matter jurisdiction may be raised at any time, and none of waiver, estoppel, or the parties' consent may overcome it. *See Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993); *see also Diggs v. Dep't Hous. & Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011).

### B. 35 U.SC. § 281[2]

Only a "patentee" may bring a civil action for patent infringement. 35 U.S.C. § 281. Title 35 defines a "patentee" as the party to whom the patent was issued and the successors in title to the patentee, but it does not include mere licensees. 35 U.S.C. § 100(d). "A patent owner may

---

[2] While SAP refers to "statutory standing" throughout its briefing, 35 U.S.C. § 281 "is simply a statutory requirement; it does not 'implicate standing or subject-matter jurisdiction.'" *Univ. of S. Fla.*, 19 F.4th at 1319 n.1 (quoting *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019)). As the Federal Circuit has moved away from calling compliance with § 281 "statutory standing," *see also Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024), this Court will follow suit.

4

transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee," who may then maintain an infringement suit in its own name. *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010).

The Federal Circuit has listed several rights that should be examined "to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent," including:

> the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent.

*Id*. at 1360–61. "[T]he exclusive right to make, use, and sell, as well as the nature and scope of the patentee's retained right to sue accused infringers are the most important considerations in determining whether a license agreement transfers sufficient rights to render the licensee the owner of the patent." *Univ. of S. Fla.*, 19 F.4th at 1320.

### III.  ANALYSIS

#### A.  Defendants SAP America, Inc. and SAP SE's Motion to Dismiss for Lack of Standing Pursuant to Rule 12(b)(1) and Rule 12(b)(6) (Dkt. No. 51)

##### 1.  Constitutional Standing

In the MTD, SAP argues that Valtrus did not have constitutional standing to sue when it filed this action. (Dkt. No. 51 at 10–16.) According to SAP, Valtrus never owned the Asserted Patents and "the Declaration to which it is bound makes clear that it holds the Asserted Patents in name only." (*Id*. at 11.) SAP argues that "the terms of the Declaration make clear that all exclusionary rights are actually held by KPI, the parent company that manages every facet of

5

Valtrus's business" and that the Declaration curtails any actions Plaintiff may take with respect to the Asserted Patents. (*Id*. at 11–12.) Further, SAP argues that Valtrus cannot transfer or encumber the Asserted Patents on its own—rather, KPI must first approve of all actions, and KPI even receives "███████████████████████████████████████████." (*Id*. at 12.) Moreover, SAP argues that the bare trust created by the Declaration and Letter of Appointment supports this conclusion under Irish law. (*Id*. at 12–13.) Additionally, SAP argues that KPI does not need Valtrus's consent to exclude others from practicing the Asserted Patents and that Valtrus "cannot exclude a third party from using the Asserted Patents if the third party receives its license from KPI." (*Id*. at 13–14.) Finally, SAP argues that Valtrus does not have standing because "the structure created in the Declaration makes Valtrus effectively judgment proof from any court," such that KPI may be shielded from judgment. (*Id*. at 14–15.)

In response, Valtrus argues that it has standing. (Dkt. No. 55 at 5–15.) Valtrus states that it alleges in the Complaint "that it owns the asserted patents and that by infringing those patents, SAP deprived it of royalties and trampled on its property rights." (*Id*. at 5.) Valtrus argues that the "trust arrangement between Valtrus and Key Patent does not change [Article III's] straightforward [standing] analysis" because Valtrus retains legal title of the Asserted Patents and alleges an injury from SAP's infringement. (*Id*. at 6.) According to Valtrus, SAP's arguments regarding bare trusts under Irish law and whether the standing challenge is "factual" or "facial" are red herrings because these arguments do not properly apply black-letter United States law. (*Id*. at 6–7.) Valtrus further argues that SAP improperly "relies on overruled Federal Circuit cases and a reversed district court decision" that conflate Article III standing with § 281's statutory requirements. (*Id*. at 7–11.) Valtrus argues that more recently, the Federal Circuit held that "[b]ecause [a] plaintiff alleged that she was the owner by assignment of the patent and that the defendants infringed that patent, there

6

was no standing issue to be decided in the appeal." (*Id*. at 9–10 (quoting *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020)) (cleaned up).) Valtrus states that while § 281 should not be confused with Article III, all recent "cases that continue to discuss 'exclusionary rights' in the context of Article III treat those rights as sufficient but not necessary to establish an Article III injury"—which is still satisfied here because (1) Valtrus owns the Asserted Patents, and (2) Valtrus retains certain exclusionary rights. (*Id*. at 12–14.) Valtrus then argues that while KPI may have licensing rights, Valtrus still satisfies the "injury in fact" requirement in view of the Federal Circuit's *Intellectual Tech* decision. (*Id*. at 15.) Finally, Valtrus states that SAP's assertion that the Declaration is a "judgment-proofing scheme" is irrelevant to Article III standing. (*Id*.)

In reply, SAP reiterates that it has "presented uncontroverted evidence that Valtrus ceded **all** exclusionary rights in the Asserted Patents to KPI via [the Declaration]—and thus lacks even constitutional standing to bring its asserted claims." (Dkt. No. 69 at 1.) SAP further argues that Valtrus misrepresents the post-*Lexmark* case law because Article III standing still requires a plaintiff to have at least "**an** exclusionary right." (*Id*. at 2 (quoting *Intell. Tech*, 101 F.4th at 813).) Moreover, SAP states that Valtrus ignores SAP's factual, rather than facial, challenge to standing because Valtrus improperly relies upon its pleadings and "selectively" cites underlying documents. (*Id*. at 2–3.) SAP explains that Valtrus incorrectly relies on *Schwendimann*, which concerned § 281 and simply "reaffirmed *Lone Star* such that earlier Federal Circuit decisions treating 35 U.S.C. § 281 as jurisdictional were wrong." (*Id*. at 3–5.) SAP further argues that legal title alone fails to satisfy Article III standing because the case Valtrus relies upon, *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008), "is limited to addressing standing in the context of an assignment of contract claims for collection, where the assignee remits funds back to the assignor."

7

(*Id*. at 6.) SAP also restates its argument that Valtrus does not have any exclusionary rights in the Asserted Patents and "retained no rights to bring suit on its own." (*Id*. at 7–9.)

In its sur-reply, Valtrus argues that SAP's position cannot be reconciled with Federal Circuit precedent. (Dkt. No. 81 at 2–8.) Valtrus first argues that SAP attempts to rewrite *Schwendimann*—but there, "the Federal Circuit first assured itself of its jurisdiction by rejecting the argument that Article III requires exclusionary rights, allowing it to move on to the merits question: whether the plaintiff had a cause of action under § 281." (*Id*. at 2–4.) According to Valtrus, *Schwendimann* overruled the "requirement that a plaintiff possess *at least one* exclusionary right." (*Id*. at 4–5.) Valtrus then distinguishes other cases cited by SAP to arrive at the conclusion that Article III does not require a plaintiff to hold "exclusionary rights." (*Id*. at 5–8.) However, even if the Court disagrees with what Article III requires, Valtrus explains that it still retains at least one exclusionary right: KPI "expressly approved and authorized Valtrus to sue SAP for damages and an injunction before the complaint was filed." (*Id*. at 8.)

The Court finds that Valtrus has standing because it has at least one exclusionary right in the Asserted Patents.[3] As the Federal Circuit recently stated, "[i]n general, the question for the injury-in-fact threshold is whether a party has ***an*** exclusionary right." *Intell. Tech*, 101 F.4th at 814 (citing *Univ. of S. Fla.*, 19 F.4th 1323). Here, KPI expressly approved and authorized Valtrus to sue SAP for damages before the complaint was filed. (Dkt. No. 55-1 ¶¶ 2, 5 (Ms. Quinlan,

---

[3] Since the Court finds that Plaintiff has at least one exclusionary right in the Asserted Patents, the Court need not address whether Article III requires a plaintiff to hold *any* exclusionary rights in the asserted patents. However, Valtrus's reliance on *Vericool World LLC v. TemperPack Technologies, Inc.*, --- F.Supp.3d ----, 2024 WL 3594709 (E.D. Va. July 2, 2024)—which was cited for the first time in its sur-reply—is misplaced. In *Vericool*, the court found that the plaintiff suffered a financial harm (even without exclusionary rights) because the defendant's "'flagship product' allegedly mirrors the design, structure and features of the Vericool Plus—[plaintiff's] primary product practicing the Asserted Patents—and targets the same customer base. [Defendant] does not dispute that it and [plaintiff] constitute market competitors, or that its allegedly infringing conduct causes financial injury to [plaintiff]." *Vericool*, 2024 WL 3594709 at *6. Here, Plaintiff has not alleged competitive harm from Defendants' alleged infringement.

8

Managing Director of KPI, declaring under penalty of perjury that "[i]n [her] capacity for Key Patent, [she] authorized Valtrus's lawsuit against SAP in this action before Valtrus filed it on January 15, 2024.").) The Court also rejects SAP's argument that Ms. Quinlan's declaration should be disregarded or that it contradicts her deposition testimony. Therefore, the Court finds that KPI expressly granted Valtrus at least one exclusionary right.[4]

Under these circumstances, the Court finds that Plaintiff has Article III standing. The Court must now turn to whether Plaintiff satisfies 35 U.S.C. § 281's requirements.

### 2. 35 U.S.C. § 281

In the MTD, SAP argues that Valtrus does not possess all "substantial" rights in the Asserted Patents because Valtrus does not have the ability to enforce and alienate the patents. (Dkt. No. 51 at 16–18.) According to SAP, Valtrus "does not have autonomy or discretion to enforce the Asserted Patents" and its right to "bring suit is merely illusory." (*Id.* at 17.) SAP also argues that Valtrus "███████████████████████████████████████████████████████████████████████████ of the Asserted Patents without KPI's consent. (*Id.* at 17–18.) SAP contends that KPI ultimately ██████████████████ indicating that it has substantial rights in the Asserted Patents. (*Id.* at 18.)

In response, Valtrus first states that this issue is "moot" because it "intends to move to join Key Patent as a plaintiff." (Dkt. No. 55 at 15–16.) Valtrus substantively argues that there "is no dispute" that it holds title to the Asserted Patents, and that there is no "dispute that it received all right, title, and interest in the patents from HPE." (*Id.* at 16.) According to Valtrus, "[b]ecause [it] is undisputedly the successor in title for each asserted patent, it is the 'patentee' under [35 U.S.C. § 100(d)] and thus has a cause of action" under 35 U.S.C. § 281. (*Id.* at 17.)

---

[4] While SAP complains that Valtrus incorrectly relies upon the Complaint's allegations in response to a "facial" attack, the Court finds that Valtrus sufficiently addresses SAP's "factual" attack.

9

In reply, SAP argues that Valtrus's argument is legally incorrect. (Dkt. No. 69 at 9–10.) SAP argues that recently, "the Federal Circuit reaffirmed that '[a] patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, who may then maintain an infringement suit in its own name.'" (*Id*. at 9 (quoting *Ridge Corp. v. Kirk Nat'l Lease Co.*, No. 2024-1138, 2024 WL3617130, at *3 (Fed. Cir. Aug. 1, 2024).) According to SAP, Valtrus transferred "all substantial rights" to KPI, and its argument "instead relies on 'labels' without looking to the substance of which rights it transferred away." (*Id*. at 9–10.) SAP further argues that Valtrus's belated attempt to add KPI to the case "will not rectify constitutional standing." (*Id*. at 10.)

In its sur-reply, Valtrus states that SAP does "not deny that joining Key Patent would moot any alleged § 281 issue." (Dkt. No. 72 at 9.) Valtrus further argues that SAP's cited cases are irrelevant because "the question was whether an alleged transferee (an exclusive licensee, not a legal title holder) received 'all substantial rights' such that it could also be considered a 'patentee' and sue in its own name despite its lack of legal title." (*Id*. at 9–10.)

The Court finds that Valtrus does not have "all substantial rights" in the Asserted Patents, and it therefore fails to meet 35 U.S.C. § 281's requirements. The Federal Circuit has long held that "if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). The Federal Circuit's "all substantial rights" caselaw has "often focused on two salient rights: enforcement and alienation." *Lone Star*, 925 F.3d at 1231. Restrictions on such rights weigh against finding that a party has "all substantial rights." *Id*. Here, Valtrus does not have all substantial rights in the Asserted Patents. As SAP explains, the Declaration transferred numerous rights to KPI.

10

Regarding enforcement, KPI has the right of first refusal to bring an enforcement action, and when one is brought, the enforcement action "shall be conducted at the direction of" KPI. (Dkt. No. 51-2 at i § 1.5 ███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

Regarding alienation, Valtrus cannot take numerous actions without first receiving approval from KPI. (*Id.* at ii–iii §§ 1.12 ███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

11

████████████████████████████

████████████████████████████

The Declaration significantly restricts Valtrus's enforcement and alienation rights. Accordingly, the Court finds that Valtrus transferred substantial rights to KPI and does not satisfy 35 U.S.C. § 281's requirements.

\*          \*          \*

Having found that Valtrus has Article III standing but does not satisfy 35 U.S.C. § 281's requirements, the Court must determine whether KPI's joinder may satisfy § 281.

### B.  Plaintiff Valtrus Innovation Ltd.'s Opposed Motion for Leave to Amend Complaint to Join an Additional Party Under Rule 20 (Dkt. No. 56)

In the Motion for Leave, Valtrus "seeks to join Key Patent as a party because Key Patent similarly asserts a right to relief based on SAP's infringement of the asserted patents." (Dkt. No. 56 at 3.) According to Valtrus, KPI's interest in this suit "arises out of the same transaction and occurrences as Valtrus's interest," and Valtrus's and KPI's interest in the suit raise common questions of law and fact. (*Id.*) Moreover, Valtrus argues that SAP's MTD "effectively concedes that Key Patent is a proper plaintiff," including through its allegations "that Key Patent now has all substantial rights to the asserted patents under the Declaration of Trust." (*Id.* at 3–4.) Valtrus states that if SAP is "correct, then Key Patent should not only be permitted to join under Rule 20, but Key Patent would in fact be a 'required party' to this suit under Rule 19 because, 'in [Key Patent's] absence, the court cannot accord complete relief among existing parties.'" (*Id.* at 4.) Valtrus also argues that SAP would not be prejudiced by the requested amendment; rather, SAP's only stated reason for opposing the Motion for Leave is that it is futile in view of the alleged Article III standing issues discussed above (*supra*, § III.A.1.). (*Id.* at 4–5.)

In response, SAP first argues that the proposed amendment adding KPI as a plaintiff is futile because Valtrus does not have standing. (Dkt. No. 70 at 5–6.) Next, SAP argues that the Motion for Leave should be denied because Valtrus delayed in requesting to add KPI as a plaintiff and SAP has been "significantly prejudiced by having to defend against Valtrus's multi-faceted procedural ploy." (*Id*. at 6–7.) SAP further argues that Valtrus "circumvented procedure to preserve patent damages" because "[f]our of the seven asserted patents expired years ago, and the damages period continues to narrow." (*Id*. at 7.)

In reply, Valtrus agrees with SAP that the proposed amendments would not fix Article III standing, but this is not a reason for SAP to oppose the Motion for leave. (Dkt. No. 71 at 1.) Valtrus further argues that "the potential need to join Key Patent only became apparent when SAP filed its Motion to Dismiss for lack of standing on June 27, 2024," and that "binding precedent would require the Court to join Key Patent as an alternative to dismissal should it hold that Valtrus cannot maintain this suit solely in its own name." (*Id*. at 2 (citing *Lone Star*, 925 F.3d at 1236-39).) Valtrus also argues that SAP—not Valtrus—is the one engaging in the "procedural ploy" by attempting to avoid this Court's jurisdiction. (*Id*. at 2–3.)

In the sur-reply, SAP argues that Valtrus possessed the necessary information to determine which entities should have been named plaintiffs when it filed suit and that Valtrus's delay in filing the Motion for Leave should not be excused. (Dkt. No. 75 at 2.) SAP also reiterates that "[a]llowing Valtrus to amend its complaint and untimely join KPI would allow Valtrus to improperly preserve months and potentially more than an entire year of damages." (*Id*. at 3.)

The Court finds that the Motion for Leave should be granted and that KPI should and must be joined as a plaintiff in the above-captioned case under Rule 19 and Federal Circuit precedent. While the Docket Control Order's deadline to join additional parties has passed, the Court finds

13

that good cause exists to grant Plaintiff leave to amend its complaint and add KPI as an additional plaintiff. Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. PRO. 16(b)(4). Good cause "requires the party to show that, despite the exercise of diligence, it cannot reasonably meet the court-mandated deadline." *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, No. 6:15-CV-01095-RWS, 2020 WL 11613777 at *2 (E.D. Tex. July 1, 2020) (citing *S&W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003)). To determine whether good cause exists, the Court considers "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Mediostream, Inc. v. Microsoft Corp.*, No. 2:08-cv-00369-CE, 2010 WL 4118589, at *1 (E.D. Tex. Oct. 18, 2010) (citations omitted).

Under these circumstances, the Court finds that good cause exists. First, while Valtrus should have known that it did not own all substantial rights in the Asserted Patents in view of the Declaration, this issue was not raised until Defendants filed the MTD nearly three months after the deadline to join additional parties had passed. Valtrus filed the Motion for Leave promptly thereafter. While Valtrus should have joined KPI sooner, it was diligent in filing the Motion for Leave soon after SAP filed the MTD. Accordingly, the Court finds that this factor is neutral.

Second, joinder of KPI is important. If the Court does not allow joinder of KPI, then it must dismiss this case as the Court has already found that Valtrus cannot satisfy 35 U.S.C. § 281 on its own. The Court finds dismissal improper, especially because the Federal Circuit has "interpreted Rule 19 and [*Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926)] as *directing courts to join patentees along with licensees who otherwise have standing*." *Lone Star*, 925 F.3d at 1237 (emphasis added). Here, while Valtrus has moved for permissive

joinder under Rule 20, it—as well as SAP—has essentially conceded that joinder is required under Rule 19. (Dkt. No. 56 at 4 (Valtrus arguing that if SAP is correct that Valtrus transferred substantial rights to KPI, "then Key Patent should not only be permitted to join under Rule 20, but Key Patent would in fact be a 'required party' to this suit under Rule 19 . . . .").) Therefore, the only remaining question is whether KPI's joinder is feasible. Neither Party argues that KPI's joinder is not feasible. The Court therefore finds that joinder is important and this factor strongly supports granting the Motion for Leave.

Third, SAP will not suffer prejudice if joinder is allowed. SAP only identifies one source of prejudice: it contends that Valtrus "circumvented procedure to preserve patent damages" because "[f]our of the seven asserted patents expired years ago, and the damages period continues to narrow." (Dtk. No. 70 at 7.) SAP fails to cite any authority recognizing this as a legitimate source of prejudice such that the Motion for Leave should be denied. The Court agrees with Valtrus that SAP will not be prejudiced by joinder. Accordingly, this factor supports granting the Motion for Leave.

The Court accordingly finds that good cause exists for the requested joinder,[5] and that the Motion for Leave should be granted.

### C. *Valtrus II*

According to Valtrus and KPI, they "filed their protective complaint [in *Valtrus II*] to give this Court an avenue to continue the case with minimal disruption should it find Valtrus lacks Article III standing." (Dkt. No. 71 at 3 n.3.) As discussed above, *supra* § III.A.1, the Court finds that Valtrus has Article III standing. Accordingly, the *Valtrus II* case appears to be redundant as to the above-captioned case.

---

[5] As the Court finds no prejudice, the Court need not analyze the final "good cause" factor.

## IV. CONCLUSION

For the reasons noted above, the MTD is **GRANTED** as to SAP's motion to dismiss for Valtrus's failure to satisfy 35 U.S.C. § 281. The MTD is **DENIED** in all other respects. The Motion for Leave is **GRANTED**.

Accordingly, it is **ORDERED** that the Amended Complaint for Patent Infringement and Jury Demand (the "FAC," Dkt. No. 57) shall be Valtrus's and KPI's operative pleading. SAP's response to the FAC shall be due in fourteen (14) days from entry of this Order. It is further **ORDERED** that Valtrus and KPI shall, within seven (7) days of entry of this Order, either (1) dismiss *Valtrus II*, or (2) file a notice no more than three (3) pages in the above-captioned case and in *Valtrus II* explaining why *Valtrus II* should proceed parallel to the above-captioned case.

Valtrus, KPI, and SAP are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within seven (7) days hereof.

**So ORDERED and SIGNED this 8th day of November, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE