The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

|  |  |
|---|---|
| STARBUCKS CORPORATION, | Case No. 2:25-cv-1859-JHC |
| Plaintiff, | DEFENDANTS' MOTION TO STRIKE AND TO DISMISS PLAINTIFF'S COMPLAINT |
| v. |  |
| VALTRUS INNOVATIONS LIMITED and KEY PATENT INNOVATIONS LIMITED., | NOTE ON MOTION CALENDAR: January 12, 2026 |
| Defendants. | ORAL ARGUMENT REQUESTED |

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

    A.    Key Patent And Valtrus ....................................................................................... 2

    B.    Valtrus Reaches Out For A Licensing Discussion With Starbucks ....................... 3

    C.    Starbucks Files This Lawsuit Despite Scheduling Another Licensing
       Discussion With Valtrus .......................................................................................... 5

III.  ARGUMENT ................................................................................................................ 6

    A.    Starbucks' PTPA Claim Should Be Stricken Pursuant To
       Washington's Uniform Public Expression Protection Act
       ("UPEPA") ............................................................................................................. 7

          1.    Starbucks' PTPA Claim Attacks Protected Speech ................................. 8

          2.    Starbucks Fails To State A Claim Because The PTPA Does
              Not Provide For A Private Cause Of Action............................................ 10

          3.    Starbucks Further Fails To State A Claim Because It Has
              Failed To Plead Bad Faith........................................................................ 12

          4.    Alternatively, The Court Should Certify A Question To The
              Washington Supreme Court ...................................................................... 18

    B.    Starbucks' Declaratory Judgment Claims Should Be Dismissed ........................ 18

          1.    There Is No Case Or Controversy, And Thus No Subject
              Matter Jurisdiction ................................................................................... 19

          2.    Alternatively, The Court Should Exercise Discretion And
              Decline Jurisdiction................................................................................. 21

IV.   CONCLUSION ........................................................................................................... 22

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                    - i -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albecker v. Contour Prods., Inc.*,
  No. 09-CV-00631, 2013 WL 5423843 (N.D. Ill. Sept. 27, 2013), *aff'd*, 578 F.
  App'x 969 (Fed. Cir. 2014)................................................................................................19

*Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*,
  114 Wash. App. 371 (2002) ................................................................................................9

*Am. Needle & Novelty Co. v. Schuessler Knitting Mills, Inc.*,
  379 F.2d 376 (7th Cir. 1967)............................................................................................18

*AmSouth Bank v. Dale*,
  386 F.3d 763 (6th Cir. 2004)............................................................................................22

*Anderson v. Holder*,
  673 F.3d 1089 (9th Cir. 2012)..........................................................................................10

*Anthis v. Copland*,
  270 P.3d 574 (Wash. 2012)...............................................................................................10

*AquaWood, LLC v. Revel Match, LLC*,
  No. 12-CV-4295, 2012 WL 12892425 (C.D. Cal. Nov. 2, 2012)......................................22

*Autronic Plastics, Inc. v. Apogee Lighting, Inc.*,
  No. 19-CV-6268, 2021 WL 8322144 (E.D.N.Y. Mar. 24, 2021)......................................16

*Bausch & Lomb Inc. v. CIBA Corp.*,
  39 F. Supp. 2d 271 (W.D.N.Y. 1999) ................................................................................21

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007).........................................................................................19

*Bird-Johnson Corp. v. Dana Corp.*,
  119 Wash. 2d 423 (1992) ...................................................................................................10

*Blanchard v. DIRECTV, Inc.*,
  123 Cal. App. 4th 903 (2004) ..............................................................................................9

*Buckley v. DIRECTV, Inc.*,
  276 F. Supp. 2d 1271 (N.D. Ga. 2003) ...............................................................................9

*Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v.
  Old Navy, LLC*,
  4 Wash. 3d 580, 585 (2025)...............................................................................................18

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                              - ii -

*Commc'ns Test Design, Inc. v. Contec, LLC*,
   952 F.3d 1356 (Fed. Cir. 2020) ................................................................................... 22

*Cyber Fin. Network, Inc. v. Lendingtree, Inc.*,
   No. 03-6062, 2004 WL 1293929 (E.D.N.Y. May 10, 2004) ........................................ 20

*Davox Corp. v. Digital Sys. Int'l, Inc.*,
   846 F. Supp. 144 (D. Mass. 1993) ............................................................................... 21

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
   524 F.3d 1254 (Fed. Cir. 2008) ................................................................................... 12

*Fraige v. Am.-Nat'l Watermattress Corp.*,
   996 F.2d 295 (Fed. Cir. 1993) ....................................................................................... 8

*Franchise Realty Interstate Corp. v. S.F. Loc. Jt. Exec. Bd. Of Culinary Workers*,
   542 F.2d 1076 (9th Cir. 1976) ..................................................................................... 12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 15

*Giraldi v. Bowen*,
   374 Ga. App. 347 (2025) ............................................................................................... 9

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
   362 F.3d 1367 (Fed. Cir. 2004) ........................................................................ 2, 7, 8, 10

*Golan v. Pingel Enter., Inc.*,
   310 F.3d 1360 (Fed. Cir. 2002) ............................................................................. 12, 16

*Gov't Emps. Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ..................................................................................... 21

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
   599 F.3d 1377 (Fed. Cir. 2010) ................................................................................... 21

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
   No. 07-589, 2008 WL 4809104 (D. Del. Nov. 5, 2008), *aff'd*, 599 F.3d 1377
   (Fed. Cir. 2010) ........................................................................................................... 19

*IVX Animal Health, Inc. v. Burger*,
   475 F. Supp. 2d 1264 (S.D. Fla. 2007) ....................................................................... 20

*Jha v. Khan*,
   24 Wash. App. 2d 377, 387 (2022) ............................................................................... 7

*Joyce v. Amazon.com, Inc.*,
   No. 2:22-CV-00617, 2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) .................... 17, 18

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                          - iii -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

*Liberty Mut. Fire Ins. Co. v. Balfour Beatty Const. Co.*,
  No. 07-5507, 2008 WL 2492300 (W.D. Wash. June 17, 2008)...................................................21

*Ligeri v. Parker*,
  No. 25-CV-0829, 2025 WL 2782919 (W.D. Wash. Sept. 30, 2025)......................................7, 12

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*,
  5 F.4th 952 (9th Cir. 2021) .........................................................................................................11

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
  695 F.3d 1322 (Fed. Cir. 2012)...................................................................................................13

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007).....................................................................................................................19

*Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*,
  No. 12-CV-0188, 2012 WL 12863934 (W.D. Wash. July 25, 2012) ...........................................13

*Merch. Techs., Inc. v. Telefonix, Inc.*,
  No. 05-CV-1195, 2007 WL 464710 (D. Or. Feb. 7, 2007)...........................................................20

*Microsoft Corp. v. MediaPointe, Inc.*,
  626 F. Supp. 3d 1129 (C.D. Cal. 2022) ..........................................................................10, 11, 12

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018)........................................................................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018)..........................................................................................................7

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993).....................................................................................................................2, 12

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004)....................................................................................................16

*Reck-n-Rack LLC v. Just Encase Prods. Inc.*,
  649 F. Supp. 3d 734 (E.D. Wis. 2023)..........................................................................................16

*Repeat-O-Type Stencil Mfg. Corp. v. Hewlett-Packard Co.*,
  141 F.3d 1178 (9th Cir. 1998).......................................................................................................16

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006)..................................................................................................10, 14

*Scheidler v. Nat'l Org. for Women, Inc.*,
  547 U.S. 9 (2006)..........................................................................................................................12

*Shell Oil Co. v. Amoco Corp.*,
  970 F.2d 885 (Fed. Cir. 1992).......................................................................................................19

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                      - iv -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

*Shoom, Inc. v. Elec. Imaging Sys. of Am., Inc.*,
  No. 05-CV-03434, 2006 WL 1529983 (N.D. Cal. May 31, 2006) ............................................19

*Snapology Jewelry, LLC v. LDC, Inc.*,
  No. 1:16-CV-1036, 2017 WL 1737924 (W.D. Mich. May 4, 2017) ........................................22

*Solo Cup Co. v. Fort James Corp.*,
  No. 99-CV-4724, 1999 WL 1140885 (N.D. Ill. Nov. 29, 1999)................................................21

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006)..........................................................................................2, 6, 10

*Spivak v. Alphabet Inc.*,
  No. 20-CV-1480, 2021 WL 535211 (W.D. Wash. Feb. 12, 2021) ............................................15

*Steamship Mut. Underwriting Ass'n Ltd. v. Osprey Underwriting Agency Ltd.*,
  No. 15-CV-43, 2015 WL 3649283 (W.D. Wash. June 11, 2015)...............................................21

*Summer Infant (USA), Inc. v. TOMY International, Inc.*,
  No. 17-CV-549 2019 WL 5540224 (D.R.I. Oct. 25, 2019) .......................................................13

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
  No. 15-CV-246, 2015 WL 4545187 (C.D. Cal. July 8, 2015) ....................................................14

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
  420 F. Supp. 3d 966 (N.D. Cal. 2019) .......................................................................................16

*United States v. Kahn*,
  524 F. Supp. 2d 1278 (W.D. Wash. 2007)..................................................................................11

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................................................4

*Unverferth Manufacturing Co. Inc. v. Par-Kan Co., LLC*,
  No. 3:23-CV-00653, 2024 WL 4298567 (N.D. Ind. Sept. 26, 2024) ......................................14

*Valve Corp. v. Bucher Law PLLC*,
  34 Wash. App. 2d 727, 734 (2025) ...........................................................................7, 8, 9, 12

*Valve Corp. v. Rothschild*,
  No. 23-CV-1016, 2024 WL 4335682 (W.D. Wash. Sept. 26, 2024)........................................11

**Statutes**

Cal. Civ. Proc. Code § 425.16(e) ..................................................................................................10

Declaratory Judgment Act...................................................................................................1, 6, 21

OCGA § 9-11-11.1(c)(2)................................................................................................................10

RCW 2.60.020................................................................................................................................18

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                       - v -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

RCW 4.105 et seq. ...............................................................................................*passim*

RCW 19.350 et seq. .............................................................................................*passim*

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC

- vi -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

## I.    INTRODUCTION

The week before this action was filed, a group of attorneys gathered at the Edgewater Hotel for a legal education seminar "designed specifically for in-house counsel."[1] The seminar included a presentation from Starbucks' current outside counsel entitled "Standing Firm Against Patent Trolls: Proactive Approaches and Preventive Measures," pitching counsel on legal strategies for "managing and mitigating the impact of patent assertion entities," and "an overview of the Washington Patent Troll Prevention Act" ("PTPA").[2]

This lawsuit is an entirely inappropriate litigation tactic that has its source in the hard-sell outside counsel made for its services at the seminar. Its existence is an affront to the purpose of PTPA and the Declaratory Judgment Act. Valtrus Innovations Limited ("Valtrus") first reached out to Starbucks seven months prior to this presentation, seeking to negotiate a patent license, an activity that the Federal Circuit has expressly held is protected under the First Amendment. Valtrus has successfully licensed its portfolio to dozens of companies, and sought open discussions with Starbucks. Starbucks *refused to respond* for seven months. The very morning after the seminar, Starbucks reached out to Valtrus purportedly to discuss licensing terms and asked for Valtrus' monetary "demand" for a license to its patents. Valtrus promptly complied with Starbucks' request and met with Starbucks' representative. At the end of that meeting, Valtrus agreed to provide claim charts and the parties agreed to meet several weeks later to continue licensing discussions. But Starbucks' engagement with Valtrus was a fraud. Starbucks used its representations that it desired to negotiate and needed a demand and claim charts and as a pretext to turn around and file baseless claims under the PTPA and for declaratory judgments of non-infringement and invalidity.

Starbucks' PTPA claim must be stricken pursuant to Washington's anti-SLAPP statute, enacted to protect against baseless lawsuits like this attempting to silence the First Amendment rights of parties like Valtrus. First, this Court cannot entertain Starbucks' suit, because the legislature did not

---

[1] https://www.linkedin.com/posts/kilpatrick-townsend-stockton-llp_intellectualproperty-ip-patent-activity-7361127980632268800-0EEc.

[2] https://ktslaw.com/en/insights/events/2025/9/standing%20firm%20against%20patent%20trolls

DEDEFENDANTS' MOTION TO STRIKE
AND TO DISMISS
No. 2:25-cv-1859-JHC                                    - 1 -

include a private cause of action, intending for the Washington Attorney General to be the sole gatekeeper of PTPA actions. And even if a private cause of action did exist, Starbucks' Complaint has pleaded itself out of a claim by admitting elements that make the required element of bad faith impossible to plead. Valtrus' demand letter and ensuing negotiations are protected by the First Amendment and given *Noerr-Pennington* immunity. Under the First Amendment, "[t]hose who petition government for redress are generally immune from … liability." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). This right to petition includes not only the patent owner's right to file suit, but also the right to put others on notice of potential infringement. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) (the Petition Clause "preclude[s] burdening [demand letters] so as to preserve the breathing space required for the effective exercise of the rights it protects."). As the Federal Circuit has explained, "a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004).

Not stopping at one baseless claim, Starbucks further seeks to burden this Court with ***twenty-two*** declaratory judgments, for non-infringement and invalidity of eleven different patents. There is no case or controversy for the Court to even consider these claims, because Starbucks was never threatened with legal action. Regardless, the Court should exercise its discretion and decline to hear Starbucks' claims so as not to endorse Starbucks' scheme to manufacture a dispute as window dressing for its PTPA posturing.

Instead of hiring three different law firms to effectuate its scheme, Starbucks would be better served by engaging Valtrus in good-faith license discussions, as dozens of other companies have done and continue to do, without further unnecessarily wasting party and judicial resources.

## II.     FACTUAL BACKGROUND

### A.     Key Patent And Valtrus

Key Patent Innovations Limited ("Key Patent") is an Irish company that partners with some of the largest companies in the word to assist them in licensing their high-impact patents. By partnering

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                              - 2 -

with Key Patent, companies can receive significant and immediate compensation for their patents, while Key Patent and its subsidiaries take on the responsibility of licensing and protecting their intellectual property rights. For example, Key Patent has worked with BlackBerry, a well-known pioneer in mobile devices and secure messaging communications, and OSRAM, a pioneer in the OLED lighting and display field, to create subsidiaries that are successors to substantially all of the innovators' patent rights in the relevant fields so that they can be licensed efficiently. Key Patent seeks to negotiate with large corporations to come to a mutually beneficial licensing agreement on fair terms, and is fortunate to invest part of its revenues back into the community, including as a proud sponsor of the Irish Olympic Team.[3] This is a far cry from the type of non-practicing entities that were the impetus for the PTPA, entities that would send thousands of licensing demands to "small and medium-sized entities and nonprofits lacking adequate resources to investigate and defend themselves against the infringement claims" in order to stockpile nuisance settlements. RCW 19.350.005.

Valtrus is a Key Patent subsidiary, holding a portfolio of over 1,800 patents that were acquired from HPE. Valtrus analyzed and identified a selection of patents that it believes are practiced by certain open-source platforms. Valtrus sent out letters to large corporations that utilize such technology, notifying them of Valtrus' patent rights and identifying specific patents and claims that may be at issue and, where possible, entered into licensing partnerships.

**B.      Valtrus Reaches Out For A Licensing Discussion With Starbucks**

On February 14, 2025, outside counsel for Valtrus sent a letter to Starbucks' Chief Legal Officer, requesting a meeting "to discuss a licensing resolution." Dkt. 1-2 at 2. Valtrus explained it "wants to assure Starbucks that Valtrus' intention is to allow Starbucks to continue its use of these patents through a license from Valtrus." *Id.* The letter does not mention litigation in any way. Valtrus did not receive a response, and sent a pair of single-sentence follow up emails in May and August.

On September 17, 2025, seven months after receiving Valtrus' letter, and the day after the "patent troll" presentation at the Edgewater Hotel, Starbucks' outside counsel at Sheppard Mullin reached out to Valtrus' outside counsel, requesting that Valtrus "please provide Starbucks with a

---

[3] https://olympics.ie/key-patent-innovations-becomes-team-ireland-partner/

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                    - 3 -

demand." Ex. 1 at 4.[4]

On September 23, before Valtrus responded, Starbucks' outside counsel reached out directly to Paul Riley, a Director at Key Patent, again inquiring "about receiving a demand" from Valtrus. *Id.* at 3. Another employee at Key Patent, Paul Seaman, wrote back the same day:

> Please let us know your availability for a quick introductory call. We will present a proposal for a license to the asserted patents and the rest of the Valtrus portfolio during the call.
> Thanks!
> paul.

*Id.* at 2-3.

Starbucks' counsel asked for a phone call to be scheduled for the next day in the morning.

> Paul,
> Thanks for the email.  How is tomorrow before noon ET?  I am traveling on Thursday and have a hearing on Friday.
> Steve

*Id.* at 2. Mr. Seaman promptly responded:

> Cool. I sent an invite for 10 am.
> Thanks!
> paul.

*Id.* During the call, Starbucks' counsel emphasized that not only did it want a licensing "demand," but also that Valtrus needed to provide claim charts mapping Valtrus' patents against Starbucks' offerings. It bears noting that a Starbucks lawyer subject to ethical obligations was communicating with a non-lawyer Valtrus executive under the false pretense of wanting to negotiate a license, when in reality those communications were a set up to bring this baseless lawsuit.

The parties agreed to have a follow-up meeting in three weeks, so that Starbucks could consider Valtrus' license offer. Mr. Seaman obliged Starbucks' request for claim charts the next day, sending over 150 pages of claim charts and a PowerPoint presentation with a friendly email:

---

[4] Although Starbucks curiously declined to attach any communications besides the February notice letter, they are properly incorporated by reference as Starbucks refers to them extensively in its Complaint and they form the basis of Starbucks' PTPA claim and supposedly confer subject matter jurisdiction for Starbucks' declaratory judgment claims. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

DEFENDANTS' MOTION TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC

- 4 -

> Thanks for meeting with us yesterday. Attached is a .pdf version of the presentation and copies of claims charts for your review. We look forward to our next call on October 15th.
>
> Thanks!
>
> paul.

Ex. 1 at 1; *see also* Ex. 2 (PowerPoint); Ex. 3 (claim charts).

The PowerPoint presentation provided an overview of Valtrus' patent portfolio and identified the "select areas of overlap" between Valtrus' portfolio and Starbucks' offerings, including "cloud computing" and "open source software." *Id*. at 8. The PowerPoint also included a "Proposal" for a license, and explained that the "Proposal [is] provided with a willingness to license any portion of the portfolio." It also set out "Next Steps":

### Next Steps

- Valtrus to send a .pdf of this presentation
- Valtrus to send claims charts
- Starbucks to respond to license offer
- Statuss call set for October 15

*Confidential*
*Subject To U.S. Federal Rules of Evidence 408*

valtrus

Ex. 2 at 20.

Valtrus sent the PDF of the presentation and the claim charts the next day, September 25. 2025. Rather than respond to the license offer as it promised it would do as consideration for receiving the materials, Starbucks filed this lawsuit on the same day. At no point did Mr. Seaman or anyone associated with Valtrus state or even suggest that Valtrus was escalating the matter towards litigation. Moreover, at no point did Starbucks ever suggest it was concerned about litigation, nor did it state that it believed Valtrus was threatening litigation.

### C.    Starbucks Files This Lawsuit Despite Scheduling Another Licensing Discussion With Valtrus

Unbeknownst to Valtrus, Starbucks had no interest in negotiating a patent license, evident by

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                    - 5 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

the fact that it had already prepared in secret a Complaint asserting bad faith patent assertion and declaratory judgment claims. Instead of continuing licensing talks, Starbucks hastily added allegations regarding the claim charts and PowerPoint presentation and filed its Complaint *the same day*.

Starbucks was shockingly efficient in its subterfuge—in the eight days following the "Standing Firm Against Patent Trolls" seminar, Starbucks and its counsel had initiated fraudulent "negotiations" with Valtrus, successfully solicited a licensing "demand" and claim charts by having outside litigation counsel "negotiate" with a non-lawyer Valtrus executive, and filed this baseless action. Starbucks' conduct is antithetical to the purpose and spirit behind the PTPA and the Declaratory Judgment Act. And the facts as plead simply do not support any of the claims.

## III.    ARGUMENT

It is settled law that the First Amendment protects the right of patentholders to send demand letters to potential licensees. The Ninth Circuit has explained that "restrictions on presuit demand letters may therefore raise substantial Petition Clause issues if, on examination, such restrictions could impair the right of access to the courts protected by the First Amendment." *Sosa*, 437 F.3d at 936. It further explained:

> Preceding the formal filing of litigation with an invitation to engage in negotiations to settle legal claims is a common, if not universal, feature of modern litigation. Even if it does not result in a final resolution of the dispute and vindication of the legal rights at issue, this practice permits parties to frame their legal positions, often streamlining any subsequent litigation, and thereby reducing legal costs and facilitating access to the courts. Restricting such prelitigation conduct when the same demands asserted in a petition to the court is protected would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts….

> [E]xtending immunity to private presuit demand letters protects the same interests the Supreme Court has identified as implicated in the Petition Clause's protection of private litigation….

> [And] extending *Noerr–Pennington* immunity to litigation-related activities preliminary to the formal filing of the litigation is consistent with the law of the majority of other circuits that have considered the issue.

*Id.* at 936-37. The Federal Circuit has also recognized this fundamental right, explaining that "the same First Amendment policy reasons that justify the extension of *Noerr* immunity to pre-litigation

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                      - 6 -

conduct in the context of federal antitrust law apply equally in the context of state-law tort claims." *Globetrotter*, 362 F.3d at 1377.

Starbucks' PTPA claim should thus be stricken as a strategic lawsuit against public participation or, in the alternative, dismissed. Starbucks' declaratory judgment claims should be dismissed for a lack of subject matter jurisdiction or, in the alternative, pursuant to the Court's exercise of discretion.

**A.     Starbucks' PTPA Claim Should Be Stricken Pursuant To Washington's Uniform Public Expression Protection Act ("UPEPA")**

"[T]he Washington legislature enacted UPEPA 'to provide an expedited process for dismissing lawsuits that target activities protected by the First Amendment, such as freedom of speech, press, assembly, petition, and association on matters of public concern.'" *Valve Corp. v. Bucher Law PLLC*, 34 Wash. App. 2d 727, 734 (2025) (citation omitted). UPEPA allows a defendant to file a special motion to strike after being served with a complaint attacking protected activity. RCW 4.105.020(2). Should the motion be granted, the Court "shall award court costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion." RCW 4.105.090(1).

"It is the moving party's burden to establish that UPEPA applies to the cause of action." *Jha v. Khan*, 24 Wash. App. 2d 377, 387 (2022). Once that is satisfied, "the burden shifts to the responding party to establish that a statutory exception applies." *Id*. If no statutory exception applies, the Court "*must* dismiss the action" if, *inter alia*, the complaint "fail[s] to state a cause of action upon which relief can be granted." *Id*. at 388; RCW 4.105.060(1).

"Although UPEPA is a creature of Washington law, it can nonetheless be applied by federal courts." *Ligeri v. Parker*, No. 25-CV-0829, 2025 WL 2782919, at *3 (W.D. Wash. Sept. 30, 2025). Because Defendants' Motion attacks the sufficiency of Starbucks' pleadings, the federal motion to dismiss standard applies, except that Defendants are entitled to fees and costs if they prevail. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) ("If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                             - 7 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

the attorney's fee provision of [that state's anti-SLAPP statute] applies.") (citation omitted).[5]

### 1. Starbucks' PTPA Claim Attacks Protected Speech

The communications that form the basis of Starbucks' PTPA claim are covered by Washington's UPEPA protections, which include: "Communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding" and "Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern." RCW 4.105.010(2). While Defendants only need to demonstrate that the challenged communications fall under either category, both are applicable here.

### (a) Speech On A Matter Of Public Concern

First, Valtrus' communications qualify as an exercise of Defendants' First Amendment rights to petition and speak on matters of public concern. *See* RCW 4.105.010(2)(c). For example, in *Valve v. Bucher*, a Washington appellate court held that letters notifying plaintiff of its "alleged anticompetitive practices and proposing settlement terms pursuant to [an] informal dispute resolution process" implicated First Amendment rights of speech and petition and that, because the letters notified the plaintiff of "alleged violations of federal antitrust and state consumer protection laws," they related to "matters of public concern." 34 Wash. App. 2d at 732, 737.

So too here. The Federal Circuit has made clear that a patentee's right to send notice letters plays a crucial role in enforcing patent rights through petitioning. *See Globetrotter*, 362 F.3d at 1374 ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction.").

Likewise, both federal and state courts have concluded that intellectual property rights are matters of public concern. *See, e.g., Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 335 (2018) ("This Court has long recognized that the grant of a patent is a matter involving public rights … between the public, who are the grantors, and the patentee.") (cleaned up); *Fraige v.*

---

[5] Defendants notified Starbucks of this impending Motion on December 1, satisfying RCW 4.105.020(1).

DEFENDANTS' MOTION TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    - 8 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

*Am.-Nat'l Watermattress Corp.*, 996 F.2d 295, 299 (Fed. Cir. 1993) ("[T]he fraud in this case concerned the validity of an issued patent, which is a matter of public concern."); *Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*, 114 Wash. App. 371, 393 (2002) ("Here, the challenged story relates to a court decision resolving an intellectual property dispute between a major software manufacturer and a local retailer. Viewed narrowly, the story pertains to a private dispute between two business entities. In a broader context, however, the dispute touches on a matter of public importance, software piracy.").

### (b)    Communications On An Issue Under Consideration

Second, the challenged communications relate to issues under consideration in a judicial proceeding. For example, in *Valve v. Bucher*, the court also relied on the plaintiff's characterization of the defendant's notice letters as an attempt to "'copycat' a legal theory developed by another law firm in another lawsuit that had already been sent to arbitration." 34 Wash. App. 2d at 736. The court held that the plaintiff's own pleadings established that the "communications pertain to an issue under consideration in a judicial proceeding as required by RCW 4.105.010(2)(b)." *Id*.

Here, Starbucks similarly alleges that Defendants have copied their own legal strategy of "pursu[ing] customers of target vendors with demand letters and suits to extract licenses—an approach alleged by Red Hat and Vertiv in separate actions." Dkt. 1 ¶ 81. And the Complaint heavily relies on, extensively quotes, and even attaches an order and briefing from co-pending litigation brought by Defendants as purported evidence of bad faith. *See id*. ¶¶ 40-41, 43 & Exs. A, C, D.

Additionally, although Washington courts have not ruled on the matter, other jurisdictions with similar statutory language protecting speech on "an issue under consideration or review" regularly hold that notice letters necessarily relate to the issue under review in the current action. *See, e.g., Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 918 (2004) ("[P]laintiffs cannot successfully argue that their complaint does not arise from DIRECTV's constitutionally protected right to petition for redress of grievances. The entire lawsuit is premised on DIRECTV's demand letter, sent in advance of, or to avoid, litigation"); *Buckley v. DIRECTV, Inc.,* 276 F. Supp. 2d 1271, 1274 (N.D. Ga. 2003) (adopting the argument that "pre-litigation demand letters … fall squarely within the protection of the anti-SLAPP statute"); *Giraldi v. Bowen*, 374 Ga. App. 347, 356 (2025) (accord); *compare* RCW

4.105.010(2)(b), *with* Cal. Civ. Proc. Code § 425.16(e), *and* OCGA § 9-11-11.1(c)(2). This mirrors the protection provided by *Noerr-Pennington*, which, like anti-SLAPP, serves to protect First Amendment rights. *See, e.g., Sosa*, 437 F.3d at 936; *Globetrotter*, 362 F.3d at 1377.

Accordingly, Valtrus' communications notifying Starbucks of its patent rights and seeking a license satisfy the first step of the anti-SLAPP analysis for multiple reasons.

### 2. Starbucks Fails To State A Claim Because The PTPA Does Not Provide For A Private Cause Of Action

Starbucks' PTPA claim fails because Starbucks does not have standing to assert it. Starbucks purports to bring its PTPA claim pursuant to Washington's Consumer Protection Act ("CPA"), *see* Dkt. 1 ¶¶ 1, 54, 84, but Washington law does not provide for a private PTPA cause of action—through the CPA or otherwise—and instead vests the power of enforcement solely with the Washington Attorney General.

Enforcement of the PTPA is set forth in RCW 19.350.030, which states that "***The attorney general may bring an action*** in the name of the state, or as parens patriae on behalf of persons residing in the state, to enforce this chapter." (emphasis added). The statute does not provide for a private cause of action anywhere in its text, and it is a fundamental principle of statutory interpretation that a court should not "read into [a] statute language the legislature has omitted, whether intentionally or inadvertently, unless it is required to make the statute rational or to effectuate the clear intent of the legislature." *Anthis v. Copland*, 270 P.3d 574, 581 (Wash. 2012). The Washington Supreme Court has expressly held that it "will not imply a private cause of action when the drafters of a statute evidenced a contrary intent; public policy is to be declared by the Legislature, not the courts." *Bird-Johnson Corp. v. Dana Corp.*, 119 Wash. 2d 423, 428 (1992).

This tracks the intent of the legislature, as set out in the clear and unmistakable representations made during the legislative hearing discussing the PTPA.[6] John Nelson, a consumer protection

---

[6] *See* Hearing on SSB 5059 Before the Senate Law & Justice Committee (Jan. 20, 2015), available at https://www.tvw.org/watch/?eventID=2015011178; *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."). A transcript of the hearing, filed in the *MediaPointe* action discussed herein, is attached as Exhibit __. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                          - 10 -

attorney in the Office of the Attorney General (and now Assistant Attorney General), testified that a "noteworthy part about this proposed legislation is that *it does not involve a private cause of action*. First and foremost, *the attorney general would be the gatekeeper.*" Ex. 4 at 17:22-18:2 (emphasis added). Senator Frockt, a co-sponsor of the bill, echoed that "the fact that *[the] attorney general will kind of serve as a gatekeeper* for enforcement of these actions is important and *will prevent sort of a reverse abuse* from happening. I think that's very important." *Id*. at 6:16-22 (emphasis added). Starbucks' attempt to quash a smaller company's licensing offers by hiring three outside law firms to produce a dispute is exactly the kind of "reverse abuse" the legislature had in mind when it limited the PTPA.

Given the clear intent of the Washington legislature, the courts should not create a private cause of action. *See Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 959 (9th Cir. 2021) ("We have previously recognized the Supreme Court's direction that without evidence of a congressional intent to create both a private right and a private remedy, a private right of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (cleaned up).

The only court to analyze this issue thus far is the Central District of California, in *Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129, 1136-38 (C.D. Cal. 2022).[7] It acknowledged that the PTPA "only appears to permit the Washington attorney general to bring suit to enforce its provisions" and that "the Washington legislature only intended for the attorney general to bring an action for violation of the PTPA." *Id*. at 1136. Despite these findings, it nonetheless held that the statute's references to the CPA vests a private cause of action. *Id*. However, the PTPA only references the CPA (19.86 RCW) in the context of "actions brought by the attorney general." RCW 19.350.030. *MediaPointe*'s holding is untenable as a matter of law as it "would require the Court to ignore or read out that phrase, violating the cardinal principle of statutory interpretation that courts must 'give effect, if possible, to every clause and word of a statute.'" *United States v. Kahn*, 524 F. Supp. 2d 1278, 1283

---

[7] A court from this District subsequently quoted this holding from *MediaPointe* in passing, although it was presented without analysis and the defendants' motion never alleged that the plaintiff was barred from seeking relief under the PTPA. *Valve Corp. v. Rothschild*, No. 23-CV-1016, 2024 WL 4335682, at *8 (W.D. Wash. Sept. 26, 2024).

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                    - 11 -

(W.D. Wash. 2007) (quoting *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 21 (2006)). This Court is not bound by that determination, particularly considering it is an out-of-state federal court interpreting Washington law. Indeed, in later analyzing what types of communications are covered by the PTPA, the *MediaPointe* court acknowledged that "[t]he proper body to expand the coverage of the statute is the Washington legislature, not a federal judge in California applying Washington law." 626 F. Supp. 3d at 1137-38.

Because there is no private right of action for enforcement of the PTPA through the CPA (or otherwise), Starbucks cannot invoke the statutory exception of RCW 4.105.010(3)(xi) and cannot meet its burden under the second step of the UPEPA analysis. *See M.G. v. Bainbridge Island Sch. Dist. #303,* 34 Wash. App. 2d 51, 77-79 (2025); *Ligeri*, 2025 WL 2782919, at \*4 (deficient claims cannot be relied on to satisfy step two). And Starbucks' PTPA claim fails for lack of standing and must be stricken under UPEPA step three.

### 3. Starbucks Further Fails To State A Claim Because It Has Failed To Plead Bad Faith

Starbucks' PTPA claim is further deficient because the Complaint fails to state a claim for relief, namely that the challenged communications were sent in bad faith. RCW 19.350.020. This requirement is necessary so that the statute avoids *Noerr-Pennington* preemption. *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370 (Fed. Cir. 2002) ("In general, federal patent law bars the imposition of liability under federal or state law for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith.") (cleaned up).

"Bad faith includes separate objective and subjective components." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008). "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id*.

As the Ninth Circuit has explained, "the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Franchise Realty Interstate Corp. v. S.F. Loc. Jt. Exec. Bd. Of Culinary Workers*, 542 F.2d

DEFENDANTS' MOTION TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC

- 12 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

1076, 1082 (9th Cir. 1976). "In its pleadings, the party denying immunity … must explain exactly why the alleged conduct is not protected by the *Noerr-Pennington* doctrine. If it fails to do so, even at the Rule 12(b)(6) stage, the court must dismiss the claim and thereby preserve the 'breathing space' afforded to First Amendment guarantees." *Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. 12-CV-0188, 2012 WL 12863934, at *3 (W.D. Wash. July 25, 2012) (citations omitted). Accordingly, Starbucks' Complaint must contain more than conclusory accusations of bad faith. *See Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332 n.5 (Fed. Cir. 2012) ("In order to survive Biosafe's motion to dismiss under Rule 12(b)(6), Matthews was required to do more than make bald assertions that Biosafe acted in 'bad faith.'").

Starbucks' Complaint does not meet the heightened standard for demonstrating either objective baselessness or subjective bad faith. The PTPA enumerates specific factors as evidence of whether a person has made an assertion of patent infringement in bad faith or in good faith. In line with the fact that Valtrus sought open, collaborative licensing discussions with Starbucks, a number of the good faith factors are admitted, and ***none*** of the bad faith factors can be adequately pled as a result.

### (a)     Starbucks' Complaint Admits Most Good Faith Factors Are Present

Starbucks' Complaint has pleaded itself out of a claim by admitting that multiple good faith factors are present. For example, Starbucks admits that "Valtrus and Starbucks had a detailed discussion and Valtrus communicated licensing numbers to Starbucks," and that the next day "Valtrus (via an agent of same) sent Starbucks (via an agent of same) a PPT presentation and multiple 'claim charts'." Dkt. 1 ¶ 18. These allegations demonstrate that Valtrus has provided additional information "within a reasonable period of time after such information is requested" RCW 19.350.020(4)(a); "[e]ngaged in reasonable analysis to establish a reasonable, good faith basis" for its assertions RCW 19.350.020(4)(b)(i); and "[a]ttempted to negotiate an appropriate remedy in a reasonable manner" RCW 19.350.020(4)(b)(ii). This compels the Court strike Starbucks' PTPA claim.

For example, in *Summer Infant (USA), Inc. v. TOMY International, Inc.*, a request to add a bad faith patent assertion claim was denied because the plaintiff's admission that the accused letter

DEFENDANTS' MOTION TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                              - 13 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

included a thirteen-page claim chart "nullifie[d] the existence of virtually all of the 'bad faith'" alleged by the plaintiff. No. 17-CV-549 2019 WL 5540224, at *2 (D.R.I. Oct. 25, 2019). The court differentiated between an allegation "that there was a complete absence of analysis," from an allegation that the defendant's "analysis was not 'sufficient' or 'adequate.'" *Id*. ("Summer Infant's pleading fails to allege facts establishing any of the factors evidencing bad faith, all while conceding the existence of key facts foundational to an absence of bad faith.").

And in *Unverferth Manufacturing Co. Inc. v. Par-Kan Co., LLC*, the court rejected a counterclaim of bad faith because the demand letter was "very detailed," and 1) identified the patents and claims asserted, 2) identified the patent owner, 3) mapped specific claim elements to the accused products, and 4) did not demand "an excessive licensee fee within an unreasonably short period of time." No. 3:23-CV-00653, 2024 WL 4298567, at *5 (N.D. Ind. Sept. 26, 2024) ("Defendant's arguments don't have a clear nexus to bad-faith assertion of the patents, but instead largely attack the Plaintiff's claims on their merits. Defendant does not address the statutory factors that would support a finding of bad faith assertion nor does it counter Plaintiff's arguments against a finding of such.").

In line with this authority, Defendants' detailed notice letter that identified patents and products, PowerPoint presentation, 150 pages of claim charts, and request for further discussions, all demonstrate the good faith business negotiations expected between parties.

Additionally, judicially noticeable facts relating to Starbucks' allegations demonstrate Defendants' "reasonable business practices in previous efforts to enforce the patent" and that Defendants have "[s]uccessfully enforced the patent … through litigation." RCW 19.350.020(4)(c)(i-ii). For example, after nearly two years, Defendants' litigation against SAP involving the '244 and '738 Patents (the same litigation Starbucks' Complaint extensively quotes from) amicably settled on the eve of trial. *See* Ex. 5; *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. 15-CV-246, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015) (an action ending in a successful settlement "cannot be reconciled with [the] allegation that they were 'objectively baseless.'") (citing cases); *Reyn's Pasta Bella*, 442 F.3d at 746 (taking judicial notice of court filings).

### (b)    Starbucks Does Not Plead A Single Bad Faith Factor

The PTPA sets out six "nonexclusive factors as evidence that a person has made an assertion

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

- 14 -

of patent infringement in bad faith." RCW 19.350.020(2).

**(a) The demand does not contain: (i) the patent number; (ii) the name and address of the patent owner; and (iii) factual allegations**. Here, all three were present in the initial demand letter, and the later provided PowerPoint and claim charts. The letter identifies eleven patents by patent number in Table 1. Dkt. 1-2 at 3-4. The letter states that "Valtrus Innovations Limited ('Valtrus') is the owner of an extensive portfolio of patents originating from Hewlett Packard Enterprise Company ('HPE')," and that "[f]urther details regarding Valtrus may be found on the Valtrus website at: www.valtrusinnovations.ie." *Id*. at 1. The letter also identifies the "Starbucks Relevant offerings" for each patent. *Id*. at 3-4.

**(b) If requested, the patentee failed to provide the information within a reasonable time**. As set out above, every item set out in subsection (a) was provided to Starbucks initially. Moreover, as discussed above, when Starbucks requested claim charts, Valtrus provided them the very next day.

**(c) The patentee did not conduct any prior analysis**, and **(e) The assertion of patent infringement contains false, misleading, or deceptive information**. Starbucks claims that Valtrus failed to conduct any analysis before sending the challenged communications, and that what analysis was present contained material misrepresentations. Starbucks has pleaded itself out of this allegation, however, by incorporating into the complaint the over 150 pages of claim charts provided by Valtrus. The fact that Starbucks attacks those claims charts by disputing infringement and claim construction shows that it was provided with the full and fair information necessary to evaluate the need for a license, which is what the PTPA seeks to ensure. And Starbucks' allegation that Valtrus created the claim charts the day of the September 24 meeting, based on metadata, reflects a fundamental misunderstanding of document metadata. The date a document is printed to PDF does not in any way reflect when the underlying document was created, and there is no factual support for Starbucks' contention. Indeed, the fact that Valtrus provided 150 pages of charts immediately after Starbucks requested them is proof that they were not created that day, and any suggestion otherwise defies reason and logic. The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Spivak v. Alphabet Inc.*, No. 20-CV-1480, 2021 WL 535211, at

DEFENDANTS' MOTION TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC     - 15 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

*10 (W.D. Wash. Feb. 12, 2021) (dismissing claims that "rest on implausible allegations and speculation").

Starbucks also makes conclusory allegations that "Valtrus's Demand Letter contains allegations of infringement that no reasonable person could believe are true," and that "[e]ach claim chart by Valtrus contains material misrepresentations about the capabilities of the accused 'offerings'." Dkt. 1 at 12. But a dispute over an infringement analysis is not an adequate allegation of bad faith. The law is clear that "patentees … are allowed to make representations that turn out to be inaccurate provided they make them in good faith." *Golan*, 310 F.3d at 1371; *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 982 (N.D. Cal. 2019) ("Weaknesses in Balsam's case would not make it objectively baseless."); *Reck-n-Rack LLC v. Just Encase Prods. Inc.*, 649 F. Supp. 3d 734, 740 (E.D. Wis. 2023) ("Merely alleging that the infringement threat was incorrect is not enough to allege that the threat was made in bad faith.").

Similarly, Starbucks repeatedly alleges that Defendants have failed to include sufficient evidence of infringement for every claim limitation and theory of infringement. Setting aside the fact that Starbucks' conclusory assertion contradicts the plain content of Defendants' claim charts, "the law allows a patent-holder to assert its rights even without absolute proof of infringement." *Autronic Plastics, Inc. v. Apogee Lighting, Inc.*, No. 19-CV-6268, 2021 WL 8322144, at *9 (E.D.N.Y. Mar. 24, 2021); *id*. at *7 (dismissing counterclaim based on alleged bad faith notice letters because "the Court finds that the claim charts plausibly identify the infringing feature by reference to the product specification sheets" and the court was unaware of any law "holding that an asserted claim of infringement is objectively baseless if an otherwise comprehensive claim chart fails to address all components of the product at issue"). Moreover, there is no blanket requirement that a patentee draft *any* claim charts before filing suit, let alone before sending a notice letter. *See Repeat-O-Type Stencil Mfg. Corp. v. Hewlett-Packard Co.*, 141 F.3d 1178 (9th Cir. 1998) (Table) ("Nor do we find that a claims chart is a prerequisite for a suit."); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004) (holding that "a claim chart is not a requirement of a pre-filing infringement analysis"). Defendants went above and beyond what is required in conducting an infringement analysis, and Starbucks cannot maintain a PTPA claim by alleging that patentees are mandated to

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                        - 16 -

serve an infringement analysis with the same detail as an infringement expert report, for example by expressly identifying every actor involved in infringement and their intent in early negotiation documents. *See* Dkt. 1 ¶¶ 51-53, 57.

**(d) The patentee threatens legal action that cannot legally be taken**. First, this factor is not met because Valtrus *never threatened legal action*. *See* Section IV, *infra*. Valtrus asked Starbucks to start licensing discussions, and the parties agreed to continue license discussions in a few weeks—a plan Starbucks scuttled by filing this Complaint. Second, Starbucks alleges that Valtrus falsely represented that it is the owner of the patents-in-suit and does not have standing to enforce them. Dkt. 1 ¶¶ 40-41, 43. But that is incorrect, and it is undisputed that the patents are indeed assigned to Valtrus. Starbucks nonetheless parrots party argument from co-pending litigation that Valtrus is a "bare trustee that holds title in name only." *Id*. ¶ 40. However, as set forth in Starbucks' own exhibits, the Eastern District of Texas rejected this very argument, holding that Valtrus had Article III standing to sue as the patent owner. *See* Dkt. 1-4 at 8 ("The Court finds that Valtrus has standing because it has at least one exclusionary right in the Asserted Patents."). Thus, Valtrus' statement that it owns the patents-in-suit is objectively true, and cannot support a claim of bad faith.

There is also no merit to the claim that Defendants have tried to keep the relationship between Valtrus and Key Patent a secret. For example, in that same action Starbucks cites, Valtrus filed a Rule 7.1 disclosure statement acknowledging that "Valtrus Innovations Ltd. is a wholly-owned subsidiary of Key Patent Innovations Limited." Ex. 6. And, in a November 2023 profile for Intellectual Asset Management ("IAM"), Key Patent expressly touted Valtrus' role in Key Patent's "monetisation programme," explaining that its "subsidiaries" including "Valtrus Innovations … concluded significant licence deals that also validated the value of those investments." Ex. 7 at 4; *Joyce v. Amazon.com, Inc.*, No. 2:22-CV-00617, 2023 WL 8370101, at *3 (W.D. Wash. Dec. 4, 2023) (taking judicial notice of "publicly available news articles" to "indicate what was in the public realm at the time").

**(f) A court found the patentee's prior assertion to be without merit or containing false information**. Starbucks does not allege this factor is met, nor could it.

Because Starbucks has failed to plead the requisite bad faith, the PTPA claim should be

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                            - 17 -

stricken under Washington's anti-SLAPP statute, or alternatively dismissed pursuant to Rule 12(b)(6).

### 4. Alternatively, The Court Should Certify A Question To The Washington Supreme Court

Should the Court decline to hold that there is no private right of action under the PTPA, and/or should the Court disagree that Starbucks has failed to state a claim for relief under the PTPA, Defendants respectfully request that the Court certify a question to the Washington Supreme Court as to whether the PTPA provides for a private cause of action pursuant to RCW 2.60.020. Here, certification would be appropriate because there is no clear and controlling Washington law on the matter, and resolution of the question could dispose of Starbucks' PTPA claim and free patentees from the threat of overzealous private actions intended to chill good faith patent licensing efforts.

In *Brown v. Old Navy, LLC*, this Court was faced with a similar dispute over the interpretation of a statute legislating communications into the state. No. 2:23-CV-00781, 2023 WL 12071921, at *1 (W.D. Wash. Nov. 29, 2023) (Chun, J.). The defendant argued that this Court should defer to a recent Washington federal court decision on the matter, but this Court instead certified a question to the Washington Supreme Court. *Id.* at *2. This was a prudent decision, as the Supreme Court concluded that the federal court decision incorrectly interpreted Washington law. *Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 585 (2025) ("[W]e are not bound by federal courts' interpretation of our state laws."); *id.* at 593 ("*Chen*'s discussion of the statutory provision is of little help here.").

### B. Starbucks' Declaratory Judgment Claims Should Be Dismissed

Starbucks has also brought twenty-two claims seeking declaratory judgments of non-infringement and invalidity as to eleven different patents. However, there is no case or controversy between the parties, evident by Starbucks' resort to subterfuge in an attempt to manufacture subject matter jurisdiction. At minimum, the Court should refrain from rewarding Starbucks' behavior and exercise its discretion to decline to hear these twenty-two claims. *See Am. Needle & Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376, 379 (7th Cir. 1967) ("The owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of a defense of an expensive and burdensome declaratory judgment

DEFENDANTS' MOTION TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                    - 18 -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

suit alleging invalidity and non-infringement.").

### 1.   There Is No Case Or Controversy, And Thus No Subject Matter Jurisdiction

"An actual controversy must be present before a declaratory judgment action is ripe for adjudication." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992). The pertinent inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

Starbucks' Complaint attempts to portray Defendants as bad actors leveraging baseless threats of litigation in an attempt to "force Starbucks to take a license," Dkt. 1 ¶ 18, but lacks factual support. For example, the February notice letter never intimated any threat of litigation, instead expressly emphasizing that "Valtrus wants to assure Starbucks that Valtrus' intention is to allow Starbucks to continue its use of these patents through a license from Valtrus." Dkt. 1-2 at 2; *see Albecker v. Contour Prods., Inc.*, No. 09-CV-00631, 2013 WL 5423843, at *9 (N.D. Ill. Sept. 27, 2013), *aff'd*, 578 F. App'x 969 (Fed. Cir. 2014) ("[The plaintiff's] complaint does not allege, for example, that [the defendant] sent him a cease-and-desist letter that warned him to stop infringing its '545 Patent or else defend an infringement suit."); *Shoom, Inc. v. Elec. Imaging Sys. of Am., Inc.*, No. 05-CV-03434, 2006 WL 1529983, at *6 (N.D. Cal. May 31, 2006) (finding no "direct or implied threat" when the defendant's language evidenced "a willingness to engage in licensing negotiations with [plaintiff], rather than to immediately file suit").

On the contrary, it was Starbucks that insisted multiple times that Valtrus "provide Starbucks with a demand." Ex. 1 at 3-4. As is now evident, this was not a good faith attempt at negotiation, but Starbucks and its counsel setting in motion their scheme to manufacture a controversy where none exists. But courts frequently hold that no case or controversy exists when the plaintiff employed gamesmanship like this in an attempt "to create subject matter jurisdiction." *Innovative Therapies,*

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC
- 19 -
IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

*Inc. v. Kinetic Concepts, Inc.*, No. 07-589, 2008 WL 4809104, at *2 (D. Del. Nov. 5, 2008), *aff'd*, 599 F.3d 1377 (Fed. Cir. 2010); *see also Cyber Fin. Network, Inc. v. Lendingtree, Inc.*, No. 03-6062, 2004 WL 1293929, at *3 (E.D.N.Y. May 10, 2004) (finding no controversy where "plaintiff's correspondence may be viewed as intentionally drafted to provoke defendant to action and satisfy the requirements of the [Declaratory Judgment] Act").

In response to Starbucks' request that Valtrus "please provide Starbucks with a demand," Valtrus shifted responsibility for the anticipated negotiations away from outside counsel and instead had Mr. Seaman, a non-attorney executive, handle communications. This too weighs against a finding of a case or controversy. *See Merch. Techs., Inc. v. Telefonix, Inc.,* No. 05-CV-1195, 2007 WL 464710, at *10 (D. Or. Feb. 7, 2007) (communications that "came from officers of Defendants rather than from Defendants' attorneys" are entitled to less weight).

Starbucks alleges that these materials "indicated an escalation to litigation," evident by a few passing references to "asserted" patents in the PowerPoint and "ACTIVE LITIGATION" included at the end of the *file names* of some of the claim charts. *See* Dkt. 1 ¶ 18. However, the totality of the circumstances, including that they came from a non-attorney, clearly undercuts Starbucks' allegation that the parties were on the precipice of litigation. Indeed, the "Next Steps" of the PowerPoint presentation noted "Starbucks to respond to license offer" with "Statuss [sic] call set for October 15." Ex. 2 at 20. *See IVX Animal Health, Inc. v. Burger*, 475 F. Supp. 2d 1264, 1268 (S.D. Fla. 2007) (discounting possible "references to the possibility of litigation" when the communication "repeats the invitation to discuss licensing arrangements"). And the email from Mr. Seaman clearly reiterated Defendants' understanding that negotiations were ongoing, and gave zero indication of escalation, contrary to Starbucks' recitation of events. Ex. 1 at 1 ("We look forward to our next call on October 15th. Thanks! paul."); *see Merch. Techs.*, 2007 WL 464710, at *10 ("[Defendant's] reference to a 'moving forward' plan and a relationship between the parties establishes that the parties were still in the midst of negotiations as to the patent rights….").

Starbucks claims that the PowerPoint was the catalyst for this lawsuit, but that contention is critically belied by the fact that Starbucks already had a complaint at the ready, which was filed the day after the parties' meeting and only hours after Mr. Seaman sent it. Starbucks' attempt to

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                    - 20 -

manufacture a case or controversy should be denied.

### 2. Alternatively, The Court Should Exercise Discretion And Decline Jurisdiction

A "district court must also be satisfied that entertaining the action is appropriate. This determination is discretionary, for the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority." *Liberty Mut. Fire Ins. Co. v. Balfour Beatty Const. Co.*, No. 07-5507, 2008 WL 2492300, at *2 (W.D. Wash. June 17, 2008) (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1226-27 (9th Cir. 1998)). "This substantial discretion stems from Congress's intent in enacting the Declaratory Judgment Act to create an opportunity, rather than a duty, for a district court to grant a new form of relief to qualifying litigants." *Steamship Mut. Underwriting Ass'n Ltd. v. Osprey Underwriting Agency Ltd.*, No. 15-CV-43, 2015 WL 3649283, at *7 (W.D. Wash. June 11, 2015) (cleaned up); *see also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1385 (Fed. Cir. 2010) (accord).

Courts frequently decline to reward plaintiffs who rush to the courthouse instead of resolving disputes extra-judicially. *See, e.g., Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 146 (D. Mass. 1993) (dismissing action because "it would be contrary to important public policies discouraging needless litigation to reward Davox's race to the courthouse"); *id.* at 148 ("This court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources."); *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271, 275 (W.D.N.Y. 1999) ("[G]iven the lack of evidence that [plaintiff] had indicating that [defendant] was likely to bring an infringement action against it, allowing the action to go forward would encourage forum shopping and the filing of premature, purely anticipatory declaratory judgment complaints, which are not among the purposes the Declaratory Judgment Act was designed to promote.").

This is particularly true where, like here, the plaintiff prematurely cut short ongoing license negotiations. For example, in *Solo Cup Co. v. Fort James Corp.*, a "pivotal factor" in the court's discretionary dismissal was that the plaintiff filed suit the same day it received a communication from

defendant indicating "that negotiations were continuing" and the Court was "convinced that the plaintiff engaged in a race to the courthouse to the defendant's detriment." No. 99-CV-4724, 1999 WL 1140885, at *2 (N.D. Ill. Nov. 29, 1999); *see also Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1359 (Fed. Cir. 2020) (affirming dismissal where the plaintiff represented on a call that it would provide a licensing counter-proposal but filed suit two days later instead). The facts here are strikingly similar, as Starbucks likewise filed suit the day after discussing licensing terms with Valtrus and the very same day it received a communication from Valtrus expressing optimism towards the continuing negotiations. This hastiness further cautions against the exercise of jurisdiction. *See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) ("Just one day before filing its declaratory action, AmSouth's counsel sent a letter stating that AmSouth was 'still considering' the Receivers' demand and its options, and that counsel would 'be in touch in the near future concerning a written response and a possible meeting on July 24.' It seems clear that the Banks filed declaratory actions not to resolve issues of liability that were hindering their normal behavior, but instead to gain procedural advantage.") (citation omitted).

Courts are particularly hesitant to entertain declaratory judgment actions when the evidence indicates that the plaintiffs employed subterfuge for their strategic benefit. *See, e.g., Snapology Jewelry, LLC v. LDC, Inc.*, No. 1:16-CV-1036, 2017 WL 1737924, at *2 (W.D. Mich. May 4, 2017) ("Snapology led LDC to believe that settlement discussions were ongoing, while simultaneously and surreptitiously preparing its Complaint which it filed on the same day it said it would respond to LDC's July 8, 2016 demand letter."); *AquaWood, LLC v. Revel Match, LLC*, No. 12-CV-4295, 2012 WL 12892425, at *4 (C.D. Cal. Nov. 2, 2012) (plaintiff's need for declaratory judgment relief was "severely undercut by Plaintiff's gamesmanship with respect to its failure to engage in good faith settlement negotiations").

In sum, the case law is legion that the Court need not and should not entertain Starbucks' declaratory judgment claims, and that dismissal is warranted regardless of whether Starbucks demonstrates subject matter jurisdiction.

**IV.    CONCLUSION**

Defendants respectfully request that Starbucks' PTPA claim be stricken (or in the alternative,

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                                    - 22 -

IRELL & MANELLA LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

dismissed under Rules 12(b)(1) or 12(b)(6)), and that Starbucks' declaratory judgment claims be dismissed under Rule 12(b)(1) or this Court's discretion.

Dated: December 15, 2025                    Respectfully submitted,


                                            By:  */s/ Steven W. Fogg*
                                            Steven W. Fogg, WSBA No. 23528
                                            sfogg@corrcronin.com
                                            CORR CRONIN LLP
                                            1015 Second Avenue, Floor 10
                                            Seattle, WA 98104
                                            206-625-8600

                                            Jason G. Sheasby (*admitted pro hac vice*)
                                            jsheasby@irell.com
                                            Andrew Strabone (*admitted pro hac vice*)
                                            astrabone@irell.com
                                            Lucas S. Oxenford (*admitted pro hac vice*)
                                            loxenford@irell.com
                                            Megan Dieffenbach (*admitted pro hac vice*)
                                            mdieffenbach@irell.com
                                            IRELL & MANELLA LLP
                                            1800 Avenue of the Stars, Ste. 900
                                            Los Angeles, CA 90067
                                            310-277-1010

                                            *Counsel for Defendants*
                                            *Valtrus Innovations Limited and Key Patent*
                                            *Innovations Limited*

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                    - 23 -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010

**<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that this memorandum contains 8,383 words, excluding the caption, table of contents, table of authorities, and signature block, in compliance with Local Civil Rule 7(e).

Dated: December 15, 2025                    */s/ Steven W. Fogg*_____

DEFENDANTS' MOTION TO STRIKE AND
TO DISMISS
No. 2:25-cv-1859-JHC                          - 24 -

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067
310-277-1010