The Honorable John H. Chun

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| Starbucks Corporation, | Case No.: 2:25-cv-01859-JHC |
| Plaintiff, | NOTE ON MOTION CALENDAR: January 12, 2026 |
| v. | |
| Valtrus Innovations Limited and Key Patent Innovations Limited, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND DISMISS** |
| Defendants. | |

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     MATERIAL FACTS .......................................................................................... 4

III.    ARGUMENT ..................................................................................................... 6

        A.      The UPEPA Does Not Apply ................................................................ 6

                1)      The UPEPA Expressly Does Not Apply to Claims Brought Under the
                        CPA ............................................................................................... 6

                2)      The CPA Allows for Private Right of Action Under the PTPA ................... 7

                3)      It Is Well Settled That Bad Faith Patent Assertion Is Not Protected
                        Speech .......................................................................................... 12

                4)      Certification Is Unnecessary and Unwarranted ........................................ 13

        B.      Starbucks Has Plausibly Pled Bad Faith ............................................ 14

                5)      Starbucks Has Plead Extensive Facts Evidencing Subjective Bad Faith .. 14

                6)      Starbucks Has Plead Extensive Facts Evidencing Objective Bad Faith ... 17

                7)      Starbucks Has Plead Extensive Facts Under The Statutory Bad Faith
                        Factors .......................................................................................... 18

        C.      Subject Matter Jurisdiction Exists Under Well-Established Law ......................... 21

        D.      This Court Should Hear This Case ..................................................... 23

IV.     CONCLUSION ................................................................................................. 27

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                          - i -

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anthis v. Copland*,
   270 P.3d 574 (Wash. 2012)...............................................................................................11

*Biden v. Texas*,
   597 U.S. 785 (2022)............................................................................................................9

*Brown v. Old Navy*,
   No. 2:23-CV-00781, 2023 WL 12071921 (W.D. Wash. Nov. 29, 2023) (Chun, J.)...............14

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
   387 F.3d 1352 (Fed. Cir. 2004)........................................................................................25

*Diemert v. City of Seattle*,
   689 F. Supp. 3d 956 (W.D. Wash. 2023)...........................................................................19

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996).............................................................................................25

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
   362 F.3d 1367 (Fed. Cir. 2004)...........................................................................1, 12, 13, 15

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009).................................................................3, 21, 22, 23, 24, 25

*Iris Connex, LLC v. Dell, Inc.*,
   235 F. Supp. 3d 826 (E.D. Tex. 2017)...............................................................................17

*Jha v. Khan*,
   24 Wash. App. 2d 377, 387 (2022) and RCW 4.105.060(1)(a)..........................................6, 13

*Johnson v. Cont'l W., Inc.*,
   663 P.2d 482 (Wash. 1983)...............................................................................................11

*Judd v. Weinstein*,
   967 F.3d 952 (9th Cir. 2020) ............................................................................................14

*Landmark Tech., LLC v. Azure Farms, Inc.*,
   No. 3:18-cv-1568-JR, 2020 WL 1430088 (D. Or. Mar. 24, 2020)....................................1, 27

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118, 127 S.Ct. 764 (2007)................................................................................23, 26

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    - ii -

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

*Micron Tech., Inc. v. MOSAID Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008)..............................................................................................2, 25

*Microsoft Corp. v. MediaPointe, Inc.*,
  626 F. Supp. 3d 1129 (C.D. Cal. 2022) ...............................................................2, 7, 10, 11, 14

*NAPCO, Inc. v. Landmark Tech. A, LLC*,
  555 F. Supp. 3d 189 (M.D.N.C. 2021) ......................................................................................1

*Nostromo v. Starbucks*,
  No. 2-25-cv-00610 ....................................................................................................................3

*Pictiva v. SAP*,
  Case 2:23-cv-00495-JRG-RSP, Dkt. No. 575 .....................................................................3, 26

*Public Affairs Assocs., Inc. v. Rickover*,
  369 U.S. 111 (1962).................................................................................................................25

*Rain Gutter Pros, LLC v. MGP Mfg., LLC*,
  55 F. Supp. 3d 1330 (W.D. Wash. 2014)...............................................................3, 21, 22, 24

*RFCyber Corp. v. Starbucks Corporation*,
  No. 2-24-cv-00550 ....................................................................................................................3

*Scott v. Cingular Wireless*,
  161 P.3d 1000 (Wash. 2007).....................................................................................................8

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) .........................................................................................1, 12, 13

*Unverferth Mfg. Co. Inc. v. Par-Kan Co., LLC*,
  No. 3:23-CV-00653-GSL-SJF, 2024 WL 4298567 (N.D. Ind. Sept. 26, 2024)......................20

*Unverferth Mfg Co. Inc. v. Par-Kan Co., LLC*,
  No. 3:23-CV-00653-GSL-SJF, 2024 WL 5284024 (N.D. Ind. Nov. 12, 2024) ......................20

*Valtrus Innovations Ltd. v. SAP America, Inc. et al.*,
  2:24-cv-00021-JRG-RSP, Dkt. Nos. 54-16 and 296............................................................20

*Valve Corp. v. Rothschild*,
  No. 23-CV-1016, 2024 WL 4335682 (W.D. Wash. Sept. 26, 2024).........2, 6, 9, 10, 14, 19, 27

*Valve Corp. v. Rothschild*,
  No. 23-CV-1016, 2025 WL 3538067 (W.D. Wash. Dec. 10, 2025) ......................................16

*Washington v. Landmark*,
  No. 2:21-cv-00728-RSM-TLF, Dkt. No. 1 .............................................................................15

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                              - iii -

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

*Washington v. Landmark Tech. A, LLC*,
637 F. Supp. 3d 1154 (W.D. Wash. 2022)..........................................................1, 9, 12, 13, 21

**OTHER AUTHORITIES**

https://app.leg.wa.gov/committeeschedules/Home/Document/96679......................................8, 11

https://insight.rpxcorp.com/news/65626-two-well-heeled-npes-both-holding-large-opco-portfolios-open-up-march-with-fresh-suits...........................................................................24

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    - iv -

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

## I.      INTRODUCTION

Washington's Patent Troll Prevention Act ("PTPA") was enacted to protect companies from the specific conduct alleged in Starbucks Complaint: the broad dissemination of uninvestigated infringement claims by hedge-fund backed shell entities designed to be judgment-proof. In their Motion, Defendants make six arguments. Under controlling law and the operative pleading, Starbucks Complaint, none are availing.

Under Washington's state anti-slapp statute, the Uniform Public Expression Protection Act ("UPEPA"), Defendants argue (1) Starbucks PTPA Claim attacks protected speech, and (2) the PTPA does not provide for a private cause of action. Both arguments have been rejected by multiple federal courts, including courts in this District.

As a threshold matter, the UPEPA portions of Defendants' Motion are expressly barred. RCW 4.105.010(3)(a)(xi) (The UPEPA "does not apply to a cause of action . . . brought under the consumer protection act, chapter 19.86 RCW.") Further, courts in and outside of this District have ruled that bad faith patent assertion does not constitute protected speech. *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154, 1161 (W.D. Wash. 2022) ("*Landmark*"); *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 218 (M.D.N.C. 2021) ("*NAPCO*"); *Landmark Tech., LLC v. Azure Farms, Inc*., No. 3:18-cv-1568-JR, 2020 WL 1430088 (D. Or. Mar. 24, 2020) ("*Azure Farms*"). "***It appears settled that bad faith patent assertions are not protected speech***." *Landmark*, 637 F. Supp. 3d, at 1161 (citing *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 941 (9th Cir. 2006); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc*., 362 F.3d 1367, 1377 (Fed. Cir. 2004)) (emphasis added).

Regarding Defendants' argument that the PTPA does not provide for a private right of action, they are wrong. A violation of the PTPA is a violation of the Consumer Protection Act

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                    1

("CPA"), and the CPA allows for a private right of action to enforce violations of the CPA, including a violation of the PTPA. "[T]he language of the PTPA is plain." *Microsoft Corp. v. MediaPointe, Inc*., 626 F. Supp. 3d 1129, 1137 (C.D. Cal. 2022). The PTPA "provides a private right of action." *Id*; see also *Valve Corp. v. Rothschild*, No. 23-CV-1016, 2024 WL 4335682, at *8 (W.D. Wash. Sept. 26, 2024) ("Because a violation of the PTPA is an unfair method of competition in violation of section 19.86.020, section 19.86.090 ... gives a private right of action for a violation of the PTPA.") (quoting *Microsoft*).

Next, also under UPEPA, Defendants argue (3) Starbucks fails to plead bad faith, and (4) this Court should certify whether the PTPA provides for a private cause of action to the Washington Supreme Court. As to the former, Starbucks Complaint is replete with facts attesting to the bad faith nature of Defendants' patent licensing efforts, *infra*. As to the latter, the PTPA and CPA contain no ambiguity on this issue and certification is neither necessary nor case dispositive.

Finally, Defendants argue (5) there is no case or controversy, and (6) this Court should "decline jurisdiction". But under well-established controlling law, Defendants' conduct created jurisdiction, and declining jurisdiction would constitute reversible error. *Micron Tech., Inc. v. MOSAID Techs., Inc*., 518 F.3d 897, 902 (Fed. Cir. 2008) ("A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would serve the objectives for which the Declaratory Judgment Act was created. When these objectives are served, dismissal is rarely proper.")

Throughout their Motion, Defendants characterize themselves as "friendly," and Starbucks as the aggressor. But Defendants sent a Demand Letter as part of a campaign in which they sued approximately thirty other targets. Lamkin Decl., Exh. A. They then chased Starbucks for seven months, culminating in claim charts titled "ACTIVE LITIGATION" and "currently asserted"

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    2

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

patents and a six-million-dollar demand leveraged by eleven (11) open-source patents Starbucks cannot possibly infringe. Dkt. No. 30-3, at 18. Defendants cannot avoid the ramifications of their conduct by insisting they were robbing with a smile.

Further, the messenger of this "friendly" campaign was Fabricant, a law firm that has repeatedly sued Starbucks on behalf of patentees. *See Nostromo v. Starbucks*, No. 2-25-cv-00610; *RFCyber Corp. v. Starbucks Corporation*, No. 2-24-cv-00550.

Defendants' Motion relies on baseless speculation regarding counsel's motives—issues irrelevant to the governing standard of whether Starbucks has stated a justiciable controversy. Beyond being legally irrelevant, Defendants' use of inflammatory descriptors like "subterfuge" and "unethical" is factually unsupported. *See* Mot., 4:16-17, 6:4, 18:22-23, 22:15-16. This appears to be a pattern; in *Pictiva v. SAP*, the same counsel and party-parent, KPI, was admonished for "attacking the personal integrity of [opposing] counsel" rather than the merits. Case No. 2:23-cv-00495-JRG-RSP, Dkt. No. 575. Here, Defendants use these unsupported attacks to claim Starbucks "manufactured jurisdiction." This is false. Declaratory judgment jurisdiction existed long before Starbucks inquired about a license demand. *See Rain Gutter Pros, LLC v. MGP Mfg., LLC*, 55 F. Supp. 3d 1330, 1335 (W.D. Wash. 2014); *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009). Starbucks responded to Defendants' persistent requests for Starbucks to enter into a license to determine if litigation was necessary; it was Defendants' exorbitant demand that made it so.

When properly considered, none of Defendants' arguments hold weight, and the Court should deny Defendants' Motion.

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    3

## II.    MATERIAL FACTS

Defendant Valtrus was incorporated in Ireland on April 3rd, 2020. Complaint ¶ 5. In January 2021, Valtrus acquired patents formerly owned by several Hewlett Packard entities ("HPE"). Valtrus was set up solely to acquire HPE's patent portfolio; it did not have any rights to licensing and litigation rents from the assertion of that portfolio. *Id*. ¶ 41. That same year, Valtrus surrendered all exclusionary and substantial rights when it executed a Declaration of Trust and placed the HPE patents in trust for the Valtrus' parent corporation, KPI. *Id*. KPI capitalized Valtrus with a single dollar. *Id*. ¶ 42. KPI then caused Valtrus to begin filing lawsuits as the sole plaintiff, hiding the beneficial owner of Valtrus from public view and shielding KPI from attorneys' fees and all liability created when one engages in bad faith patent litigation and licensing campaigns. *Id*. ¶ 42. Until another defendant in a Valtrus litigation exposed KPI as the true owner, Valtrus and KPI engaged in considerable efforts to keep KPI and the true ownership of the Asserted Patents secret. *Id*. For example, in early pleadings from other litigation on this portfolio, Valtrus swore it was the owner of "all right and title" to the asserted patents therein, even though it was not. *Id*.

KPI is an Ireland based, multi-billion-dollar patent assertion entity funded by, *inter alia*, Centerbridge Partners, a U.S.-based hedge fund with approximately fifty (50) billion in assets under management. Backed by private equity, KPI buys patent portfolios, and then monetizes those portfolios through litigation and forced licensing.

On February 4, 2025, Fabricant LLP ("Fabricant") sent the Chief Legal Officer of Starbucks a Demand Letter. Dkt. No. 1-2. The Demand Letter Fabricant sent to Starbucks is a carbon copy of other demand letters sent to companies with completely different business models, e.g., FedEx. Complaint ¶ 44. The Demand Letter bears multiple hallmarks of bad faith, including but not limited to: (i) absence of claim charts or element-by-element mapping; (ii) blanket

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    4

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

accusations that "all offerings using" staple, general-purpose open-source components infringe; (iii) omission or misstatement of true ownership/exclusionary rights; and (iv) employing broad, boilerplate language suggestive of a lack of pre-demand due diligence." Complaint ¶ 49. The Demand Letter also does not disclose KPI as the beneficial owner of the Asserted Patents. *Id.* ¶ 43.

The Demand Letter contains allegations of infringement that are baseless if not impossible on their face. *Id.* ¶¶ 50–79. As one example, Claim 1 of the asserted '416 Patent covers license-gated activation. It requires "license information" on a node. Kubernetes ("K8") is accused, but K8 does not work that way. It is an open-source system with no license keys and no activation gate. Publicly available sources make clear K8 does not use the claimed functionality. Complaint, ¶¶ 61–63. Defendants are very sophisticated patent acquisition and assertion entities; there is no question they know or should know that K8 cannot infringe a license-gated activation patent.

After the Demand Letter, for seven months, Fabricant continued to send Starbucks emails demanding a license. Complaint, ¶ 17. In addition, representatives of Starbucks and Valtrus had multiple email and telephonic exchanges as part of Valtrus' efforts to force Starbucks to take a license, including on September 17, 2025 (phone call), September 23, 2025 (multiple emails), and September 24, 2025 (phone conversation and PowerPoint "PPT" presentation). On September 24, 2025, Valtrus and Starbucks had a detailed discussion and Valtrus communicated licensing numbers to Starbucks. On September 25, 2025, Valtrus (via its agent) sent Starbucks (via its agent) a PPT presentation and multiple "claim charts". The PPT presentation stated that certain patents were being "asserted" against Starbucks and several of the claim charts state in their title in all caps "ACTIVE LITIGATION". The PPT contained a licensing demand of six million dollars for the entire HPE portfolio and three million dollars for "Open Source Patents" in that portfolio. Dkt. No. 30-3, at 18. The claim charts Defendants sent purported evidence of use of dubious

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC

5

authenticity. For example, Defendants' charts include supposed resumes for people allegedly employed by Starbucks but Starbucks was unable to locate any employees or contractors by those names. *See* Dkt. No. 30-4, at 7; Lamkin Decl., ¶ 5.

Given Defendants' billion-dollar financial backing, their aggressive litigation conduct in connection with this portfolio, their unreasonable licensing demand, and their bad faith allegations, Starbucks sought redress in this Court under Washington's Patent Troll Prevention Act and Consumer Protection Act, and the federal Declaratory Judgment Act. Complaint, ¶ 18.

## III.    ARGUMENT

### A.  The UPEPA Does Not Apply

Defendants bear the burden to establish that UPEPA applies to this cause of action. Mot., at 7 (citing *Jha v. Khan*, 24 Wash. App. 2d 377, 387 (2022) and RCW 4.105.060(1)(a)). Defendants' arguments under the UPEPA fail as a matter of law because (1) the UPEPA expressly does not apply to claims brought under the CPA, and (2) it is well-settled that bad-faith patent assertions do not constitute protected speech.

#### 1)  The UPEPA Expressly Does Not Apply to Claims Brought Under the CPA

Defendants' UPEPA Motion fails at the threshold because the statute expressly provides that the UPEPA "does not apply to a cause of action . . . brought under the consumer protection act, chapter 19.86 RCW." RCW 4.105.010(3)(a)(xi). Here, Starbucks alleges a PTPA violation and seeks relief under the CPA framework. Complaint, 7:25–26. The PTPA expressly states that a violation of the PTPA constitutes "an unfair or deceptive act in trade or commerce . . . for the purpose of applying the consumer protection act, chapter 19.86 RCW." RCW 19.350.030; *Valve Corp. v. Rothschild*, No. 23-CV-1016, 2024 WL 4335682, at *8 (W.D. Wash. Sept. 26, 2024). And the PTPA is enforceable through the CPA's private remedy provision. RCW 19.86.090; Section

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    6

IV.A.2. Therefore, "a private cause of action alleging a violation of the PTPA is properly thought of as an action under [the CPA] chapter 19.86." *Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129, 1135 (C.D. Cal. 2022).

Nor does the Starbucks PTPA claim fall under the two narrow exceptions of RCW 4.105.010(3)(b) that would undo the exclusion of consumer protection claims from the UPEPA. Defendants' bad-faith patent assertions are not "dramatic, literary, musical, political, journalistic, or otherwise artist work" nor "consumer opinions or commentary, evaluation of consumer complaints, or review or ratings of business." RCW 4.105.010(3)(b)(i)–(ii); *see also Microsoft*, 626 F. Supp. 3d at 1135 (finding that "the PTPA does not fall within one of the two exceptions" under RCW 4.105.010(b)).

Because Starbucks PTPA Claim is enforced via the CPA, and because the UPEPA does not apply to a claim brought under the CPA, Defendants cannot meet their burden and their UPEPA claims necessarily fail.

### 2) The CPA Allows for Private Right of Action Under the PTPA

Defendants attempt to evade the clear inapplicability of UPEPA by arguing that Starbucks lacks standing under the PTPA—essentially claiming Starbucks must *first* win the standing argument before it can even assert the PTPA exclusion. But UPEPA's applicability turns on the nature of the claim asserted, not on the Defendants' merits-based defense to it. RCW 4. 105.010(3). Otherwise, the exclusion would be nullified by the mere assertion that the plaintiff cannot prevail.

Defendants' Motion rests on a fundamental misunderstanding of Washington's consumer protection architecture. They argue that because the PTPA does not contain its own "private right of action" clause, no private right exists. This argument fails because the PTPA does not function as a standalone remedial statute. Instead, it operates as a predicate or trigger statute whose primary

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    7

legal function is to define specific conduct as an unfair trade practice, thereby activating the existing remedial machinery of the CPA. When the Legislature defined a PTPA violation as an "unfair or deceptive act . . . for the purpose of applying the [CPA]" (RCW 19.350.030), it purposefully bypassed the need to create a new, standalone cause of action. *See* Lamkin Decl., Exh. B, Senate Bill Report, S.B. 5059, at 2 (Wash. 2015), https://app.leg.wa.gov/committeeschedules/Home/Document/96679) ("A violation [of the PTPA] is an unfair or deceptive act in trade or commerce under CPA."). As explained below, the PTPA relied instead on RCW 19.86.090, which already grants "any person" the right to sue for such unfair acts. Defendants' search for a redundant private right provision in the PTPA ignores this deliberate statutory architecture.

Unless the legislature explicitly forbids private rights of action, the CPA allows—and even encourages—such private rights of action: "Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (citing RCW § 19.86.090); *see also id.* ("Private actions by private citizens are now an integral part of CPA enforcement."); RCW § 19.86.920 (in declaring the CPA's purpose "to protect the public and foster fair and honest competition," the CPA "shall be liberally construed that its beneficial purposes may be served"). Because a violation of the PTPA is expressly a violation of the CPA, and the CPA provides a private right of action for violations of the CPA, the CPA expressly provides a private right of action for the PTPA.

In analyzing the statute itself, Defendants quote RCW 19.350.030 but ignore the plain text: "The attorney general *may* bring an action . . . to enforce this chapter." RCW 19.350.030 (emphasis added). The operative word is "may." The statute is permissive, not exclusionary; nothing restricts

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                    8

enforcement to solely the attorney general or excludes standing for private actors under the CPA. Contrary to Defendants' assertion, finding a private right of action exists under the CPA does not read out or vitiate the text of RCW 19.350.030. Mot. at 11:21–12:1. Indeed, both coexist: the attorney general is currently enforcing the PTPA in *Landmark* under RCW 19.350.030, and parties are free to bring private rights of action under RCW 19.86.090, such as here in and in *Valve,* No. 23-CV-1016, 2024 WL 4335682.

Instead, adopting Defendants' statutory interpretation would rewrite the clearly discretionary "may" to insert limiting language. Contrary to Defendants' position, the Supreme Court recognizes that legislatures would not have conveyed limiting intentions "through an unspoken inference in conflict with the unambiguous, express term 'may.'" *Biden v. Texas*, 597 U.S. 785, 787 (2022). When the Washington legislature wants to foreclose a private right of action under the CPA, it uses plainly limiting language. *See, e.g.*, RCW § 19.375.030 ("This chapter may be enforced ***solely*** by the attorney general under the consumer protection act, chapter 19.86 RCW." (emphasis added)); RCW § 19.385.010 (identical language); 2025 Wash. Sess. Laws ch. 353, § 7 (to be codified in Title 19 RCW) (identical language); 2025 Wash. Sess. Laws ch. 354, § 7 (to be codified in Title 19 RCW) (identical language); *see also* Colo. Rev. Stat. § 6-12-104(1) (in Colorado's version of the PTPA, "[t]he attorney general has the sole authority to enforce this article and to conduct civil investigations and bring civil actions for violations of this article."); Va. Code Ann. § 59.1-215.3(E) (similar restriction in Virginia's version of the PTPA). Defendants' attempt to rewrite the PTPA to include unspoken limiting language in conflict with the express non-limiting "may" should be rejected.

Defendants admit that at least one court has addressed this identical issue and ruled that the CPA creates a private right of action for enforcement of the PTPA. Mot. at 11:16–17 (citing

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                         9

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

*Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129, 1136-38 (C.D. Cal. 2022)). The *Microsoft* court held that "the plain text of the statutes [] explicitly grant[s] a litigant the ability to bring a claim for a violation of the PTPA under section 19.86.093." *Microsoft*, 626 F. Supp. 3d, at 1136. As that court explained, the PTPA expressly states that "a violation of this chapter . . . is an unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying the consumer protection act, chapter 19.86 RCW". *Id.* (quoting RCW §§ 19.86.093, 19.86.020). Once a practice is defined as a violation of RCW 19.86.020, it triggers the broad remedial provisions of the CPA. Specifically, RCW 19.86.090 permits "[a]ny person who is injured in his or her business or property by a violation of 19.86.020 . . . [to] bring a civil action." *Id.* "Because a violation of the PTPA is an unfair method of competition in violation of section 19.86.020, section 19.86.090 also gives a private right of action for a violation of the PTPA." *Microsoft*, 626 F. Supp. 3d, at 1136. Defendants only attempt to distinguish *Microsoft* is based on the false premise that RCW 19.350.030 is the sole provision relevant to enforcing the PTPA and ignores all arguments regarding RCW 19.86.090. Defendants' argument is unavailing and should be rejected.

Defendants minimize *Valve Corp. v. Rothschild*, No. 23-CV-1016, 2024 WL 4335682 (W.D. Wash. Sept. 26, 2024) (Mot. at n. 7, 11:26–28), but that case confirms the applicability of the CPA statutory architecture to the PTPA. In *Valve*, Judge Whitehead, agreeing with *Microsoft* and expressly referencing the Washington statutes at-bar, found that "[a] violation of RCW 19.350.020 [PTPA] is an 'unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying the consumer protection act [CPA], chapter 19.86 RCW." *Valve*, 2024 WL 4335682, at *8 (citing RCW 19.350.030; *Microsoft*, 626 F. Supp. 3d 1129). "Because a violation of the PTPA is an unfair method of competition in violation of section

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                10

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

19.86.020, section 19.86.090 . . . gives a private right of action for a violation of the PTPA." *Id.* (quoting *Microsoft*).

Defendants' second argument, about the legislative history of the PTPA, is inapposite and inaccurate. "Where the plain language of a statute is unambiguous and legislative intent is apparent, [courts] will not construe the statute otherwise." *Anthis v. Copland*, 270 P.3d 574, 576 (Wash. 2012). A court should "not construe a statute contrary to Washington law or use legislative statements of purpose to vitiate a cause of action the plain text of the statute provides." *Microsoft*, 626 F. Supp. 3d at 1137 (citing *Anthis*, 270 P.3d at 576). Here, because the PTPA and CPA are unambiguous, their legislative history is irrelevant.

Further, Defendants' legislative history argument highlights hearing testimony from a single individual legislator and an attorney with the executive branch. Mot. at 10:22–11:9. But "one cannot rely on affidavits or comments of individual legislators to establish legislative intent," much less statements of non-legislators. *Johnson v. Cont'l W., Inc.*, 663 P.2d 482, 485 (Wash. 1983). A closer look at the legislative history reveals that the Washington legislature fully understood and intended for the PTPA to include a private right of action. For example, the Washington State Senate Bill Report about the bill that led to the PTPA recognizes that a violation of the PTPA is a violation of the CPA, such that "[a] person may bring a lawsuit to recover actual damages." Lamkin Decl., Exh. B, Senate Bill Report, S.B. 5059, at 1 (Wash. 2015), https://app.leg.wa.gov/committeeschedules/Home/Document/96679). The Washington State House of Representative Bill Analysis of that bill recognizes the same. Wash. H.R. Off. Of Program Rsch., S. Substitute B. 5059, at 2 (2015). In short, it is no accident that the unambiguous text of the PTPA and CPA allows for private rights of action—that is precisely what the legislature intended.

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                              11

### 3) It Is Well Settled That Bad Faith Patent Assertion Is Not Protected Speech

Defendants' UPEPA argument also fails at the threshold because bad-faith patent assertions are not protected speech. Starbucks has extensively pleaded facts demonstrating Defendants' bad faith, as detailed below. Whether Defendants actually acted in bad faith "is not a question that can be resolved at the 12(b)(6) stage of litigation." *Landmark*, 637 F. Supp. 3d at 1160.

Defendants attempt to invoke UPEPA by claiming their conduct involves the "exercise of the right of freedom of speech... or the right to petition." Mot. at 8. But they cite no authority suggesting that bad-faith patent assertions fall within these Constitutional protections. To the contrary, controlling authority establishes that "bad faith patent assertions are not protected speech." *Landmark*, at 1161; *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). Granting a UPEPA dismissal here would improperly use a statute designed to protect constitutional rights to shield conduct that the Federal Circuit and Ninth Circuit have deemed unprotected. Regardless, "[i]t appears settled that bad faith patent assertions are not protected speech." *Landmark*, at 1161 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006); *Globetrotter*, F.3d, at 1377).

Here, Starbucks has extensively pleaded facts demonstrating bad faith patent assertion, as detailed below. The Washington Legislature tailored the PTPA specifically to target only that conduct which the Federal Circuit and the Ninth Circuit have deemed unprotected, bad faith assertions. Therefore, granting a UPEPA dismissal would be circular; it would protect bad faith conduct that UPEPA was never intended to shield.

Put another way, Defendants claim their conduct falls under UPEPA because it involves the "[e]xercise of the right of freedom of speech or of the press, the right to assemble or petition,

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                            12

BAKER BOTTS L.L.P.
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

or the right of association, guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern." Mot. at 8:3–9 (citing RCW § 4.105.010.) But Defendants cite no authority supporting an argument that bad faith patent assertion is speech or the right to petition guaranteed by the US or Washington Constitutions. Indeed, under controlling authority, bad faith patent assertion is not protected speech. *Landmark*, at 1161; *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006); *Globetrotter,* 362 F.3d, at 1377.

Because Defendants bear the burden to establish that the UPEPA applies (*Jha,* 24 Wash. App. 2d, at 387), and that burden cannot be met, Defendants' UPEPA basis for dismissal must be rejected.

### 4)   Certification Is Unnecessary and Unwarranted

Defendants ask this Court to certify the question of whether the PTPA contains a private right of action to the Washington Supreme Court, claiming the statutes at-issue are ambiguous, even though one federal court outside this District (*Microsoft, supra*) and one federal court within this District (*Valve, supra*) have spoken to the question. Further, even if one reads *Valve* to be *dicta*, *Microsoft* directly addressed the question, answering in the affirmative. *Microsoft*, 626 F. Supp. 3d 1129. This Court may rely on *Microsoft*. *See Judd v. Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020) ("Where the state's highest court has not squarely addressed an issue, we must predict how the highest state court would decide the issue using intermediate appellate court decisions, ***decisions from other jurisdictions***, statutes, treatises, and restatements as guidance.") (emphasis added).

Defendants lean on *Brown* to argue for certification. Mot., at 18:10-19 (citing *Brown v. Old Navy*, No. 2:23-CV-00781, 2023 WL 12071921, at *1 (W.D. Wash. Nov. 29, 2023) (Chun, J.)) But *Brown* involved a novel, unsettled question of Washington statutory interpretation under CEMA,

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                              13

BAKER BOTTS L.L.P.
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

and ***no*** courts had addressed that issue. Further, there, the single issue was case dispositive (*id*.), not so here. Even if the PTPA claim is improperly dismissed, Starbucks DJ patent claims go forward, and would address many of the same issues as the PTPA. For example, Starbucks non-infringement claims would necessarily address the same issues as its PTPA claims, including whether asserting patents against "all offerings" of ubiquitous open-source software was done in bad faith or a permissible infringement read. Or whether K8 can ever infringe a patent that covers license keys. Regardless, as explained above, the CPA expressly provides a private right of action; certification is not necessary or valuable here. *See Valve*, 2024 WL 4335682, at *8 (citing RCW 19.350.030); *Microsoft*, 626 F. Supp. 3d 1129; *see also id.* ("Because a violation of the PTPA is an unfair method of competition in violation of section 19.86.020, section 19.86.090 ... gives a private right of action for a violation of the PTPA.") (quoting *Microsoft*).

Defendants' request would needlessly delay this litigation to confirm what the statute already says. The Court should decline the invitation to delay and deny the request for certification.

### B. Starbucks Has Plausibly Pled Bad Faith

Defendants next argue Starbucks Complaint should be dismissed because Starbucks has failed to plead bad faith. But Starbucks Complaint provides significant specific allegations explaining why Defendants' conduct is objectively and subjectively baseless such that it falls outside the protection of *Noerr-Pennington*.

Bad faith patent assertion has subjective and objective elements. *Globetrotter,* 362 F.3d, at 1377.

### 5) Starbucks Has Plead Extensive Facts Evidencing Subjective Bad Faith

Some examples of Starbucks subjective bad faith pleading include:

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                     14

**"Carbon Copy" Demand Letters:** Valtrus sent the exact same demand letter—with identical boilerplate allegations and the same list of patents and claims—to other companies with completely different business models than Starbucks. Complaint, ¶ 44. The sending of identical demand letters to companies with completely different business models demonstrates a "spray and pray" approach and a lack of genuine pre-suit investigation. *See* Complaint, ¶¶ 32-195. Notably, in the Washington Attorney General suit against NPE Landmark, one of the factors evidencing bad faith under the PTPA alleged in that case is the use of carbon copy demand letters. *Washington v. Landmark*, No. 2:21-cv-00728-RSM-TLF, Dkt. No. 1, ¶ 4.3 (citing the sending of identical demand letters as evidence of bad faith patent assertion).

**Questionable Evidence in Claim Charts:** In its claim charts, Valtrus re-named standard K8 components to match patent claim terms, e.g., calling a "kubelet" a "client application manager". Dkt. No. 30-4, at 109. A kubelet is technically dumb, it is content agnostic. It does not know what the application is, what it does, or who is using it. A client application manager, by definition, is smart. It interrogates the application and makes complex logic decisions based on the specific nature of the software. This is not a claim construction dispute; it's intentionally calling up, down. Complaint, ¶ 45.

Further, all the Asserted Claims are method claims; they are infringed when used (not when bought or sold). *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed. Cir. 1993). Defendants' evidence of "use" of the accused software by Starbucks is Valtrus' cut-and-paste citations to alleged resumes that list swaths of software platforms, including the accused open-source software. Dkt. No. 30-4, at 7. But those resumes are questionable. For example, the first resume belongs to someone named "Michael Champ," and said resume says Champ is a "Senior Data Scientist" at Starbucks. Dkt. No. 30-3, at 7. But Starbucks does not employ a Michael Champ and Champ

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                    15

cannot be located on a Google or LinkedIn search. Lamkin Decl., ¶ 5. Further, Champs' alleged resume contains the text "utilized the engine to increase user lifetime by 45% and triple user conversations". Dkt. No. 30-3, at 7. But that exact same sentence appears in the alleged resumes of three people in Valtrus' chart, a highly improbable occurrence in real life. *See id*., at 7-8. Far from demonstrating "good faith," Valtrus' infringement chart demonstrates additional bad faith conduct.

**Intentional Undercapitalization (Judgment Proofing)**: Valtrus was intentionally created as a shell entity with only **$1** in total assets to shield the true owner (KPI) from liability. Complaint ¶ 41. This setup was designed to allow Valtrus to threaten litigation without fearing attorneys' fees or sanctions, as it has no assets to lose. Complaint, ¶¶ 5, 39–41; *see also Valve,* No. 23-CV-1016, 2025 WL 3538067, at *2 ("Evidence suggesting that Defendant Rothschild intentionally manages a network of undercapitalized companies for issuing threats of patent prosecutions while being shielded from personal liability under state laws like WPTPA undoubtedly is a factor relevant to whether those claims are brought in bad faith.").

**Concealment of the Real Party in Interest (KPI)**: Valtrus actively hid KPI's involvement in the Demand Letter and subsequent presentations. Despite KPI retaining all economic and exclusionary rights, Valtrus presented itself as the owner to keep the deep-pocketed parent company (KPI) out of the dispute and protect its assets. Complaint, ¶¶ 5, 39–41. Defendants argue they did not hide KPI's ownership interest, but their cited documents refer to disclosures that occurred *after* SAP exposed ownership through extensive litigation efforts. And Defendants do not deny they failed to disclose KPI in their Demand Letter. *See* Complaint, at ¶ 39; *see also Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 851 (E.D. Tex. 2017) (hiding the "real party at

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    16

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

interest on the other side of any case" is evidence that Defendants "intended to game the judicial system as part of a pattern of continuing conduct").

**Sham Office Façade:** To feign legitimacy, Valtrus claimed a principal place of business that deposition testimony revealed to be a superficial business façade. The office is a tiny room (6.5 x 10 feet) with one desk, no computer, no phone, and is visited by an employee only once a week. This points to a fraudulent enterprise rather than a legitimate licensing business. Complaint, ¶ 7.

### 6) Starbucks Has Plead Extensive Facts Evidencing Objective Bad Faith

Some examples of Starbucks objective bad faith pleading include:

**Technical Impossibility: Kubernetes & License Keys**: Valtrus alleged that "all offerings using Kubernetes" infringe the '416 Patent, which requires "storing license information" and "activating the cluster only when the node count complies." K8 is open-source software that famously does not use license keys or gate activation based on node counts, making the claim factually impossible. Complaint, ¶¶ 61-65.

**Technical Impossibility: "Interception" by Endpoints**: Valtrus asserted the '832 Patent against databases like Apache HBase and Cassandra, claiming they "intercept communications" between a computer and a storage device. This is objectively baseless because these databases act as endpoints that *originate* Input/Output (I/O) requests; they do not sit "between" the Operating System and the disk to intercept traffic. Complaint, ¶¶ 74-78.

**Legal Impossibility: Method Claims Against "All Offerings":** The Demand Letter accused "all offerings" of infringing purely *method* claims. Under basic patent law, merely selling or offering a product does not infringe a method claim (which requires the actual performance of the steps). *Joy*, 6 F.3d, at 774-75. Furthermore, Valtrus failed to identify who performed the steps,

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                   17

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

many of which would typically be performed by cloud providers (like Amazon or Microsoft), not Starbucks. Complaint, ¶ 34.

### 7) Starbucks Has Plead Extensive Facts Under The Statutory Bad Faith Factors

Under the express statutory bad faith factors, RCW 19.350.020(2)(a), Starbucks has plead extensive facts, including:

- The Demand Letter secrets true ownership, *supra*;

- The Demand Letter and later sent claim charts fail to specifically and adequately allege infringement. *See, e.g.*, Complaint ¶ 45;

- Before sending the Demand Letter, Defendants and/or Fabricant failed to conduct an infringement analysis. *Id.*, ¶¶ 48-82; and

- Defendants' infringement allegations contain false, misleading, or deceptive information. RCW 19.350.020(2)(a)(ii)-(iii), 2(c), 2(e).

The statutory bad faith factors are also not limited to the enumerated factors but can include "[a]ny other factor the court determines to be relevant." RCW 19.350.020(2)(g). All of Starbucks allegations of subjective and objective bad faith are thus similarly relevant under the PTPA.

These are but examples. Starbucks Complaint is replete with examples of Defendants' bad faith assertions, assertions that no sophisticated litigant could believe are plausible. *See* Complaint, ¶¶ 87–195.

Defendants also incorrectly state that because good faith factors are allegedly present, "the bad faith factors can[not] be adequately pled as a result." Mot. at 13:12–15. Defendants cite no support for this proposition. The opposite is the case: Starbucks is not required to allege or deny any good faith factors in the pleading to plausibly allege bad-faith assertions of patent

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                          18

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

infringement. *Valve*, 2024 WL 4335682, at *8. Instead, "the Court accepts facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff." *Valve*, 2024 WL 4335682, at *3. "[W]hether or not Landmark's letters were sent in bad faith is not a question that can be resolved at the 12(b)(6) stage of litigation." *Landmark*, at 1160.

At its core, Defendants' Motion improperly asks the Court to weigh alleged good faith factors against Starbucks well-pled allegations of bad faith. "This the Court cannot do on a Rule 12(b)(6) motion." *Diemert v. City of Seattle*, 689 F. Supp. 3d 956, 965 (W.D. Wash. 2023) ("The City counters that Diemert 'fail[ed] to allege sufficient facts to support a finding that he was treated differently based upon a protected class,' but this is really an invitation to weigh the evidence or 'forecast' Diemert's likelihood of success on the merits. This the Court cannot do on a Rule 12(b)(6) motion.") Defendants' arguments merely confirm that the merits of Starbucks claims should be tested through discovery, not resolved at the pleading stage. *See id.* (denying motion to dismiss when "further factual development is necessary"). As just one example, Defendants argue they litigated against SAP and "amicably settled on the eve of trial." Mot. at 14:22–23. Defendants' reliance on their settlement with SAP is misplaced. Defendants ask this Court to infer that a settlement on the eve of trial vindicates the strength of their patents. Mot. at 14. But the cited filing reveals nothing about the terms. If anything, a last-minute settlement is consistent with Starbucks theory that Defendants' business model relies on leveraging the threat of litigation costs to extract payments, regardless of merit.

Defendants repeatedly suggest that they are not the type of entity the Washington Legislature has in mind when it enacted the PTPA. Mot. at 3:9–12, 11:7–9. The argument is both irrelevant and wrong. Defendants attempt to cast themselves as the good type of patent assertion entities, distinguished by their size and sophistication rather than their conduct, misapprehending

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                19

both the PTPA and the economic realities of patent aggregation. The PTPA regulates **acts** of bad faith assertion, not corporate pedigree. In fact, Defendants' sophistication cuts against them; possessing the resources to conduct the "reasonable analysis" required by the PTPA, and their failure to do so implies a strategic choice to obscure the merits of their claims rather than inadvertence.

Further, Defendants' assertion that Starbucks is trying to "quash a smaller company's licensing offers" (Mot. at 11:7–9) is unsupported and falls apart upon close scrutiny. While Valtrus is indeed small—intentionally so with a mere dollar in capitalization—KPI is part of a private equity operation including Centerbridge Partners, a private equity firm with approximately 50 billion in assets under management. *See, e.g., Valtrus Innovations Ltd. v. SAP America, Inc. et al.*, 2:24-cv-00021-JRG-RSP, Dkt. Nos. 54-16 and 296.

Defendants' cited authority does not inform this case. For example, Defendants cite *Unverferth*, from the Northern District of Indiana. Mot., at 14:7-14 (citing *Unverferth Mfg. Co. Inc. v. Par-Kan Co., LLC*, No. 3:23-CV-00653-GSL-SJF, 2024 WL 4298567 (N.D. Ind. Sept. 26, 2024), reconsideration denied sub nom. *Unverferth Mfg Co. Inc. v. Par-Kan Co., LLC*, No. 3:23-CV-00653-GSL-SJF, 2024 WL 5284024 (N.D. Ind. Nov. 12, 2024).) But there, the plaintiff only pleaded "conclusory allegations". *Id.*, at *5. Here, the same cannot be said of Starbucks Complaint.

Defendants' reliance on *Summer Infant (USA), Inc. v. TOMY Int'l, Inc.* is similarly inapposite because, after the close of fact discovery, Summer Infant moved to amend the complaint based on alleged facts supporting only one bad faith factor and "conced[ed] the existence of key facts foundational to an absence of bad faith." No. CV 17-549MSM, 2019 WL 5540224, at *2 (D.R.I. Oct. 25, 2019). Not so here where Starbucks has alleged facts supporting numerous

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                              20

enumerated and unenumerated bad faith factors, has not conceded any good faith factors, and does not have the benefit of fact discovery.

Given Starbucks extensively pleaded and supported bad faith facts, "whether or not Landmark's letters were sent in bad faith is not a question that can be resolved at the 12(b)(6) stage of litigation." *Landmark*, at 1160.

### C.  Subject Matter Jurisdiction Exists Under Well-Established Law

Defendants tell this Court there was no case or controversy, though they admit they sent the Demand Letter, engaged in multiple licensing discussions, and sent detailed claim charts labeled "ACTIVE LITIGATION" and described patents as "currently asserted against Starbucks." Mot. at 19:3–21:1; Dkt. 30-3 at 14. Their argument appears to be, since, *arguendo*, the Parties were still engaged in licensing negotiations, there is no controversy. That is not the law. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) ("The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'"); *Rain Gutter Pros, Ltd. Liab. Co. v. MGP Mfg., Ltd. Liab. Co.*, 55 F. Supp. 3d 1330, 1335 (W.D. Wash. 2014) (accord). Indeed, Defendants pray this Court will ignore the very purpose of the Declaratory Judgement Act: "In the patent version of that ["sad and saddening"] scenario, a patent owner engages in a danse macabre, brandishing a Damoclean threat with a sheathed sword." *Hewlett-Packard,* 587 F.3d, at 1362 (citations omitted). "Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue." *Id*.

Here, Valtrus sent a Demand Letter, from a law firm that repeatedly sues Starbucks, that said, "Valtrus has been studying its portfolio, as well as specific products and services offered for sale, made, used, and/or sold ('offerings') by Starbucks Corporation (hereinafter 'Starbucks'), and

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                                    21

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

believes that Starbucks *requires a license* from Valtrus. Preliminary analysis reveals that *Starbucks is currently* making, using, selling, or offering for sale products and services *that practice* (directly or indirectly) one or more of the Valtrus patents." Complaint, ¶¶ 15-16; Demand Letter, Dkt. No. 1-2, at 2 (emphasis added). Valtrus' Demand Letter contains specific patents and even specific claims it purported to believe Starbucks infringed, and expressly stated that, in its' view, Starbucks infringed ("practiced") the asserted patents. *Id*. The Demand Letter also lets Starbucks know that "Valtrus" owns nearly two thousand patents and that more patents "may be brought" to Starbucks "attention". *Id*. Defendants' Demand Letter conduct is enough to confer jurisdiction under the Declaratory Judgment Act. *Hewlett-Packard*, 587 F.3d, at 1364; *see also*

> As in *Hewlitt-Packard*, RGP also received a letter inviting it to review certain patents. The letter identified MGP as the owner of the patents, stated that IPISC had insured MGP under a policy that provides funds to legally enforce patents, informed RGP that it had come to IPISC's attention that RGP was "making, marketing, recruiting dealers, and/or selling gutter protection products which appear to be either the same or nearly identical" to the patented products, and invited RGP to review the patents. MGP now describes this correspondence as a simple invitation to talk. Given the circumstances, the Court finds such position disingenuous.

*Rain Gutter,* 55 F. Supp. 3d, at 1335 (Dkt. Citations omitted).

Further, Defendants continued to send communications to Starbucks over a period of seven months, including claim charts with "ACTIVE LITIGATION" in the title. Mot. at 20:12-14 (all caps in the original). Defendants attempt to downplay the clear threat created by sending infringement claim charts titled "ACTIVE LITIGATION," by pointing out that the sender was not an attorney. *Id*. at 20:15. But the sender was Defendants' licensing agent. Dkt. No. 30-2, at 4. Defendants raise a distinction with no difference; the sender still "engages in a danse macabre, brandishing a Damoclean threat with a sheathed sword." *Hewlett-Packard,* 587 F.3d, at 1362. Defendants cannot label a document "ACTIVE LITIGATION" to scare a target into payment and then label it "friendly negotiation" to avoid jurisdiction.

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                        22

Further, the PPT sent by Defendants licensing agent contains multiple facts evidencing the existence of a controversy, including a list of the many litigations filed by Valtrus specifically identifying the same patents "currently asserted against Starbucks" (Dkt. No. 30-3, at 14) and a demand that Starbucks pay six million dollars for the full portfolio or three million dollars to license patents allegedly covering open-source software, software Starbucks decidedly does not infringe (*id.*, at 18). Under well-settled law, this Court has jurisdiction under the Declaratory Judgement Act. *See Hewlett-Packard,* 587 F.3d, at 1362 ("Acceleron argues that it never asserted its rights under the '021 patent because its correspondence with HP did not contain language threatening to sue for infringement or demand a license. As a result, Acceleron contends that there is no justiciable case or controversy giving rise to declaratory judgment jurisdiction. We disagree."); *see also id.*, at 1361 (The Supreme Court in *MedImmune* "lowered the bar for determining declaratory judgment jurisdiction in all patent cases," especially "in the licensor-licensee context.") (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 771, 774 n. 11 (2007)).

## D.  This Court Should Hear This Case

Defendants ask this Court to exercise discretion to dismiss this case, portraying themselves as reluctant litigants forced into court while attempting amicable negotiations. Yet Defendants have a singular business model: generating revenue through aggressive patent assertions. Their request for dismissal is not about preserving resources or seeking peace; it is a tactical delay designed to maximize the cloud of uncertainty over Starbucks to extract a settlement without judicial scrutiny. Complaint, ¶¶ 50-65, 87-195. The Declaratory Judgment Act was designed precisely to prevent such conduct.

Defendants assert without basis that Starbucks has "manufactured" a "case or controversy".

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                              23

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

Mot., at 2:20-21, 18:21-23. This is belied by the facts as this Court already had declaratory judgment jurisdiction long before Starbucks reached out to ascertain Defendants licensing demand. The sending of the Demand Letter, naming specific patents and even specific claims, identifying specific open source "offerings" and making clear Starbucks needed a license, sent by a firm that has already sued Starbucks, and the continued communications sent over seven months was more than enough to establish DJ jurisdiction. See *Hewlett-Packard*, 587 F.3d, at 1364; *Rain Gutter,* 55 F. Supp. 3d, at 1335. Because Starbucks did not need a settlement demand or claim charts for this Court to have DJ jurisdiction, Defendants' accusations are unsupported and constitute gratuitous mudslinging.

Further, prior to sending the Demand Letter to Starbucks, Valtrus had already filed approximately thirty lawsuits, at least one involving some of the same patents asserted against Starbucks. *Valtrus Innovations Limited v. SAP America, Inc. et al.*, 2-24-cv-00021. It was public knowledge that KPI created Valtrus solely to force companies to take licenses, and that said efforts had billion dollar backing.[1] Valtrus' Demand Letter, sent by litigation counsel, states Valtrus "believes that Starbucks requires a license," asserts that Starbucks is "making, using, selling, or offering for sale" offerings that practice Valtrus patents." Complaint ¶ 16. While Starbucks evaluated the merits of Valtrus' Demand Letter, Valtrus' litigation counsel continued to send communications to Starbucks demanding a licensing discussion. Complaint, ¶ 17. It is hard to square Defendants' conduct with its framing that no controversy existed.

Further, Defendants' own evidence makes clear that Starbucks only wanted Defendants to provide a settlement number, Dkt. No. 30-2, at 5. Defendants' outrageous settlement demand (Dkt.

---

[1] https://insight.rpxcorp.com/news/65626-two-well-heeled-npes-both-holding-large-opco-portfolios-open-up-march-with-fresh-suits

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    24

BAKER BOTTS L.L.P.
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

No. 30-3, at 18) certainly hastened Starbucks choice to seek protection under the PTPA and Declaratory Judgment Act. Defendants put Starbucks in the position of negotiating an unreasonable demand under the threat of litigation. Starbucks was under no obligation under these circumstances to wait to be sued. The elimination of this unfair danse macabre is the Declaratory Judgment Act's raison d'être. *Hewlett-Packard,* 587 F.3d, at 1362 1362. Especially where Defendants' pattern is clear: send a demand letter, make an outrageous settlement demand, and then sue if the target does not pay. *See, e.g*., *Valtrus v. Lenovo*, 2-25-cv-00080, Dkt. No. 1; *Valtrus v. FedEx Corporation et al*., 2-25-cv-00516, Dkt. No. 1; *Valtrus v. The Home Depot,* No. 2-25-cv-00081, Dkt. No. 1.

Defendants also represent to this Court, "Courts frequently decline to reward plaintiffs who rush to the courthouse instead of resolving disputes extra-judicially." Mot., at 21:13-15. Starbucks did not run to the courthouse as demonstrated herein, and Defendants' broad stroke is inaccurate. "There must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (citing *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)); *Micron Tech., Inc. v. MOSAID Techs., Inc*., 518 F.3d 897, 902 (Fed. Cir. 2008) ("A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would serve the objectives for which the Declaratory Judgment Act was created. When these objectives are served, dismissal is rarely proper.") (citing *Capo*, 387 F.3d at 1355; *EMC Corp. v. Norand Corp*., 89 F.3d 807, 814 (Fed. Cir. 1996)).

Indeed, four of the cases cited by Defendants were decided years before the "more lenient standard [that] facilitates [and] enhances the availability of declaratory judgment jurisdiction in patent cases" set forth in *MedImmune Inc. v. Genentech Inc.*, 549 U.S. 118 (2007). Those cases

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC

25

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

applied the defunct reasonable-apprehension-of-suit test and are not applicable. Defendants' citation to *Commc'ns Test Design, Inc. v. Contec, LLC* fares no better because it considers the first-to-file rule not at issue here. 952 F.3d 1356, 1362 (Fed. Cir. 2020).

Any exercise of the Court's discretion to decline jurisdiction would also hinder–instead of serve–judicial efficiency. Starbucks asserts PTPA Claim, Count 1[2] and declaratory judgment claims pertaining to non-infringement and invalidity. Even if this Court declined DJ jurisdiction over the patent claims, it would retain jurisdiction over Starbucks PTPA Claim. And litigating the PTPA Claim necessarily involves litigating the bad faith nature of Defendants' infringement allegations, including the objective baselessness of those claims. Both the PTPA claim and the DJ claims will thus resolve issues regarding the merits of Defendants' assertions. Thus, judicial efficiency would not be served by declining declaratory judgment jurisdiction over Starbucks patent-specific claims.

Finally, in the first paragraph of their Motion, Defendants note that Starbucks counsel has presented on the PTPA. Mot., 1:2-7. Specifically, Defendants represent to this Court, "This lawsuit is an entirely inappropriate litigation tactic that has its source in the hard-sell outside counsel made for its services at the seminar [held a week before Starbucks Complaint was filed]." Mot., 1:1, 1:8-9. Defendants' unsupported allegation is not credible on its face. There is no evidence that Starbucks even attended the seminar and it's unfathomable that Starbucks prepared its Complaint, including its detailed PTPA non-infringement and bad faith allegations, in a week. Further, Starbucks choice of highly qualified counsel tells a different story than the tale of a manufactured

---

[2] Starbucks pleaded jurisdiction over the PTPA Claim alone pursuant to diversity jurisdiction. Complaint, ¶ 12.

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    26

controversy Defendants present to the court.[3] Faced with a "patent troll," Starbucks retained counsel with extensive experience litigating "anti-patent troll" statutes in the country. Ms. Lamkin successfully defended the constitutionality of such statutes in *Azure Farms* and *Napco*, *supra*, and she has been litigating private right of action cases under state anti-patent-troll statutes for nearly a decade. *See, e.g., Landmark Technology, LLC v. Azure Farms*, 3:18-cv-01568. Mr. Machleidt and Mr. Geyer are currently litigating the PTPA in *Valve*, *supra*, and have successfully overcome many of the unsupported arguments Defendants make herein. Starbucks selection of counsel reflects a serious approach to the important legislation and laws Defendants now seek to avoid.

## IV.    CONCLUSION

For the reasons stated herein, Starbucks asks that Defendants' Motion be denied in its entirety.

---

[3] Personal attacks appear to be part of Defendants' litigation strategy. For example, in another KPI litigation, using the same counsel here, KPI entity Pictiva employed a persistent strategy of personal attacks against counsel. *Pictiva v. SAP*, Case 2:23-cv-00495-JRG-RSP, Dkt. No. 575 ("From the very beginning of the trial, rather than attacking on the merits, [counsel] instead attacked the personal integrity of Samsung's counsel. His antics forced the Court twice to try to rein him in.")

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC                    27

**BAKER BOTTS L.L.P.**
101 California Street, Ste. 3200
San Francisco, CA 94111
415-291-6200

Dated: January 5, 2026

Respectfully submitted,

By: */s/ Rachael D. Lamkin*
Rachael D. Lamkin (*pro hac vice*)
rachael.lamkin@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
(415) 291-6200

Thomas B. Carter, Jr. (*pro hac vice*)
thomas.carter@bakerbotts.com
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1234

By: */s/ Dario A. Machleidt*
Dario A. Machleidt (State Bar No. 41860)
Kathleen R. Geyer (State Bar No. 55493)
Christopher P. Damitio (State Bar No. 58633)
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
dmachleidt@kilpatricktownsend.com
kgeyer@kilpatricktownsend.com
cdamitio@kilpatricktownsend.com

*Counsel for Plaintiff Starbucks Corporation*

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 8,142 words, excluding the caption, table of contents, table of authorities, and signature block, in compliance with Local Civil Rule 7(e).

Dated: January 5, 2026

*/s/ Rachael D. Lamkin*
Rachael D. Lamkin

PLAINTIFF'S OPPOSITION TO MOTION
TO STRIKE AND TO DISMISS
No. 2:25-cv-1859-JHC

28